**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ANDREA SANTIAGO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 19 C 4652** |
| | ) | |
| **CITY OF CHICAGO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

The case involves the City of Chicago's towing and impoundment of vehicles it deems to be abandoned and the City's disposal of impounded vehicles that remain unclaimed by their owners. Andrea Santiago sued the City on behalf of herself and two proposed classes. She asserts claims under 42 U.S.C. § 1983 seeking damages for alleged constitutional violations, as well as injunctive and declaratory relief, and claims under state law. The City has moved under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Santiago's claims.

**Background**

In considering Santiago's motion to dismiss, the Court accepts the facts in the complaint as true, *see O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 342 (7th Cir. 2018), and takes judicial notice of city ordinances, *see Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977).

Santiago is a senior citizen who uses a wheelchair. Starting around 2006, she

owned a van (a 1998 GMC Savana 1500) with special equipment that enabled her to enter and exit it in her wheelchair. The van was her primary mode of transportation. She regularly parked it on a public street near her home because her garage did not have enough space for her to get in and out of the van while in her wheelchair.

On or around June 5, 2018, a City employee placed a sticker on the van's window stating that the van was considered abandoned and would be towed if it was not moved within seven days. At that time, the van was legally parked on a public street near Santiago's home, as usual, and it had disability license plates and a valid City sticker. The City never sent Santiago a notice by mail warning her that the van might be towed.

A few days later, according to a claim Santiago later submitted to the City, one or more of Santiago's family members saw the sticker, removed it, and moved the van to a different location on the same street.[1] According to Santiago's claim, her daughter then placed three pieces of paper in the van's windows providing her contact information and stating that the van belonged to a disabled senior citizen and was not abandoned.

On June 13, 2018, the City's towing vendor, United Road Towing, towed and impounded Santiago's van. On or around June 15, 2018, the City mailed Santiago a "notice of vehicle impoundment." Compl., dkt. 1-1, ¶ 20.

A few days later, Santiago's daughter saw that the van was missing. According to Santiago's claim filed with the City, her daughter called the City and the police. The

---

[1] The Court may consider the claim Santiago submitted to the City, which the City has attached to its motion to dismiss, because Santiago has referenced it in her complaint, and it is central to her claim. *See Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018).

City did not provide her with any information, and the police told her that the van had not been reported as towed. Eventually, however, the City informed Santiago's daughter that the van had been towed. At some point (it is not clear when), Santiago's daughter tried to retrieve the van from the impound lot. According to the claim Santiago submitted to the City, someone (it is not clear who) told her daughter that she needed a notarized letter to retrieve the van because she was not its registered owner. Meanwhile, the City assessed Santiago fees for the costs of the van's towing and storage. Santiago does not allege that she ever paid those fees.

Santiago stated in her claim that when her daughter obtained a notarized letter, she was told (again, it is not clear by whom) that the letter was unacceptable and, instead, she needed to complete (and, apparently, get notarized) a particular form, which she had not been provided on her first visit to the impound lot. Santiago's daughter also was told (it is not clear by whom) that the City had disposed of the van. The City sold the van to United Road Towing who, in turn, sold it to a salvage yard where it was stripped and crushed.

Santiago received none of the proceeds from the van's sale or resale. The only notice the City mailed Santiago was the aforementioned "notice of vehicle impoundment." *Id.* ¶ 20. The City never mailed her an additional notice regarding the impending disposal of her van.

In October 2018, Santiago filed a claim with the City seeking compensation for her vehicle and the wheelchair lift equipment installed in it. The City denied the claim in May 2019.

Since the City's towing and disposal of her van, Santiago has obtained a

replacement vehicle. She continues to park it on her street in the same manner as her previous van. The complaint states that Santiago "fears that the City will again tow, impound, and dispose of her vehicle without notice." *Id.* ¶ 21.

Santiago alleges that the towing and disposal of her vehicle is "not an isolated incident" but rather is the City's "standard operating procedure." *Id.* ¶ 23. Citing an investigation by Chicago's local National Public Radio affiliate, her complaint states that "the City towed 93,857 vehicles in 2017 alone, of which 32,155 remain unclaimed" and that, in 2017, the City sold "just under 24,000 [unclaimed] vehicles" to third parties, including to United Road Towing. *Id.* ¶ 4. Santiago alleges that, "as a matter of practice," the City does not "provide notice" to owners of vehicles it has designated as abandoned before towing their vehicles. *Id.* ¶ 23. She also alleges that, "as a matter of practice," the City sends only one notice to owners whose impounded vehicles may be disposed, which she contends is contrary to the requirements of city ordinances, which the Court will describe momentarily. *Id.*

In Illinois and in the City, it is unlawful for a person to abandon a vehicle on public property. 625 Ill. Comp. Stat. 5/4-201(b); Chi. Mun. Code § 9-80-110(a). In the City, a vehicle is deemed abandoned if it is in a "state of disrepair" that makes it "incapable of being driven in its present condition"; "has not been moved or used for more than seven consecutive days and is apparently deserted"; or "has been left on the public way without state registration plates or a temporary state registration placard for two or more days." *Id.* If a vehicle has been abandoned, police officers and employees of the City's Department of Streets and Sanitation may "issue a notice of parking violation" and authorize the towing and impoundment of the vehicle. *Id.* § 9-92-030. Neither the state

statute nor the city ordinance states how long the City must wait before towing an abandoned vehicle from the public way or whether it must provide the owner with notice before towing it. *See* 625 Ill. Comp. Stat. 5/4-201(b); Chi. Mun. Code §§ 9-92-030, 9-80-110(a).[2]

Within ten days after a vehicle has been impounded, the City's Departments of Police or Streets and Sanitation must ascertain, if possible, the owner's name and must send him or her a notice of impoundment. *Id.* § 9-92-070(a). Unless the owner is personally served with the notice, the notice must be sent by certified mail if the vehicle is registered with the Secretary of State; if the vehicle is not registered, the notice must be sent to the most recent registered owner by first class mail. *Id.*

Illinois law permits municipalities to dispose of abandoned vehicles that remain unclaimed by their owners. *See* 625 Ill. Comp. Stat. 5/4-208 (disposal of unclaimed vehicles); *id.* 5/4-209 (disposal of unclaimed vehicles more than seven years of age and disposal of abandoned or unclaimed vehicles without notice). The Illinois Vehicle Code provides that cities with populations greater than 500,000—in other words, Chicago— may dispose of abandoned vehicles that remain unclaimed for more than eighteen days after the provision of an initial notice if vehicle's possessor has sent an additional notice by first class mail to the vehicle's registered owner, lienholder, or legally entitled person. *Id.* 5/4-208(a). Further, abandoned vehicles that are older than seven years must be kept for at least ten days to determine "the identity of the registered owner, lienholder,

---

[2] In its brief, the City incorrectly states that the Illinois Vehicle Code allows for the removal of abandoned vehicles after a waiting period of at least seven days. Under the statute, that waiting period applies only to vehicles abandoned on private property. *See* 625 Ill. Comp. Stat. 5/4-201(b).

or other legally entitled persons" and contact him or her by mail, public service, or in person. *Id.* 5/4-209(b). After that ten-day period, if the possessor of the vehicle has not received "disposition information" from the registered owner, lienholder, or legally entitled person, the "law enforcement agency having jurisdiction will authorize the disposal of the vehicle as junk or salvage." *Id.*

The relevant Chicago ordinance provides that whenever an abandoned vehicle "remains unclaimed . . . for a period of 18 days after notice has been given," the Superintendent of Police or Commissioner of Streets and Sanitation shall authorize its "disposal or other disposition," so long as, "during that 18-day period," the Department of Police or the Department of Streets and Sanitation has "sent an additional notice by first class mail to the registered owner, lienholder, or other legally entitled person." Chi. Mun. Code § 9-92-100(a). The ordinance also states that the registered owner of an abandoned vehicle may request one fifteen-day extension before the vehicle's disposal. *Id.* The ordinance does not expressly provide for different procedures for vehicles that are seven or more years old as compared to for newer vehicles. *See id.*

In June 2019, Santiago filed this lawsuit in the Circuit Court of Cook County, Illinois on behalf of herself and two putative classes. The first proposed class is composed of all individuals and entities who have had vehicles towed by the City due to its identification of the vehicles as abandoned (the Tow Class). The second is composed of individuals and entities who have had vehicles disposed of by the City after being towed by or through its Department of Street and Sanitation pursuant to the City's Municipal Code (the Vehicle Disposal Class). The City removed the case to this Court based on federal question jurisdiction.

On behalf of the Tow Class, Santiago alleges that the lack of prior notice violates the Constitution's Due Process Clause. In Count 1, she seeks a declaratory judgment that the City's ordinance concerning abandoned vehicles is unconstitutional and void, as well as an injunction preventing the City from towing and impounding abandoned vehicles without the provision of mailed notice and from collecting fines or fees in connection with such tows and impoundments. In count 2, Santiago alleges that the City has been unjustly enriched by payments relating to its allegedly unconstitutional practices for towing and impounding abandoned vehicles. In count 3, Santiago asserts a claim under 42 U.S.C. § 1983 based on the theory of municipal liability announced in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978), that the City violated her due process rights and those of the Tow Class through its practice of towing and impounding abandoned vehicles without prior mailed notice.

Santiago also asserts several claims on behalf of the Vehicle Disposal Class. In count 4, she seeks a declaratory judgment that the City violated Illinois law and the Chicago Municipal Code when it disposed of unclaimed vehicles without sending a second notice, as well as an injunction preventing the City from disposing of unclaimed vehicles without such a notice. Santiago also alleges that the City was unjustly enriched through this allegedly unlawful disposal of unclaimed vehicles (count 5), and she seeks a writ of mandamus requiring the City to send a second notice before disposing unclaimed vehicles (count 6). Santiago further alleges that the City's disposal of the class's vehicles without proper notice constituted an unconstitutional taking without just compensation and an unconstitutional seizure of property in violation of the Fourteenth and Fourth Amendments. She seeks declaratory judgments stating that the

City's vehicle disposal practice constituted an unconstitutional taking (count 7) and seizure (count 9) and injunctive relief preventing the City from disposing vehicles without a second notice (counts 7 and 9). She also alleges, under 42 U.S.C.§ 1983 and *Monell*, that the City unconstitutionally took property without compensation (count 8) and unconstitutionally seized property (count 10) from her and the Vehicle Disposal Class. As indicated, the City has moved to dismiss all of Santiago's claims for lack of standing and failure to state a claim.

## Discussion

To survive a challenge to standing under Rule 12(b)(1) a complaint's well-pleaded factual allegations must plausibly suggest a claim of subject matter jurisdiction. *Silha v. ACT, Inc.*, 807 F.3d 169, 173-74 (7th Cir. 2015). And to defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering such motions, a court "accept[s] well-pleaded facts as true and draw all reasonable inferences in the [plaintiff's] favor." *Shipley v. Chicago Bd. of Election Comm'rs*, 947 F.3d 1056, 1060–61 (7th Cir. 2020). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and, with respect to standing, that permit a reasonable inference that the plaintiff meets the requirements for subject matter jurisdiction. *Silha*, 807 F.3d at 174-75.

## A. Section 1983 claims

As indicated, Santiago has asserted three claims against the City under section

1983.  Specifically, she alleges that the City violated her due process rights and those of the Tow Class and that it violated the rights of her and the Vehicle Disposal Class to have freedom from unreasonable seizures under the Fourth Amendment and freedom from takings without unjust compensation under the Fifth Amendment.[3]  The City seeks dismissal of each of Santiago's these claims under Rule 12(b)(6).

In evaluating a section 1983 claim, the first step for a court is to "identify the specific constitutional right at issue."  *Manuel v. City of Joliet*, 137 S. Ct. 911, 920 (2017) (internal quotation marks and citation omitted).  "After pinpointing that right, courts . . . must determine the elements of, and rules associated with, an action seeking damages for its violation."  *Id.*  In addition, a municipality can be liable under section 1983 only when one of its official policies or customs was "the moving force" that caused the constitutional injury.  *Monell*, 436 U.S. at 694–95.  The Court addresses each claim in turn.

### 1.    Due process claim

Santiago alleges that the City's practice of sending notice by mail only after it

---

[3] For each of these claims, Santiago alleges that she has asserted the claim under section 1983 and describes the nature of the claim.  Compl., dkt. 1-1, at 13,18, 21.  Her complaint does not identify the relevant provisions of the Constitution and does not specify whether her due process or unreasonable seizure claim arises under the Federal or Illinois Constitution or both, *id.* ¶¶ 39–42,70–74, but it states that her takings claim arises under both constitutions, *id.* ¶ 59(B). The City assumes that Santiago is asserting each of her claims under both the Federal and Illinois Constitutions.  The standards for the parallel claims are the same, absent particular circumstances that are not present here.  *See Hampton v. Metro. Water Reclamation Dist. of Greater Chi.*, 2016 IL 119861, ¶ 16, 57 N.E.3d 1229, 1234 (explaining the "limited lockstep approach [taken by courts] when interpreting cognate provisions of the Illinois and U.S. Constitutions"); *id.* at ¶ 16, 57 N.E.3d at 1236 (Takings Clause); *Naperville Smart Meter Awareness v. City of Naperville*, 900 F.3d 521, 525 n.3 (7th Cir. 2018) (Fourth Amendment); *People v. One 1998 GMC*, 2011 IL 110236, ¶ 21, 960 N.E.2d 1071, 1079 (Due Process Clause).

tows and impounds an allegedly abandoned vehicle has deprived her and the proposed Tow Class of their procedural due process rights. The City seeks the dismissal of this claim because, it contends, Santiago has failed to allege that it provided Santiago with sufficient notice; the ordinance is not facially unconstitutional; and she has failed to adequately allege an official policy that deprived her of due process. The Court addresses each argument in turn.

### a. Sufficiency of notice

Santiago contends that the City's ordinance concerning abandoned vehicles, Chi. Mun. Code § 9-80-110, is facially unconstitutional because it provides for no pre-deprivation notice by mail and is also unconstitutional as applied to the facts of her case.

As an initial matter, the City contends that Santiago has waived her as-applied challenge to the ordinance concerning abandoned vehicles. In its opening brief, the City argued that a plaintiff cannot challenge the alleged inadequacy of the government's notice procedures where the plaintiff has received actual, sufficient notice. Santiago responded that she "is not challenging whether the windshield notice provided actual notice in any given case, but rather is challenging the ordinance on its face as unconstitutional because it provides for no pre-deprivation notice by mail." Pl.'s Br., dkt. no. 38, at 11. In the next section of her brief, however, she discussed in detail the sufficiency of the process that the City provided *to her*—effectively raising an as-applied challenge to the ordinance. *See id.* at 12–20. Accordingly, Santiago has not waived her as-applied challenge to the ordinance.

The Court begins with Santiago's as-applied challenge. *See Hegwood v. City of*

*Eau Claire*, 676 F.3d 600, 603 (7th Cir. 2012) ("It is a proper exercise of judicial restraint for courts to adjudicate as-applied challenges before facial ones in an effort to decide constitutional attacks on the narrowest possible grounds and to avoid reaching unnecessary constitutional issues.").  In analyzing a procedural due process claim, courts first analyze whether "the plaintiff has been deprived of a liberty or property interest" and then whether "the plaintiff was provided constitutionally sufficient process." *Knutson v. Village of Lakemoor*, 932 F.3d 572, 576 (7th Cir. 2019).  The parties here do not dispute that the City deprived Santiago of a property interest in her vehicle when it towed her van; rather, their dispute concerns what and how much process the City owed Santiago regarding that deprivation.

The City first argues that Santiago cannot state a due process claim based on the alleged insufficiency of the City's pre-towing notice procedures because she received actual, sufficient notice through the sticker it placed on her vehicle.  The City argues that Santiago "saw and was aware of the contents of the sticker" before the City towed her van.  Def.'s Br., dkt. no. 27, at 12.  To the extent the City suggests, in making this argument, that Santiago cannot state a due process claim because she knew about the sticker and thus knew that her vehicle had been flagged as abandoned and would be towed, that argument is unavailing.  A plaintiff who has received actual notice may nonetheless challenge the procedural sufficiency of the notice.  *See, e.g.*, *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 13–15 (1978) (utility company's customers were deprived of sufficient notice where they received notices from the company stating that their services would be terminated but providing no information about how they could object).  Regardless, although the claim Santiago filed with the City states that her

daughter saw the sticker, neither her complaint nor the claim suggests that she herself saw the sticker or knew about it.

The parties next dispute whether the sticker that the City placed on Santiago's van satisfied the requirements of due process. "The cornerstone of due process is notice and the opportunity to be heard at a meaningful time and in a meaningful manner." *Knutson*, 932 F.3d at 576 (citation omitted). To determine what process is due "before the government effects a deprivation," courts apply the so-called *Mathews* test and balance three factors: "(1) the nature of the private interest at stake, (2) the risk of erroneous deprivation through the procedures used, and (3) the governmental interest." *Id.* at 577 (citing *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976)). "The requirements of due process are not rigid; rather, due process is flexible and requires only such procedural protections as the particular situation demands." *Id.* (internal quotation marks and citation omitted).

With respect to the first *Mathews* factor, the City contends, citing *Sutton v. City of Milwaukee*, 672 F.2d 644 (7th Cir. 1982), that the private interest at stake is slight. In *Sutton*, the Seventh Circuit addressed the process a city must provide when it tows illegally parked cars that are not "blocking traffic or otherwise creating an emergency." *Id.* at 645. The court stated that the property interest was "slight" because "[i]t is not the car itself but the use of the car for a short period, usually a few hours, that is at stake." *Id.* at 646.

In response, Santiago contends, citing *Perry v. Village of Arlington Heights*, 905 F. Supp. 465 (N.D. Ill. 1995), that the private interest at stake is substantial. The district court in *Perry* found that before towing vehicles abandoned on private property, a

municipality must provide notice to identifiable owners by registered or certified mail. *Id.* at 470. In applying the *Mathews* test, the court found that the relevant private interest was "substantial" because automobiles are expensive and "often indispensable to day-to-day living in American society." *Id.* at 468 (internal quotation marks and citation omitted). For similar reasons, in a decision pre-dating the Supreme Court's articulation of the *Mathews* test, a three-judge panel also found that towing and impoundment of a person's "automobile may constitute or eventuate a 'grievous loss.'" *Graff v. Nicholl*, 370 F. Supp. 974, 981 (N.D. Ill. 1974) (quoting *Goldberg v. Kelly*, 397 U.S. 254, 263 (1970)).

The City contends that *Graff* and *Perry* have limited persuasive value because *Graff* pre-dated the Supreme Court's articulation of the *Mathews* test and the court in *Perry* relied on *Graff*. But the *Graff* court's analysis entailed a consideration of similar factors to those involved in the *Mathews* test, including the private interest at stake, the role of procedures in ensuring "fundamental fairness and practicality," and the government's interests. *See Graff*, 370 F. Supp. at 980–82; *see also Perry*, 905 F. Supp. at 469 (stating that the analysis in *Graff* "would be undisturbed under a *Mathews* analysis); *but see Soffer v. City of Costa Mesa*, 607 F. Supp. 975, 981 (C.D. Cal. 1985), *aff'd in relevant part*, 798 F.2d 361 (9th Cir. 1986) (calling *Graff* into question post-*Mathews*). Indeed, in *Sutton*, the Seventh Circuit suggested that the decision in *Graff* survived *Mathews*. *See Sutton*, 672 F.2d at 647 (stating that the Court's holding, based on the *Mathews* test, "is not inconsistent with" *Graff*). And the *Perry* court expressly employed the *Mathews* balancing test. *See Perry*, 905 F. Supp. at 468–70.

The Court finds that the private interest at stake in this case is substantial

because vehicles can be necessary for day-to-day life and provide the primary means of transportation for many people, particularly the elderly and the disabled. Nor does Seventh Circuit's finding in *Sutton* require this Court to find that the private interest is slight, as the City contends. *Sutton* is distinguishable from this case because, as indicated, it involved only illegally parked cars, not abandoned ones. *See Sutton*, 672 F.2d at 647 (stating that advance notice of towing is not feasible in the case of an illegally parked car, which "will be gone by the time the owner is notified," but feasible in the case of an abandoned car). Further, since the Seventh Circuit issued its decision in *Sutton*, the Supreme Court has stated that "a temporary deprivation of the use of [one's] automobile" can amount to a "far more serious harm" than other types of deprivations. *City of Los Angeles v. David*, 538 U.S. 715, 717–18 (2003) (describing the deprivation of the use of one's money for a discrete period as less serious than the deprivation of the use of one's car). Nor does the City's suggestion, in a parenthetical in its reply brief, that harm caused by a temporary deprivation of one's vehicle is lessened in Chicago because people can rent cars or use taxis or public transportation, point toward a different conclusion. The case the City cites to support that proposition involved substantive, not procedural, due process. *See Saukstelis v. City of Chicago*, 932 F.2d 1171, 1173 (7th Cir. 1991). And because there are, in the present procedural context, no allegations or judicially noticed facts showing that the availability of rental cars, taxis, or public transportation lessens the harm caused by the deprivation of one's car, that issue is better suited for a later stage of the case.

"The second factor [of the *Mathews* test] addresses the risk of an erroneous placement under the procedures in place, and the probable value, if any, of additional or

alternative procedural safeguards." *Wilkinson v. Austin*, 545 U.S. 209, 225 (2005). The City contends that the risk of erroneous deprivation here is low because most people will see the notification sticker the City places on their car and move it to avoid a tow, and, if a vehicle's owner does not see the sticker, the City will mail him or her notice after it impounds the vehicle. And the City contends that mailing a notice before it tows an allegedly abandoned vehicle would be unlikely to reduce the risk of erroneous deprivation, apparently because it believes most people will see the sticker on their windshields. By contrast, Santiago contends that the risk of erroneous deprivation is substantial because the city ordinance provides great discretion to the City's personnel in determining whether a vehicle is abandoned, which can lead to mistakes. Santiago also asserts that the provision of pre-tow notice by mail would enable owners of allegedly abandoned vehicles to avoid towing by moving their vehicles or explaining to the City why they have not moved them.

Again, a comparison of the decisions in *Perry* and *Sutton* is instructive. The district court in *Perry* found that the risk of erroneous deprivation through towing allegedly abandoned vehicles parked on private property was "not negligible" where an ordinance did not provide a standard by which police could determine whether a vehicle was abandoned. *Perry*, 905 F. Supp. at 469. Further, the court found that notification by mail would "would enable the owner of a vehicle deemed abandoned to either move it . . . or to explain a legitimate reason for its being where it is." *Id.* And it found that requiring such notification would place "no added burden on the government" because the municipality already was required to wait seven days before towing and to mail a notification to the owners after towing. *Id.* By contrast, in *Sutton*, the Seventh Circuit

15

found that the risk of erroneous deprivation in the towing of illegally parked cars was "very small" because the "determination that a car is illegally parked is pretty cut and dried." *Sutton*, 672 F.2d at 646. Further, the court found that the costs of the safeguard were "prohibitive" because it would "prevent all towing of illegally parked cars." *Id.*

In this case, there is a non-negligible risk of deprivation because, as indicated, the city ordinance states that cars shall be deemed abandoned if they have not been "moved or used for more than seven consecutive days and [are] apparently deserted." Chi. Mun. Code § 9-80-110. The ordinance provides no standard regarding how city personnel are to determine whether a vehicle appears deserted. *See id.* Although the City contends that abandoned vehicles, like the vehicles at issue in *Sutton*, are illegally parked cars, the determination of whether a vehicle is abandoned is not "cut and dried." *Sutton*, 672 F.2d at 646. Indeed, Santiago's complaint reflects how that determination can highly discretionary: her van was parked in a legal parking space near her home and had a valid City sticker, but a City employee nonetheless determined that it was abandoned.

Further, as in *Perry*, the provision of a mailed notice could give the owner of an allegedly abandoned vehicle an opportunity to move the vehicle or challenge the City's abandonment determination.[4] And unlike in *Sutton*, the addition of such process would not eliminate the city's ability to tow abandoned vehicles. The City already waits at least seven days before towing abandoned vehicles. If a vehicle truly is abandoned, the City

---

[4] The City contends that *Perry* is distinguishable because it involved abandoned vehicles on private property, not those abandoned on public property. But in addressing the value of additional or substitute safeguards, the court in *Perry* did not make any mention of the nature of the property on which the vehicles were abandoned. *Perry*, 905 F. Supp. at 469.

will still be able to tow it after mailing notice. Although the City contends that the costs of pre-tow mailings likely would be significant, that is an issue more appropriately addressed at a later stage of the proceedings; the complaint and judicially noticed facts contain no information about the costs of those mailings.

With respect to the final *Mathews* factor—the governmental interest—the parties appear to agree that City has an interest in removing abandoned vehicles, but they dispute whether requiring pre-tow notice would affect the City's ability to carry out that purpose efficiently and inexpensively. In *Sutton*, the Seventh Circuit found that a government has a "valid purpose" in towing illegally parked cars even if they are not creating emergencies. *Sutton*, 672 F.2d at 646. There is similarly a valid purpose in towing abandoned cars. *See Graff*, 370 F. Supp. at 982 (recognizing "the strong governmental and public concern for the removal of abandoned vehicles from the public way"). But nothing in Santiago's complaint or in the judicially noticed facts in this case suggests that this governmental interest was "so serious and so urgent" as to justify the towing of her vehicle or other abandoned vehicles without mailed notice. *See Simpson v. Brown County*, 860 F.3d 1001, 1009 (7th Cir. 2017) (reversing a district court's dismissal of a procedural due process claim where the government's interest in health and safety did not justify the revocation of an individual's license to install septic systems with limited notice and no hearing).

For these reasons, Santiago has plausibly alleged that the City denied her and the members of the Tow Class procedural due process by towing their allegedly abandoned vehicles without first providing notification by mail.

### c.     Official government policy

The City next argues that Santiago has failed to sufficiently allege the existence of an official policy that caused her injury. As indicated, a municipality can be liable under section 1983 only when one of its official policies or customs was "the moving force" that caused the constitutional injury. *Monell*, 436 U.S. at 694–95. A plaintiff may demonstrate an official policy or custom through "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Spiegel*, 916 F.3d at 617 (internal quotation marks and citation omitted).

The first issue is whether Santiago has alleged a direct causal link between a policy or custom of the City and the towing and impoundment of her van without mailed notice. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (discussion of municipal liability under section 1983 should start with causation). The City argues that Santiago has failed to allege a causal link because, it contends, she received actual notice from the sticker on her windshield, so the City's failure to mail notice did not cause the alleged deprivation. This argument is unavailing for reasons the Court previously discussed: even if Santiago received notice, she can challenge its sufficiency, and regardless, there are no allegations or judicially noticed facts indicating that she personally saw or knew about the notification sticker.

The City next argues that Santiago has failed to allege an unconstitutional policy because the City's ordinances contain no express policy regarding the  provision of notice before towing and impounding allegedly abandoned vehicles. But an

unconstitutional policy need not be written into the text of a law or ordinance.  *See, e.g.*, *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005) (express policies can include unwritten policies or gaps in written policies).  And Santiago alleges not that the ordinance itself is the sole *source* of the City's official policy but that the City's policy of not mailing notice is "done pursuant to an ordinance."  Compl., dkt. no. 1-1, ¶ 40.

Santiago contends that City's policy on abandoned vehicles expressly fails to address whether it should mail notice before towing and impounding such vehicles or that the City has a widespread practice of never mailing such notice.  The Court need not determine whether Santiago objects to a City practice or to an omission in its policies. *Calhoun*, 408 F.3d at 380 (7th Cir. 2005) ("[I]t is more confusing than useful to distinguish between claims about express policies that fail to address certain issues, and claims about widespread practices that are not tethered to a particular written policy.").  For both types of policies, Santiago ultimately must show "that there is a true municipal policy at issue, not a random event," which typically (though not always) requires proof of more than a single incident.  *See id.*

Santiago's complaint sufficiently alleges an actionable municipal policy.  She alleges that the City "fails to provide any notice by mail whatsoever *prior* to towing vehicles that it considers abandoned."  Compl., dkt. no. 1-1, ¶ 8.  And she alleges that the City's failure to mail her notice "is not an isolated incident, but rather is standard operating procedure by the City," which, as "a matter of practice," does not mail notice before towing and impounding allegedly abandoning vehicles.  *Id.* ¶ 23.  She also alleges that "the City has unlawfully seized, impounded, and disposed of thousands of vehicles."  *Id.* ¶ 24.  These allegations are not conclusory, as the City contends.  Rather,

Santiago has alleged facts that allow a plausible inference that there is an unconstitutional policy, either in the form of an omission in an express policy or a widespread practice.

In sum, the Court finds that Santiago has plausibly alleged the existence of a municipal policy that caused a constitutional deprivation. And because Santiago has asserted a viable as-applied challenge to the City's ordinance, the Court need not address whether she also has plausibly alleged a facial challenge to it. *See Commodity Trend Serv., Inc. v. CFTC*, 149 F.3d 679, 688 n.5 (7th Cir. 1998) (where a district court grants relief on a plaintiff's as-applied constitutional claim, the court need not reach the plaintiff's facial challenge); *see also Hegwood*, 676 F.3d at 603. The Court therefore declines to dismiss Santiago's due process claim.

### 2. Fourth Amendment claim

The Court turns next to Santiago's section 1983 claim that the City violated the rights of her and the members of the proposed Vehicle Disposal Class to be free from unreasonable seizures by disposing of their unclaimed vehicles without mailing a second notice. The City argues that Santiago cannot state a claim under the Fourth Amendment for the disposal of her and the proposed Vehicle Disposal Class members' vehicles because, it contends, the Fourth Amendment does not govern the retention or disposal of property that has already been seized.

The Fourth Amendment protects the "right of the people to be secure in their persons . . . and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A seizure has occurred when a government actor causes "some meaningful interference with an individual's possessory interests in [her] property." *Lee v. City of*

*Chicago*, 330 F.3d 456, 460 (7th Cir. 2003) (quoting *Soldal v. Cook County*, 506 U.S. 56, 61 (1992)). In the Seventh Circuit, the Fourth Amendment's protections are "limited to an individual's interest in *retaining* [her] property," and "cannot be invoked by the dispossessed owner to regain [her] property." *Id.* at 466 (city's conditional release of an impounded car upon the payment of towing and storage fees was neither a continuation of the car's initial seizure nor the commencement of another seizure); *see also Bell v. City of Chicago*, 835 F.3d 736, 741–42 (7th Cir. 2016) (plaintiffs cannot invoke the Fourth Amendment to challenge a city's procedures after a government officer or agent seizes and impounds a vehicle).

Santiago contends that *Lee* applies only to temporary dispossessions of property, not permanent ones. But the Seventh Circuit has suggested no such limitation to *Lee*'s holding. Rather, in *Lee*, the court discussed intrusions into the "constitutionally protected areas of the Fourth Amendment" more broadly. *See Lee*, 330 F.3d at 465. And it addressed situations analogous to the one faced by Santiago—where the government, "by virtue of its authority to seize, effect[s] *de facto* forfeitures of property by retaining items indefinitely"—and indicated that "due-process guarantees," not the Fourth Amendment's protections, would prevent such permanent dispossessions of property. *Id.* at 466.

Citing *Manuel v. City of Joliet, supra*, Santiago also argues that, since the Seventh Circuit issued its decision in *Lee* in 2003, the Supreme Court has held that the protections of the Fourth Amendment extend beyond the moment of initial seizure. In *Manuel*, the Supreme Court found a pretrial detainee can state a Fourth Amendment claim "to contest the legality of his pretrial confinement . . . even after the start of 'legal

process' in a criminal case." *Manuel*, 137 S. Ct. at 914. The Court explained that, for pretrial detentions, Fourth Amendment violations can occur at different times, including "when the police hold someone without any reason before the formal onset of a criminal proceeding" and "when legal process itself goes wrong," such as when a judge makes an erroneous probable-cause determination. *Id.* at 918. But *Manuel* involved the seizure and detention of a person. The Court did not suggest that the concept of an unreasonable seizure of property lacks temporal bounds, as Santiago contends; the Court did not mention the word "property" once in its decision. *See generally id.*; *see also Denault v. Ahern*, 857 F.3d 76, 84 (1st Cir. 2017) (a plaintiff may not challenge the government's retention of property under the Fourth Amendment; citing *Manuel* to suggest that a different result "may well obtain when the government seizes a person rather than property").

Accordingly, Santiago cannot invoke the Fourth Amendment to challenge the City's procedures for disposing of vehicles after they have been towed and impounded. Rather, "the Due Process Clause of the Fourteenth Amendment can be used to challenge post-seizure procedures," but Santiago has waived any due process claim challenging the City's vehicle disposal procedures by failing to even assert, let alone argue, such a claim. *Bell*, 835 F.3d at 741 (plaintiffs waived due process challenge to post-seizure procedures).

For these reasons, the Court dismisses Santiago's section 1983 claim concerning Fourth Amendment violations. The Court need not address the parties' arguments regarding whether she adequately alleged the existence of an official City policy in support of this claim.

### 3.    Takings claim

Santiago has also asserted a section 1983 claim alleging that the City took her property and that of the proposed Vehicle Disposal class without just compensation. The Takings Clause of the Fifth Amendment to the U.S. Constitution states that "private property [shall not] be taken for public use, without just compensation."  U.S. Const. amend. V.  "It applies to the States as well as the Federal Government."  *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 306 n.1 (2002).

Under the Takings Clause, "[w]hen the government physically takes possession of [all or part of] an interest in property for some public purpose, it has a categorical duty to compensate the former owner."  *Id.* at 322.  The Supreme Court has found that the Takings Clause applies to two types of government actions: the taking of physical possession of property for a public use and the regulatory prohibition of a private use. *See id.* at 323.  Santiago contends that the City has engaged in a physical taking of her van.

The City argues that its disposal of Santiago's van cannot constitute a violation of the Takings Clause because it used its police power and the authority provided via its ordinances to lawfully impound Santiago's van.  "The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain."  *Bennis v. Michigan*, 516 U.S. 442, 452 (1996) (no taking where the state initially acquired the plaintiff's vehicle through a lawful forfeiture proceeding); *see also Tate v. District of Columbia*, 627 F.3d 904, 909 (D.C. Cir. 2010) (no taking where the District of Columbia lawfully impounded the plaintiff's vehicle through a statutory process pertaining to

unpaid tickets).  But Santiago has alleged that the City acquired her van unlawfully, without providing adequate notice.  Accordingly, the rule from *Bennis* does not apply.

The City makes only one other argument regarding Santiago's takings claim:  it contends she has not alleged that there was an official policy that caused the taking of her van.  Both parties' arguments on this point focus on whether the City has a policy of disposing of unclaimed vehicles without mailing two notices.  But Santiago has alleged that the City has a policy or practice of selling unclaimed, impounded vehicles to third parties without mailing two notices to the vehicles' owners and that the City sold "just under 24,000" unclaimed vehicles to third parties, *see* Compl., dkt. no. 1-1, at ¶ 4.  And she alleged that this policy or practice resulted in the City's disposal of her vehicle. Accordingly, the Court finds that Santiago has alleged the existence of an official policy that was the "moving force" behind the disposal of her van, the act claimed to constitute the unlawful taking.  *Monell*, 436 U.S. at 694-95.  The Court therefore denies the City's motion to dismiss Santiago's takings claim.

**B.     Injunctive and declaratory relief**

The City also has moved to dismiss Santiago's requests for injunctive and declaratory relief under Federal Rule of Civil Procedure 12(b)(1) for lack of standing. Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  A plaintiff seeking a forward-looking remedy like an injunction or a declaratory judgment "has standing to sue for an alleged future injury only if 'the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'"  *Swanigan v. City of Chicago*, 881 F.3d 577, 583 (7th Cir. 2018) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149,

24

158 (2014)); *id.* at 583 n.2 (regarding declaratory relief). A "[p]ast injury alone is insufficient" to establish standing for purposes of prospective relief. *Id.* at 583. At the pleading stage, a plaintiff must clearly allege facts demonstrating that she has standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

In *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), the Supreme Court concluded that a plaintiff who alleged he had been arrested and illegally choked by the arresting police officer lacked standing to seek an injunction against future similar deprivations. *Id.* at 105. The Court stated that to establish standing, the plaintiff would have been required to allege that (1) he would have another encounter with the police and (2) either "that that all police officers in Los Angeles always choke any citizen with whom they happen to have an encounter [or] that the City ordered or authorized police officers to act in such manner." *Id.* at 106. The Court explained that the suggestion that, in every "encounter between the police and a citizen, the police will act unconstitutionally and inflict injury without provocation or legal excuse" was too conjectural in Lyons's case. *Id.* at 108. And the assertion that Lyons again would be subjected to such unconstitutional actions by the police was too speculative. *Id.*

By contrast, courts have found that plaintiffs have standing to seek equitable relief where a plaintiff plausibly alleges that she is likely to be in a certain situation and a municipality has an official policy of always treating people in that situation in an unconstitutional manner. *See, e.g.*, *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344–45 (2d Cir. 1998) (certified class of children arrested on possible delinquency charges had standing where they were likely to undergo allegedly unconstitutional interrogations and the challenged interrogation methods were conducted pursuant to

official policies); *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 159–62 (E.D.N.Y. 2018) (individual plaintiffs had standing to seek prospective relief against Customs and Border Control relating to allegedly unconstitutional searches where they alleged that they were frequent airline travelers and that the search was part of a routine practice pursuant to a formal policy of searching airline travelers); *Creedle v. Miami-Dade County*, 349 F. Supp. 3d 1276, 1286–91 (S.D. Fla. 2018) (plaintiff had standing to seek injunctive relief where he alleged that he was subject to an unconstitutional detainer and a county had a blanket policy that required it officials to "effectively re-arrest and detain anyone who is the subject of a detainer"); *Franklin v. City of Chicago*, 102 F.R.D. 944, 948 (N.D. Ill. 1984) (plaintiff had standing where he alleged that he and a proposed class were "likely to suffer future arrest by police officers" and "the City of Chicago authorize[d] police to transport every arrestee" in squadrols that were allegedly not constitutionally safe).

Santiago first seeks an injunction on her claims relating to the towing and impoundment of her new vehicle. She has alleged that there is a substantial risk the City will identify her new vehicle as abandoned and that, for vehicles identified as abandoned, the City always acts in an allegedly unconstitutional manner by authorizing their towing and impoundment without providing mailed notice.[5] Thus Santiago's allegations require fewer inferential steps than those at issue in *Lyons*: to face a future constitutional deprivation, all that needs to happen is for the City to identify her car as abandoned and tow it without mailing her notice.

The City argues that it is unlikely that it will identify Santiago's new vehicle as

---

[5] Although the City argues that Santiago has failed to allege it has an official policy of towing all abandoned vehicles without the provision of mailed notice, that argument lacks merit for the reasons the Court discussed earlier in this decision.

abandoned because there is a general assumption that she will follow the law, including the City's abandoned vehicle ordinances. *See Swanigan*, 881 F.3d at 583 (courts assume that people "conform [their] conduct to the requirements of the law"). This argument misses the mark. Santiago has plausibly alleged that, even if she follows the law, she faces a substantial risk that the City will identify her vehicle as abandoned just as it did before, especially given its open-ended standard for determining that a car is abandoned. *See Franklin*, 102 F.R.D. at 948 (City's policy of arresting people without intention to prosecute them contributed to the "realistic" threat that the plaintiff would be arrested even if he was not violating the law). Specifically, Santiago has alleged that she regularly parks her new vehicle in the same manner as she parked her van: in a legal spot on a public street near where she lives. Compl., dkt. no. 1-1, ¶¶ 16–17, 21. And she has alleged that the City's policy for determining whether a vehicle is abandoned makes it likely that her vehicle will be deemed abandoned. As indicated, one way the City classifies a vehicle as abandoned is if the vehicle has not "been moved or used for more than seven consecutive days and is apparently deserted." Chi. Mun. Code § 9-80-110(a). Drawing all reasonable inferences in Santiago's favor, it is perfectly plausible that a disabled senior citizen who is confined to a wheelchair (or, for that matter, any person) might not actually drive her car for a week or more. This makes it highly likely that her vehicle will again be deemed abandoned.

The City also argues that Santiago will receive actual notice if it identifies her new vehicle as abandoned because it will place a notification sticker on the vehicle. According to the City, it is unreasonable to infer that Santiago will not see the sticker, because she saw the sticker the City previously posted on her van. As the Court

previously explained, however, there is nothing in the complaint or materials of which the Court may properly take judicial notice suggesting that Santiago saw or knew about that prior notice. Further, because Santiago is a disabled senior citizen who is confined to a wheelchair, it is reasonable to infer that she goes to her car only when she intends to use it. Thus, even if the City identifies her vehicle as abandoned and places a sticker in its windshield, it is perfectly plausible that Santiago might not see the sticker for a seven-day period after it is placed.

Santiago also asserts three claims regarding the City's disposal of her vehicle on which she seeks an injunction or declaratory relief. Specifically, she has alleged that there is a substantial risk that the City will dispose of her new vehicle in violation of the Fourth Amendment, the Takings Clause, and state law and/or the City's applicable ordinance.[6]

Santiago has standing to seek prospective relief relating to the City's disposal practices. She has alleged that there is a substantial risk that the City will identify her new vehicle as abandoned and tow and impound it without providing adequate due process, as the Court just discussed. And she has alleged that, once the City tows and impounds a vehicle, if the vehicle remains unclaimed, the City always disposes of it after mailing only one notice. Because Santiago is an elderly and disabled person whose vehicle is her primary means of transportation, if her vehicle is towed, it is perfectly plausible that she may not be able to claim it right away. For this reason, it is

---

[6] The City contends that state law does not require it to mail two notices of disposal before disposing of vehicles that are more than seven years old. In response, Santiago contends that she has alleged only that the City's disposal practice violates its ordinance. Accordingly, the Court need not address whether Santiago is entitled to prospective relief for the City's violations of state law.

also plausible that the City will dispose of her vehicle before she claims it—and after having mailed only one notice. These inferences do not require the conjecture or speculation that the Supreme Court found insufficient in *Lyons*, especially because Santiago has plausibly alleged the likelihood that the City will dispose of her vehicle pursuant to official policies.

The City summarily repeats its prior arguments about standing. Specifically, it contends that Santiago has not alleged that it has a practice of mailing only one notice before disposing of vehicles. As the Court has discussed, however, Santiago *has* alleged such a policy or practice. The City also contends that Santiago's standing is undermined by a presumption that she will follow the law. But as the Court discussed, there is a substantial likelihood that Santiago's car will be towed, impounded, and disposed of even if she follows the law. The City's final contention, that Santiago lacks standing because she received actual notice, also is unavailing because she is challenging the sufficiency of that notice. *See, e.g.*, *Memphis Light, Gas & Water*, 436 U.S. at 13–15.

That said, Santiago's request for prospective relief on her Fourth Amendment claim fails. As the Court previously discussed, a government's retention and disposal of a vehicle does not constitute an unreasonable seizure under the Fourth Amendment.

By contrast, Santiago has adequately alleged that the City's disposal of vehicles amounts to a taking without compensation, for the reasons the Court previously discussed. Santiago has also adequately alleged that the disposal amounts to a violation of the applicable municipal ordinance, which requires the City to mail two notices to the owner of an impounded vehicle before disposing of the vehicle. *See* Chi.

29

Mun. Code § 9-92-100(a).

The City contends, however, that its ordinance regarding the disposal of unclaimed vehicles does not require it to send two notices before disposing of a vehicle. Specifically, it argues that the ordinance should be read to adopt the procedures of the corresponding Illinois statute, which according to the City requires two notices before disposal only for vehicles less than seven years old. *Compare id. with* 625 Ill. Comp. Stat. 5/4-208; *id.* 5/4-209. Regardless of whether those are, in fact, the requirements of the state law, the City ordinance does not state that it should be read in parallel with the state law. *See* Chi. Mun. Code § 9-92-100(a). Rather, it simply states that "[w]henever an abandoned, lost, stolen, or other impounded motor vehicle . . . remains unclaimed . . . for a period of 18 days after notice has been given," the City may dispose of it if the Department of Police or Department of Streets and Sanitation "has sent an additional notice by first class mail to the registered owner, lienholder, or other legally entitled person." *Id.* It does not suggest that the City may forego the second, expressly required notice where an older vehicle is involved. *See id.* Accordingly, Santiago has adequately alleged that the City routinely violates the ordinance by failing to send two notices before disposal.

For these reasons, the Court declines to dismiss Santiago's claims for declaratory and injunctive relief relating to the City's towing practice and its disposal of unclaimed, impounded vehicles as violations of the Takings Clause and the City's ordinance. The Court dismisses Santiago's claim for declaratory and injunctive relief relating to the City's disposal of unclaimed, impounded vehicles as a violation of the Fourth Amendment.

### C.    State law claims

#### 1.    Mandamus

Santiago also seeks a writ of mandamus directing the City's Department of Streets and Sanitation to send two notices before disposing of a vehicle that has been towed and impounded.  Santiago contends such an order is necessary for the City to comply with the city ordinance concerning the disposal of unclaimed, impounded vehicles.  *See* Chi. Mun. Code § 9-92-100(a).  As just discussed, Santiago has adequately alleged that the City's practice of sending only one notice before disposing of such vehicles violates its ordinance.  The City has asserted no other arguments for dismissal of Santiago's mandamus claim.  The Court declines to dismiss the claim.

#### 2.    Unjust enrichment

Santiago also asserts two claims for unjust enrichment, one relating to the towing and impounding her and the Tow Class's vehicles and the other relating to the disposal of her vehicle and those of the Vehicle Disposal Class.  The City has moved to dismiss these claims under Rule 12(b)(6).

"To state a claim for unjust enrichment under Illinois law, 'a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'"  *Banco Panamericano, Inc. v. City of Peoria*, 880 F.3d 329, 333 (7th Cir. 2018) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 545 N.E.2d 672, 679 (1989)).

With respect to her claim regarding towing, Santiago alleges that the City was unjustly enriched because it received "fines, penalties, and other amounts in connection

with the towing and impoundment" of allegedly abandoned vehicles.  Compl., dkt. no. 1-1, ¶ 35.  And she alleges that the City "assessed" her "a towing fee and ever-increasing storage fees."  *Id.* ¶ 19.  But Santiago alleges no facts suggesting that she ever *paid* a fee to the City in connection with the towing and impoundment of her van.  Accordingly, she has not stated a claim for unjust enrichment, and the Court need not address the City's other arguments in support of dismissal.

Santiago has, however, stated a viable unjust enrichment claim regarding vehicle disposal.  Specifically, Santiago alleges that the City unjustly sold her vehicle without sending her the second notice required by City ordinance and retained the proceeds of the sale to her detriment.  The City again argues that its disposal of Santiago's van did not violate state law or the relevant ordinance.  For the reasons previously discussed, this argument is unavailing.

The City also argues that Santiago's unjust enrichment claim relating to vehicle disposal should be dismissed because, the City contends, such a claim may not be asserted as an independent claim.  "The Illinois Supreme Court appears to recognize unjust enrichment as an independent cause of action."  *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (collecting cases).  A more recent Illinois appellate court appeared to suggest "the opposite, namely, that an unjust enrichment claim cannot stand untethered from an underlying claim."  *Id.* (citing *Martis v. Grinnell Mut. Reinsurance Co.*, 388 Ill. App. 3d 1017, 1024, 905 N.E.2d 920, 928 (2009)).  The Seventh Circuit has suggested that a way "to make sense of" these apparently conflicting precedents is to recognize that the where the retention of a benefit is unjust, that unjustness is "often due to some improper conduct by the defendant."  *Id.* at 517.

"So, if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Id.* Santiago's unjust enrichment claim on behalf of herself and the Vehicle Disposal class depends on her claims that the City's disposal of unclaimed, impounded vehicles without the provision of a second written notice violates the Constitution or the City's applicable ordinance. The Court has dismissed only Santiago's Fourth Amendment claim; her other claims regarding the City's disposal of vehicles remain alive. Accordingly, there is no basis at this point to dismiss her unjust enrichment claim relating to the City's disposal of unclaimed, impounded vehicles.

## Conclusion

For the foregoing reasons, the Court denies the City of Chicago's motion to dismiss [dkt. no. 22] with respect to Counts 1, 3, 4, 5, 6, 7, and 8 but otherwise grants the City's motion to dismiss and dismisses Counts 2, 9, and 10. The City is directed to file an answer to Counts 1, 3, 4, 5, 6, 7, and 8 by no later than April 16, 2020. Because the Court's ruling likely will affect Santiago's long-pending motion for class certification, the Court terminates that motion [dkt. no. 17] without prejudice to refiling. The case is set for a status hearing on April 20, 2020 at 9:30 a.m. for the purpose of setting a discovery and pretrial schedule.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 18, 2020