IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREA SANTIAGO, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CITY OF CHICAGO, )<br>)<br>Defendant. ) | Case No. 19 C 4652 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

After her vehicle was towed, impounded, and disposed of, Andrea Santiago sued the City of Chicago. She alleges that the City violated both federal and state law, and she seeks monetary damages, along with declaratory and injunctive relief. Santiago has moved to certify two classes of similarly situated plaintiffs under Federal Rules of Civil Procedure 23(b)(2) and (b)(3). The Court grants her motion to the extent stated below.

## Background

**A.    Tow, impoundment, and disposal of Santiago's van**

Santiago is elderly. She suffers from multiple sclerosis and is confined to a wheelchair. At the time the relevant events occurred, her primary mode of transportation was the van she owned—a 1998 GMC Savana 1500. The van was outfitted with special lift-equipment that enabled her to enter and exit while remaining in her wheelchair. From 2006 until 2018, the van was regularly parked on a public street

near her home in Chicago. The van had a disability license plate, and the wheelchair lift equipment was clearly visible through the vehicle's windows.

On June 5, 2018, after receiving a report that the van was abandoned, a City of Chicago employee inspected the vehicle. The employee noted that its plates had expired, the van had not been moved for 28 days, it had dents and scratches, and there was dirt and debris around its tires. As a result of this inspection, the employee placed a tow-notice sticker on the van's window; the sticker warned that if the vehicle was not moved in seven days it would be considered abandoned and, resultingly, towed. At the time, the van was legally parked near Santiago's home.

Santiago never received notice by mail warning her that the van might be towed. But, sometime later, her daughter Lisandra Velez saw the sticker on the van, removed it, and moved the van to a different location on the same street. Velez also placed signs in the van's windows; the signs warned that the van was not abandoned, explained that its owner was a disabled senior citizen, and included Velez's contact information. Velez did not tell her mother about the tow-notice sticker or the measures she took to prevent the van from being towed. Nevertheless, on June 13, the van was towed. On June 15, the city mailed Santiago a "notice of vehicle impoundment."

When Velez noticed the van was missing, she called the City and the police. Initially, neither entity was helpful, but eventually she was informed that the van had been towed. Prior to July 5, Velez attempted to retrieve the van from the impound lot but was told that because she was not the van's registered owner, she needed a notarized letter to retrieve it. Velez returned with a notarized letter later that month but was informed that the pound had disposed of the vehicle on July 16. Santiago alleges

2

that the City failed to send adequate notice warning that the vehicle was subject to disposal.

**B.     City's tow, impoundment, and disposal procedures**

City, state, and federal law provide guardrails to ensure that authorities meet certain burdens before towing, impounding, and disposing of vehicles. Santiago alleges that the City jumps those guardrails because it routinely tows, impounds, and disposes of vehicles without adequate notice and while profiting from the vehicles' sale.

Both a state statute and a City ordinance make it unlawful for a person to abandon a vehicle on public property. 625 Ill. Comp. Stat. 5/4-201(b); Chi. Mun. Code § 9-80-110(a). If a vehicle has been abandoned, police officers and employees of the City's Department of Streets and Sanitation may "issue a notice of parking violation" and authorize the towing and impoundment of the vehicle. Chi. Mun. Code § 9-92-030. For owners in Santiago's situation— those who own vehicles that have not been moved or used for more than seven consecutive days, are deemed deserted, and lack current registration—it's undisputed that the City does not mail any notice warning that a vehicle is abandoned and subject to tow.

Within ten days after a vehicle has been towed and impounded, the City's Departments of Police or Streets and Sanitation must, if possible, ascertain the owner's name and must send him or her a notice of impoundment. *Id.* § 9-92-070(a). Unless the owner is personally served with the notice, the notice must be sent by certified mail if the vehicle is registered with the Secretary of State; if the vehicle is not registered, the notice must be sent to the most recent registered owner by first class mail. *Id.*

Illinois law permits municipalities to dispose of abandoned vehicles that remain

unclaimed by their owners. *See* 625 Ill. Comp. Stat. 5/4-208 (disposal of unclaimed vehicles); *id.* 5/4-209 (disposal of unclaimed vehicles more than seven years of age and disposal of abandoned and unclaimed vehicles without notice). The Illinois Vehicle Code provides that cities with populations greater than 500,000 (i.e., Chicago) may dispose of abandoned vehicles that remain unclaimed for more than eighteen days after the provision of an initial notice if the vehicle's possessor has sent an additional notice by first class mail to the vehicle's registered owner, lienholder, or legally entitled person. *Id.* 5/4-208(a). Abandoned vehicles that are older than seven years must be kept for at least ten days to determine "the identity of the registered owner, lienholder, or other legally entitled persons" and contact him or her by mail, public service, or in person. *Id.* 5/4-209(b). After that ten-day period, if the possessor of the vehicle has not received "disposition information" from the registered owner, lienholder, or legally entitled person, the "law enforcement agency having jurisdiction will authorize the disposal of the vehicle as junk or salvage." *Id.*

The relevant Chicago ordinance provides that whenever an abandoned vehicle "remains unclaimed . . . for a period of 18 days after notice has been given," the Superintendent of Police or Commissioner of Streets and Sanitation shall authorize its "disposal or other disposition," so long as, "during that 18-day period," the Department of Police or the Department of Streets and Sanitation has "sent an additional notice by first class mail to the registered owner, lienholder, or other legally entitled person." Chi. Mun. Code § 9-92-100(a). The ordinance also states that the registered owner of an abandoned vehicle may request one fifteen-day extension before the vehicle's disposal. *Id.* The ordinance does not expressly provide for different procedures for vehicles that

4

are seven or more years old as compared to for newer vehicles. *See id.*

The parties dispute whether the City provides adequate notice of impending vehicle disposal. It's undisputed, however, that the City sent Santiago two copies of a notice of vehicle impoundment on the same day. Because the identical forms warned that the van was subject to disposal, the City argues that either one satisfies the "additional notice" required before disposal. In addition to alleging that the City's current practice violates both City and state law, Santiago argues that the City's towing and disposal of vehicles without proper notice constitutes an unconstitutional taking without just compensation and an unconstitutional seizure of property. The City has acknowledged that the disputed practice is "identical or similar" to other "additional notices" sent to similarly-situated owners.

## Discussion

The plaintiff bears the burden of establishing that certification is appropriate. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). The plaintiff must establish that the elements of her claims are "capable of proof at trial through evidence that is common to the class rather than individual to its members." *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 818 (7th Cir. 2012) (emphasis omitted).

The approval of class certification is dependent on a two-step analysis under Federal Rule of Civil Procedure 23. *See* Fed. R. Civ. P. 23. First, the class must satisfy the four requirements listed in Rule 23(a): "numerosity, commonality, typicality, and adequacy of representation." *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 858–59 (7th Cir. 2017). Second, the class action must satisfy "at least one of the branches of Rule 23(b)." *Id.* At 859. Santiago argues that her claims satisfy two

provisions of that rule:

> A class action may be maintained if Rule 23(a) is satisfied and if. . .
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. . .

Fed. R. Civ. P. 23(b).

Santiago proposes two classes[1]:

> All individuals and entities who, since June 11, 2017, had their vehicle towed by the City of Chicago due to it being considered "abandoned" by the City under [Section 9-80-110(a)(b) of the Municipal Code of Chicago] and where the vehicle lacked current state registration at the time of the tow (the "Tow Class").
>
> All individuals and entities who, since June 11, 2014, had their vehicle towed—by or through the Department of Streets and Sanitation pursuant to Chapter 9-92 of the Municipal Code of Chicago—and disposed of by the City (the "Vehicle-Disposal Class").

Except where otherwise noted, the Court will merge its analysis for the two proposed classes.

**A.     Numerosity**

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "A class can be certified without determination

---

[1] After filing her initial motion for class certification, Santiago filed a motion to amend the proposed class definitions [dkt. no. 63] and the Court took that motion under advisement. And, after the City filed its response, Santiago made further amendments to the proposed class definitions in her reply brief. The Court grants Santiago's motion to amend the proposed class definitions and accepts the amendments proposed in her reply brief. Except to the extent discussed below, the City's claims that the originally-proposed class definitions are fatally overbroad are now moot.

of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit." *Orr v. Shicker*, 953 F.3d 490, 497 (7th Cir. 2020) (internal quotation marks omitted). However, plaintiffs may not rely on "conclusory allegations that joinder is impractical or on speculation as to the size of the class." *Marcial v. Coronet Ins. Co.,* 880 F.2d 954, 957 (7th Cir. 1989). "While there is no magic number that applies to every case, a forty–member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania*, 850 F.3d at 859.

In support of her motion for class certification, Santiago cites to an investigative report completed by the media outlet WBEZ Chicago. *See* Elliot Ramos, *Takeaways From Our Investigation Into Chicago's Broken Towing Program*, WBEZ NEWS (March 31, 2019), https://www.wbez.org/stories/takeaways-from-our-investigation-into-chicagos-broken-towing-program/21106328-2146-4f38-9938-7e25fc3b3b92. According to that report, the City towed 93,857 cars in 2017, 32,155 of those cars went unclaimed, and just under 24,000 vehicles were sold for scrap value. *Id.* The City does not challenge numerosity at this time but, even if it did, the Court would find Rule 23(a)(1) satisfied for both the tow and vehicle-disposal classes.

**B.     Commonality**

Rule 23(a)(2) requires that there be questions of law and fact common to the class. Fed. R. Civ. P. 23(a)(2). "To satisfy the commonality requirement . . . there needs to be one or more common questions of law or fact that are capable of class-wide resolution and are central to the claims' validity." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018), *cert. denied*, 139 S. Ct. 1465 (2019); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (a plaintiff need only identify at least

one question as to which the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke"). In cases where the defendants have engaged in "the same violative conduct" toward members of the proposed class, the commonality requirement is usually met. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); *see also Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) ("A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)").

In this case, the claims arise out of standardized conduct by the City. Specifically, Santiago accuses the City of engaging in the same conduct with every potential class member: failing to provide notice by mail before towing vehicles deemed abandoned (the tow class) and failing to provide additional notice prior to disposing unclaimed vehicles as required by city and state law (the vehicle-disposal class). The need for determination of the truth or falsity of these issues applies to the plaintiff and all members of each proposed class. *See Dukes*, 564 U.S. at 350. Although there may be facts specific to particular members of the proposed classes, those facts do not destroy commonality when the plaintiff and the proposed class members share a common question. *See Rosario*, 963 F.2d at 1018. That requirement is satisfied here.

Many of what appear to be the City's commonality-related challenges were addressed by Santiago's amendments to the proposed class definitions. *See supra* n. 1. Specifically, Santiago has conceded that the tow class must be limited to owners of vehicles towed under section 9-80-110(a)(b) of the City's municipal code and has agreed to limit the tow class to those claims falling within a two-year period beginning on June 11, 2017. *See Shropshear v. Corp. Counsel*, 275 F.3d 593, 594 (7th Cir. 2001)

(citing 735 Ill. Comp. Stat. 5/13-202 as the "statute of limitations that the federal courts 'borrow' for use in section 1983 suits filed in Illinois"); *see also* 735 Ill. Comp. Stat. 5/13-202 (providing a two-year statute of limitations for personal-injury suits). Santiago has also included the five-year statute of limitations in her proposed vehicle-disposal class definition. *CitiMortgage, Inc. v. Parille*, 2016 IL App (2d) 150286, ¶ 40, 49 N.E.3d 869, 883 ("The limitations period applicable to unjust enrichment claims is five years, as set out in [735 Ill. Comp. Stat. 5/13-205].").

The remaining argument—that the vehicle-disposal class is overbroad because the City's procedures satisfy the notice requirement set out in its ordinances—is unavailing as a basis for denying class certification because it amounts to an argument that Santiago's claim will not succeed on the merits. The parties dispute whether the City's current practice—sending two copies of a notice of vehicle impoundment on the same day—satisfies the ordinance and meets constitutional requirements. The ordinance mandates that when an abandoned vehicle "remains unclaimed . . . for a period of 18 days after notice has been given," the Superintendent of Police or Commissioner of Streets and Sanitation shall authorize its "disposal or other disposition," so long as, "*during that 18-day period*," the Department of Police or the Department of Streets and Sanitation has "sent *an additional notice* by first class mail to the registered owner, lienholder, or other legally entitled person." Chi. Mun. Code § 9-92-100(a) (emphasis added). So, rather than being "frivolous" or "indisputable," it's seriously debatable whether sending two copies of the same notice at the same time meets the ordinance's requirement of an *additional* notice.

**C.  Typicality**

Rule 23(a)(3) requires that the class representative's claims be typical of the rest of the potential class members.  Fed. R. Civ. P. 23(a)(3).  Typicality requires that a court "focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large."  *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).

"The commonality and typicality requirements . . . tend to merge."  *Dukes*, 564 U.S. at 349 n.5.  "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory."  *Lacy v. Cook County*, 897 F.3d 847, 866 (7th Cir. 2018) (internal quotation marks omitted) (alterations accepted).

In this case, Santiago's claims and those of the proposed class members are identical, based upon the same legal theories, and arise out of the same "practice or course of conduct"—that the City failed to provide notice by mail before towing their abandoned vehicles (the tow class) and failed to provide additional notice prior to disposing their unclaimed vehicles (the vehicle-disposal class).  Because Santiago's claims are typical of the claims of the two sets of class members she seeks to represent, this requirement is also satisfied.

**D.  Adequacy of representation**

A representative party must demonstrate that she "will fairly and adequately protect the interests of the class before [the court] may allow a case to proceed."  *Stampley v. Altom Transp., Inc.*, 958 F.3d 580, 585 (7th Cir. 2020) (internal quotation marks omitted).  To demonstrate adequacy of representation, the Court must assess:

10

"the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests," and "the adequacy of the proposed class counsel." *See Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011).

A class is "not fairly and adequately represented if class members have antagonistic or conflicting claims." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993). And a "named plaintiff who has serious credibility problems or who is likely to devote too much attention to rebutting an individual defense may not be an adequate class representative." *Stampley*, 958 F.3d at 585 (internal quotation marks omitted).

The City makes three challenges to adequacy of representation. First, it contends that Santiago is subject to a substantial and unique defense not available to the remainder of the tow class. Specifically, the City argues that Santiago received notice through Velez (Santiago's purported agent), when Velez saw and removed the tow-notice sticker. But even if that's true, as already noted in the Court's decision denying the City's motion to dismiss, a plaintiff who has received actual notice may still challenge the procedural sufficiency of the notice. *See, e.g.*, *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 13–15 (1978) (utility company's customers were deprived of sufficient notice where they received notices from the company stating that their services would be terminated but providing no information about how they could object).

Second, the City recycles its earlier argument that, by sending two copies of a notice of vehicle impoundment on the same day, it satisfied the requirements imposed

11

by city ordinance and state law. That argument fails here too. A central issue in this case is whether sending two copies of the same notice at the same time meets the requirements of the ordinance, so on this point Santiago's situation is typical of that of the other class members. Moreover, all of the proposed vehicle-disposal class members challenge the sufficiency of the notice they received.

Third, the City challenges Santiago's ability to serve as class representative if either class is certified under Rule 23(b)(2). Specifically, the City argues that Santiago lacks "standing" to represent the tow class because any "claimed threat of future injury is conjectural." *See Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017). As the Seventh Circuit explained in *Arreola v. Godinez*, 546 F.3d 788 (7th Cir. 2008), "the inherent problem with the idea of 'standing to bring a class action' is that it conflates the standing inquiry with the inquiry under Rule 23 about the suitability of a plaintiff to serve as a class representative." *Id.* at 795 (alterations accepted) (internal quotations marks omitted). Therefore, "it is best to confine the term 'standing' to the Article III inquiry and thus to keep it separate from the plaintiff's entitlement to relief or her ability to satisfy the Rule 23 criteria." *Id.*

Santiago has satisfied each of the Article III requirements for standing to sue; she has alleged an injury in fact that is traceable to the City's practices, and her injury can be redressed through this lawsuit. *See id.* That said, the City is correct that Santiago's claimed threat of future injury is speculative. "To have [entitlement to] prospective injunctive relief, a plaintiff must face a real and immediate threat of future injury as opposed to a threat that is merely conjectural or hypothetical." *Simic*, 851 F.3d at 738 (internal quotation marks omitted). "A past injury alone is insufficient to establish

[entitlement to] prospective injunctive relief." *Id.* Instead, past injury must be accompanied by "continuing, present adverse effects." *Id.* Santiago has not alleged that she faces a real and immediate threat of future injury with respect to the towing of her vehicle. Though she argues that her new van might be towed, that general, and speculative, assertion "cannot form the basis for allegations of real and immediate future injury sufficient to confer" entitlement to seek injunctive relief. *See id.* at 738–39.

Santiago's representation of the vehicle-disposal class under Rule 23(b)(2) suffers from the same infirmity: her "interest in prospective relief is too tenuous (and was too tenuous even when [s]he first filed this lawsuit) to permit an award of injunctive relief on [her] individual claims." *See Arreola*, 546 F.3d at 799. Just as Santiago has not adequately shown that she faces a real and immediate threat that her new van will be towed by the City, she has not adequately shown a real and immediate threat that the van will be disposed of after having been towed. Santiago has not shown that she has a viable basis for prospective relief on either the tow-class claim or the vehicle-disposal claim, and thus she is not an adequate representative for either proposed Rule 23(b)(2) class.

As for adequacy of representation for the proposed damages classes under Rule 23(b)(3), the Court has found nothing in the record to suggest that Santiago's interests are contrary to those of the proposed class members, that she is insufficiently interested, or that her counsel are unqualified or inexperienced. In short, the Court finds that Santiago and her counsel will provide adequate representation and are well-suited to protect the interests of both proposed classes under Rule 23(b)(3).

Because the injunctive relief classes do not meet Rule 23(a)'s adequacy-of-

13

representation requirement, the Court need not discuss certification of those classes under Rule 23(b)(2). The damages classes satisfy each of the Rule 23(a) factors, so the Court will next proceed to assess certification of those classes under Rule 23(b)(3).

**E.     Rule 23(b)(3)**

**1.     Predominance**

Under Rule 23(b)(3), a plaintiff must demonstrate that "questions of law and fact common to class members predominate over any questions affecting only individual members" and also demonstrate that class action is the superior method for "fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Predominance is akin to commonality, but the former is a more stringent requirement than the latter. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623–624 (1997). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.*

The predominant issues in this case for each class are the adequacy of notice given to the proposed class members before the tow (the tow class) and the constitutionality of the City's standard practices (the vehicle-disposal class). These issues are common to all members of the proposed classes. The City argues that individualized issues predominate and should preclude certification of the tow class. Specifically, the City contends that the Court would need to conduct individualized inquiries as to: (1) whether each class member received "actual notice" before the tow; (2) whether they intended to abandon their vehicles; (3) "the nature of each owner's particular use"; and (4) the calculation of damages.

Santiago makes it clear, however, that for the tow class she is asserting only a

14

facial challenge: the ordinance is unconstitutional because it fails to require adequate notice before a vehicle has been towed. In a facial constitutional challenge, a plaintiff's personal circumstances do not matter. *Ezell v. City of Chicago*, 651 F.3d 684, 697 (7th Cir. 2011). "Once standing is established, the plaintiff's personal situation becomes irrelevant." *Id.* In other words, an owner-by-owner or vehicle-by-vehicle assessment is not required. And even if there is some need for individual inquiries, commonality as to every issue is not required for class certification. *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 381 (7th Cir. 2015). Courts may complete those inquiries through "case-management tools" and "'streamlined mechanisms' such as affidavits and proper auditing procedures." *Beaton v. SpeedyPC Software*, 907 F.3d at 1030.

The City also contends that a potential member-by-member damages calculation for the tow class would add "individualized complexities." But the "presence of [such] individual issues is not fatal to class certification and does not change the fact that [the defendant's] standard conduct and procedures are central and common to each potential plaintiffs' claims and predominate over these potential individual issues." *Robledo v. City of Chicago*, 444 F. Supp. 2d 895, 908 (N.D. Ill. 2006); *see also Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("It would drive a stake through the heart of the class action device . . . to require that every member of the class have identical damages. If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification."). Even if damages end up needing to be determined for class members individually or in

groups, that does not make individual issues predominate over the common questions. They do not.

Regarding the vehicle-disposal class, the City repeats many of its tow class arguments. It asserts that individual inquiries are required to determine (1) whether the proposed class members received "actual notice," (2) the intent of the owners and the respective use and value of each disposed vehicle, and (3) individual damages. For the same reasons already discussed, the Court rejects these contentions at this time. Finally, the Court also overrules the City's assertion that state law requires the vehicle-disposal class to show prejudice from the City's failure to strictly follow its ordinance. The class's takings claim is based in federal law, not state law.

### 2. Superiority

In evaluating the superiority of the class-action mechanism, courts focus not "on the convenience or burden of a class action suit *per se*, but on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004). "[T]he predominance analysis . . . has a tremendous impact on the superiority analysis . . . for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." *Id.*

The Court is satisfied that class action is the superior method for adjudicating these claims. Santiago alleges violations of her rights by the City; her claims, and the claims of the proposed class members, "turn on the same law and standardized practices, [and] individual adjudication of the claims of each class member would be an

16

inefficient use of judicial resources." *See Robledo*, 444 F. Supp. 2d at 908.

## Conclusion

For the foregoing reasons, the Court grants plaintiff's motion for class certification in part [dkt. no. 45]. The Court denies plaintiff's request for certification of injunctive relief classes under Rule 23(b)(2), because she has not shown that she is an adequate representative of those classes. The Court certifies the following classes under Rule 23(b)(3):

> All individuals and entities who, since June 11, 2017, had their vehicle towed by the City of Chicago due to it being considered "abandoned" by the City under [Section 9-80-110(a)(b) of the Municipal Code of Chicago] and where the vehicle lacked current state registration at the time of the tow (the "Tow Class").

> All individuals and entities who, since June 11, 2014, had their vehicle towed—by or through the Department of Streets and Sanitation pursuant to Chapter 9-92 of the Municipal Code of Chicago—and disposed of by the City (the "Vehicle-Disposal Class").

The Court also appoints the following attorneys as class counsel: Myron M. Cherry, Jacie C. Zolna, Benjamin R. Swetland, Jeremiah Nixon, and Jessica C. Charvin. The case is set for a telephone status hearing on November 18, 2020 at 9:15 a.m. to set any necessary schedules for further proceedings, using call-in number 888-684-8852, access code 746-1053. Counsel should wait for the case to be called before announcing themselves. Prior to the hearing, counsel are to confer regarding a plan for sending notice to the certified classes.

                                                                              _____
                                                                              MATTHEW F. KENNELLY
                                                                              United States District Judge

Date: November 15, 2020