IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREA SANTIAGO, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) Case No. 19-cv-4652 ) ) |
| v. | ) ) District Judge Matthew F. Kennelly |
| CITY OF CHICAGO, a Municipal Corporation, | ) ) ) |
| Defendant. | ) ) ) |

**DEFENDANT CITY OF CHICAGO'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL CLASS ESI PRODUCTION**

On December 13, 2021, the Seventh Circuit vacated the November 15, 2020 order that certified the Tow and Vehicle-Disposal Classes. Much of the decision is devoted to discussing the lack of clarity about the nature of Santiago's claims, (Dkt. 114-1, at 11-16), which was a focus of the parties' briefing and oral arguments on appeal. Based on this, the Seventh Circuit suggested that "the parties may want to consider amending their pleadings, accounting for all claims, clearly defining the proposed classes and the claims within them" before revisiting class certification. (*Id.* at 17.) Thus, the first order of business on remand should be for Santiago to amend her complaint and clarify the nature and scope of her claims. And because the scope of discovery is ultimately determined by the parties' "claim[s] [and] defense[s]" and must always be "proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), it would be prudent to clarify the scope and nature of Santiago's claims before considering her request to order the City to produce the discovery sought in her motion to compel. (*See* Dkt. 111.)

Even if she is not required to amend, her motion should be denied in any event because the records she seeks are not relevant to her individual claims as pleaded, are disproportionate to the

1

needs of the case, and would impose on the City the burden of producing almost a half million pages of additional documents containing personally identifiable information ("PII") of nonparties regarding issues unrelated in any way to her individual notice claims. Additionally, because the only possible relevance the records could have would be to identify potential members of the now-decertified Tow Class, any justification for Santiago's request that existed when she filed the motion has been obviated by the Seventh Circuit's intervening decision.

## BACKGROUND

Santiago sued the City over the 2018 tow and disposal of her van. Although the parties disputed the scope and nature of her claims on appeal, the claims she last presented to this Court are (1) that the tow violated her due process rights because the City issued her pretow notice by affixing a sticker to her van, rather than mailing her a notice, and (2) that the disposal of her van unjustly enriched the City or was a Fifth Amendment taking because the City mailed her two pre-disposal notices on the same day.

In addition to documents related to the tow and disposal of Santiago's vehicle or that she otherwise sought in relation to class certification briefing, the City has produced seven volumes of ESI during the pendency of the City's appeal (Bates Nos. C000592-063299). The City also identified certain categories of documents within the ESI hit results that it objected to producing en masse based on the stay of classwide discovery pending appeal and the burden of completing a pre-production review of these additional 12,000 documents, which run to nearly half a million pages. The City identified and produced samples of each category to Plaintiff's counsel, which Plaintiff notably omitted from her motion. Ex. A, Dec. 2, 2021 Ltr. from J. David Duffy to J. Zolna. The documents in these categories primarily involve individual resident complaints about vehicles

2

being abandoned, regardless of whether those complaints ever resulted in the City writing the vehicles up as abandoned, let alone towing them as abandoned:

- Category no. 1 involves communications from non-party individuals to an Alderman's office complaining about allegedly abandoned vehicles. Ex. B, Bates Nos. C063157-C063159;

- Category no. 2 involves communications from non-party individuals complaining about allegedly abandoned vehicles through an online City feedback form. Ex. C, Bates No. C063299[1];

- Category no. 3 involves communications from non-party individuals directly to the City's Department of Streets and Sanitation ("DSS") concerning allegedly abandoned vehicles. Ex. D, Bates No. C063292-C063293;

- Category no. 4 involves communications from non-party individuals to the Mayor's Office about allegedly abandoned vehicles. Ex. E, Bates Nos. C063294-C063298;

- Category no. 5 involves internal DSS communications regarding the status of efforts to investigate individual complaints about allegedly abandoned vehicles (*e.g.*, complaints reflected in category nos. 1 through 4) . Ex. F, Bates No. C063291;

- Category no. 6 involves copies of individual post-tow notification letters sent to non-parties. Ex. G, Bates Nos. C063160-C063161;

- Category no. 7 involves printouts of the City's Service Request Summary Report form that documents individual complaints about allegedly abandoned vehicles (*e.g.*, complaints reflected in category nos. 1 through 4). Ex. H, Bates Nos. C063162-C063163;

- Category no. 8 involves printouts of the City's Service Request Query Reports that serve as a summary compilation chart of Service Request Summary Reports (category no. 7). Ex. I, Bates Nos. C063164-C063170; and

- Category no. 9 involves spreadsheets compiling the status of vehicles written up as abandoned which and were mailed pretow notices. Ex. J, Bates Nos. C063171-C063290.

Most of these records contain non-party PII, both from the residents complaining about the vehicles and requesting they be towed, as well as from the vehicle owners themselves.

---

[1] In preparing its opposition to Santiago's motion to compel, the City realized the sample for this category was inadvertently omitted from its last production volume. The sample is being produced concurrently with this filing.

## ARGUMENT

Santiago has made no showing why any of these ESI categories relate to her individual claims or should be produced at this stage, particularly now that the certification order has been vacated and classwide discovery remains stayed.

In moving to compel the City to produce these broad categories of ESI, Plaintiff ignores that under Rule 26(b)(1) the scope of discovery is always at issue and at least the following factors favor the City's refusal to produce these last remaining categories of ESI: the importance of the issues at stake, the amount in controversy, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. FRCP 26(b)(1); see also *Miner v. Government Pymt. Serv., Inc.*, No. 14-cv-7474, 2017 WL 3909508 (N.D. Ill., September 5, 2017) (citing the Rule 26(b) factors and recognizing that pre class certification discovery should "not exceed what is necessary to permit the court to make an informed decision on class certification").

First, Santiago claims that the City "acknowledged" the documents were relevant "to the merits" of her claim because they were hits to the agreed-upon ESI terms and therefore the City has waived any limits on production. (Mot. 4.) But the City never conceded that all documents responsive to the ESI terms were relevant. Indeed, the City had no way to know what the ESI searches would reveal and whether the search terms, which seemed reasonable and likely to produce responsive information, would produce material that had absolutely no arguable relationship to Plaintiff's pretow and posttow notice claims. Now that it has conducted an initial examination of the categories, and produced samples of the categories to counsel, it is clear that production of these categories of ESI are not proportional to the remaining issues in the case and their production would not advance the litigation's resolution. In fact the only thing that production

of this voluminous dataset as collected would do is identify some people who would potentially be class members, which the City has always refused to produce.

Second, Santiago generally asserts that these categories of documents are relevant to the "erroneous deprivation" factor of the test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976) for her pretow notice claim. (Mot. 1-4.) But she provides no specific explanation why these categories of documents relate to that issue. To the contrary, these categories primarily include complaints by residents about abandoned vehicles in their neighborhood, irrespective of whether the vehicle subsequently was written up as abandoned by a City investigator or towed as abandoned. Santiago provides no explanation for why complaints by people seeking to have other peoples' cars towed would have any bearing on claims of "erroneous deprivation." Nor does she make any showing that *every* resident complaint about an allegedly abandoned vehicle received by the City is relevant to her individual claim that she should have received pretow mailed notice.

Her assumption that the *Mathews* test applies here is also flawed. The Supreme Court has rejected the use of the *Mathews* test "when confronted with questions regarding the adequacy of the method used to give notice." *Dusenbery v. United States*, 534 U.S. 161, 168 (2002). Instead, for notice challenges, the Court "regularly turn[s]" to the "more straightforward test of reasonableness under the circumstances" established in *Mullane v. Central Hoover Bank & Trust Co.*, 339 U.S. 306 (1950). *Dusenbery*, 534 U.S. at 167-68. While Santiago now attempts to present her claim as one challenging the method of notice and the "opportunity for hearing prior to deprivation," (Mot. 1), she has previously disclaimed any intention of advancing a pre-deprivation hearing claim.[2]

---

[2] On appeal, Santiago tried to shift her claim to one about a lack of pretow hearing. But as the City pointed out in its appellate briefing, her Tow Class claims challenged only the method of notice. (Dkt. 1-1, ¶¶ 32, 35, 40.) Indeed, the City's motion to dismiss stated Santiago "does not take issue with the contents of the notice the City provides or with the opportunity provided for a hearing," (Dkt. 27 at PageID # 157), and Santiago did not respond by saying her case

Third, even if Santiago could establish that this ESI related to *Mathews*'s erroneous deprivation factor and that *Mathews*'s erroneous deprivation factor is at issue to her pretow notice claim, the discovery should still be refused because the other Rule 26 factors disfavor its production. For Santiago, it is not simply enough that the discovery being sought is relevant to an issue, the burden and expense of production of that information must not outweigh its likely benefit. While Santiago correctly notes that the City has collected the ESI, preliminarily categorized it, and produced samples, the City has not comprehensively reviewed the data. But, more importantly, here, the burden is not so much the collection of the dataset, which is already complete, it is instead the burden of identifying and producing third-party PII in 12,000 records with nearly 500,000 pages when Plaintiff's claim does not support it. Citizens who complained to the City about the presence of abandoned vehicles on their streets never could have contemplated that their identity would be compromised in the course of litigation where that complaint does not bear on any issue in the case. Thus, to allow Plaintiff to examine each and every complaint, the only way to avoid having compromised the identity of these individuals is to go through the painstaking and costly process of redacting these records. Such a process is in no way justified where the issue is not relevant to her claim in the first place.

To avoid this burden and reach a compromise, the City produced the attached samples from the described categories and, during the meet-and-confer process, invited a counterproposal where

---

was about a pre-tow hearing. Quite the opposite, she criticized the City's reliance on *Soffer v. City of Costa Mesa*, 607 F. Supp. 975 (C.D. Cal. 1985), *aff'd in part*, 798 F.2d 361 (9th Cir. 1986), stating *Soffer* "h[eld] only that due process does not require 'pre-deprivation hearings' prior to towing an abandoned vehicle" and did not decide "what type of notice due process requires under such circumstances." (Dkt. 38 at PageID # 230 n.5.) In other words, Santiago argued that a case rejecting a claim for a pre-deprivation hearing was irrelevant because she instead was challenging the method of notice. Likewise, her class certification motion stated her claim was whether towing abandoned vehicles "without providing prior notice by mail" violates due process. (Dkt. 45 at PageID # 321.) These changing theories of the case demonstrate why the appellate court suggested that Plaintiff should amend her complaint.

the City would make additional, a more targeted production from the 12,000 documents. Santiago, however, filed this motion without making such a counterproposal.

Finally, Santiago's argument that these documents "do not constitute class discovery," (Mot. 4-5), ignores the nature of the documents and the City's requested stay. Contrary to Santiago's claim, the City's motion for a stay was not solely "to prevent class notice from being sent out." (Mot. 4.) The City's motion specifically "request[ed] that *classwide discovery*," in addition to adoption of a class notice plan and issuance of class notice, "be stayed" pending appeal. (Dkt. 88, at 9 (emphasis added).) As explained above, the documents at issue here are "classwide" discovery because they concern complaints about individual vehicles, not Santiago's, and have no apparent connection to her claims about the City's undisputed procedures for issuance of pretow notice or the timing of posttow notice. Indeed, because the records primarily concern resident complaints reporting vehicles as abandoned, they may never have led to a pretow notice, let alone a posttow notice, being issued. In any event, the Seventh Circuit's decision eliminates any value that producing these records might have to efforts to identify members of the Tow Class because it decertified the Tow Class and such overly broad discovery should be refused.

## CONCLUSION

Because Santiago has failed to show that the documents she seeks are relevant to her individual claims and has made no showing that this discovery is proportionate to the needs of this case or justifies the burden that the production would entail, the City respectfully requests the Court deny her motion to compel.

| | |
|---|---|
| Date: December 14, 2021 | Respectfully submitted,<br><br>CELIA MEZA,<br>Corporation Counsel for the City of Chicago,<br><br>By: /s/ J. David Duffy |
| Jennifer Zlotow<br>jennifer.zlotow@cityofchicago.org<br>Peter Cavanaugh<br>peter.cavanaugh@cityofchicago.org<br>City of Chicago Department of Law<br>30 N. LaSalle Street, Suite 1230<br>Chicago, Illinois 60602 | J. David Duffy<br>dduffy@thompsoncoburn.com<br>Patrick Morales-Doyle<br>pmoralesdoyle@thompsoncoburn.com<br>Thompson Coburn LLP<br>55 East Monroe Street, 37th Floor<br>Chicago, Illinois 60603<br>(312) 346-7500 |

*Counsel for Defendant City of Chicago*