**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT**

| | |
|---|---|
| **ANDREA SANTIAGO, individually and** ) | |
| **on behalf of all others similarly situated,** ) | |
| ) | **Case No. 19-cv-4652** |
| **Plaintiff,** ) | |
| **v.** ) | |
| ) | **Hon. Matthew F. Kennelly** |
| **CITY OF CHICAGO,** ) | |
| **a Municipal Corporation,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## AMENDED COMPLAINT

Plaintiff Andrea Santiago ("Santiago" or "Plaintiff"), individually and on behalf of all others similarly situated, complains against Defendant City of Chicago (the "City" or "Defendant") as follows:

### INTRODUCTION

1.      In 2005, the Illinois legislature amended Section 4-208 of the Illinois Vehicle Code to require municipalities having a population of more than 500,000 to provide owners of vehicles that have been towed and impounded an "additional notice" warning them that their vehicles may be disposed of if they are not reclaimed. *See* 625 ILCS 5/4-208; *see also* 2005 Ill. Legis. Serv. P.A. 94-650 (S.B. 501). This notice is in addition to the initial notice advising individuals that that their vehicle has been impounded. *Id.*

2.      This amendment was brought about as a result of towing abuses in the City of Chicago. *See* Illinois House Transcript, 2005 Reg. Sess. No. 60 (referencing "unscrupulous towing companies[,]" noting that the "Bill now only appl[ies] to the City of Chicago[,]" and that

"what it first does is gives a second notice to these cars that have been towed and changes the dates from 15 to 18") (comments of Representatives Parke and Rita).

3.      Indeed, the law was specifically aimed at the City of Chicago. *See* Illinois Senate Transcript, 2005 Reg. Sess. No. 29 ("We want to address the towing situation in the City of Chicago to make it easier for someone who's had their car towed, for whatever reason….") (comments of Senator Hendon). The General Assembly made clear that:

> [W]hatever's established is not established under the basis of simply putting more money into the coffers of the City of Chicago budget but is compassionate towards the citizens of Chicago….

Illinois House Transcript, 2005 Reg. Sess. No. 60 (comments of Representative Parke); *see also id.* ("It sets up a program for the City of Chicago. It mandates them to set up a program, give second notices to cars that have been relocated.") (comments of Representative Rita).

4.      Unfortunately, this law did not stop the towing abuses. In fact, according to a recent WBEZ investigation, the City towed 93,857 vehicles in 2017 alone, of which 32,155 remained unclaimed. The City sells those unclaimed vehicles to third parties, including the City's towing vendor, United Road Towing. This happened to just under 24,000 vehicles in 2017.[1]

5.      The root of this problem is the fact that the City failed to amend its Municipal Code to come into compliance with the greater protections for Chicago residents that the General Assembly added to Section 4-208 of the Illinois Vehicle Code in 2005.

6.      For more than a decade after the General Assembly amended Section 4-208 of the Illinois Vehicle Code, Section 9-92-100 of the Municipal Code of Chicago ("MCC") continued

---

[1] *See* Elliot Ramos, *Takeaways From Our Investigation Into Chicago's Broken Towing Program*, WBEZ NEWS (March 31, 2019), https://www.wbez.org/stories/takeaways-from-our-investigation-into-chicagos-broken-towing-program/21106328-2146-4f38-9938-7e25fc3b3b92.

to track the pre-2006 version of the statute. It was not until November 16, 2016, that the MCC

was amended to include the protections the General Assembly had mandated more than a decade

earlier:

> Whenever an abandoned, lost, stolen, or other impounded motor vehicle, or a
> vehicle determined to be a hazardous dilapidated motor vehicle pursuant to
> Section 11-40-3.1 of the Illinois Municipal Code, remains unclaimed by the
> registered owner, lienholder or other person legally entitled to possession for a
> period of ~~15~~ 18 days after notice has been given pursuant to Section 9-92-070 (a)
> or (b), if, during that 18-day period, the department of police or department of
> streets and sanitation has sent an additional notice by first class mail to the
> registered owner, lienholder, or other legally entitled person, the superintendent of
> police or ~~the~~ commissioner of streets and sanitation shall authorize the disposal or
> other disposition of such unclaimed vehicles….

Coun. J. Nov. 16, 2016 at 38010; *see also* MCC § 9-92-100.

7.       Despite this belated change to the MCC, the Department of Streets and Sanitation

still fails to provide motorists the required notice of impending vehicle disposal as required by

625 ILCS 5/4-208 and MCC § 9-92-100. In other words, the City is disposing of citizens'

vehicles without telling them and keeping the proceeds of the sale.

8.       To make matters worse, the City also fails to provide any notice by mail

whatsoever *prior* to towing vehicles that it considers abandoned and that do not have current

registration. Ironically, the City only places a window sticker on a vehicle that it considers

abandoned. But no notice is mailed or otherwise actually delivered to the owner. Furthermore,

unlike the pre-tow notice mailed to the owner of a vehicle with current registration, the window

sticker does not provide for a hearing or avenue to contest the claim of abandonment.

9.       In fact, the City's ordinance only provides that notice be given *after* the vehicle

has already been towed, at which point the City has already tacked on hefty towing and storage

fees. *See* MCC § 9-92-070 ("Whenever any motor vehicle has been impounded pursuant to the

traffic code, the department of police or the department of streets and sanitation shall within ten

days *thereafter* … cause to be sent to such owner and to such other person legally entitled to possession, if known, a notice of the impoundment including a full description of the vehicle.") (emphasis added).

10.     Such a practice—towing without telling—deprives motorists of due process. *See Perry v. Vill. of Arlington Heights*, 905 F. Supp. 465, 470 (N.D. Ill. 1995) (finding that provision of municipal code that allowed the towing of abandoned vehicles without prior notice to the owner by certified or registered mail violates procedural due process); *Graff v. Nicholl*, 370 F. Supp. 974, 984 (N.D. Ill. 1974) (holding that placing a notice on the windshield of an allegedly abandoned vehicle—followed by a post-tow notice by mail—is insufficient and "must be supplemented by the more dependable [pre-tow] notice by registered or certified mail").

11.     Notably, under the City's abandoned vehicle ordinance, a vehicle may be deemed abandoned and towed only if it is not moved for more than seven days *and* "is apparently deserted[.]" MCC § 9-80-110. By unwritten policy, however, the City ignores the "apparently deserted" requirement under its own ordinance. The City's Rule 30(b)(6) representative and Assistant Commissioner who supervises the City's abandoned tow program explicitly confirmed this policy, stating:

> [I]t doesn't matter the car or condition, you know, in terms of whether you cleaned it or whether you spiffed it up or whether you put its not abandoned in the windows, a car cannot sit there for seven consecutive days without moving it. That's the law, sir. That is the law, and that is what we enforce.
> ***
> If that car is sitting there for seven consecutive days on the public way and you haven't moved it and you haven't called, the vehicle is eligible for tow.

Dep. Trans. Catherine Hennessey, 284:11-285:3, attached as Ex. A.

12.     That is not the law. Under MCC § 9-80-110, a vehicle may not be deemed abandoned when it is not "apparently deserted"—for example when the vehicle has been

"cleaned" or the owner "spiffed it up" or "put its not abandoned [signs] in the windows[.]" But, as this testimony confirms, the City simply does not enforce the law as written. Instead, the City deems vehicles abandoned solely based on whether or not they have been moved within seven days.

13.    Worse, the City does not publish its illegal policy in any form. There is no publication, website, or any other form of notice that tells Chicagoans that their vehicles may be towed even when they are not "apparently deserted" under MCC § 9-80-110. Even the window sticker that the City places on allegedly abandoned vehicles does not tell vehicle owners that their vehicles will be towed even when they are not "apparently deserted[.]"

14.    Under this unwritten policy, the only way a vehicle owner can avoid a tow under MCC § 9-80-110(a)(b) is to move their vehicle in the presence of a City employee or call the City's Abandonment Office and confirm over the phone that they have moved the vehicle or will be moving the vehicle promptly. But, again, not even the window sticker provides this information. Nor does the window sticker advise vehicle owners that they have the right to contest the City's finding that their vehicle is abandoned. Nor is any such notice issued by mail when a vehicle's registration has expired.

15.    The City does not just fail to provide proper notice that an abandoned vehicle is eligible for tow, it also fails to give owners the proper notice that a towed vehicle is eligible to be destroyed. Under the MCC, the City is only permitted to "dispose" of an abandoned vehicle— *i.e.*, sell it for scrap—after two subsequent notices have been issued to the vehicle owner. Specifically, MCC § 9-92-100 authorizes disposal only "18 days *after* notice has been given pursuant to Section 9-92-070(a) or (b), if, *during that 18-day period*, the department of police of

department of streets and sanitation has sent an additional notice by first class mail[.]" MCC § 9-92-100 (emphasis added).

16.     In other words, MCC § 9-92-100 specifically contemplates the issuance of an initial notice followed by an "additional notice" sent "during that 18-day period" that begins "after" the initial notice is sent. By its plain language, the MCC requires the City to send two notices, separated in time, before it disposes of an allegedly abandoned vehicle.

17.     But the City never sent the second, successive notice required by its own Code. Instead, bafflingly, the City issues two copies of the same notice to vehicle owners on the same day. As a matter of practice, the City never sends the "additional notice" "during th[e] 18-day period" that begins "after" the issuance of the first notice. Despite failing to provide the proper notices, the City disposes of the vehicles by selling them to United Road Towing for a paltry $15 dollars each.

18.     In short, the City takes vehicles with no warning or opportunity to contest the claim of abandonment prior to the seizure. While the City allegedly sends a notice of impoundment to the owner after it has already been *impounded*, it fails to send the required additional notice when the City intends on *disposing* of the vehicle. The City also does not even properly enforce its own abandoned vehicle ordinance and deems vehicles abandoned and subject to tow based solely on not being moved for seven days without regard to whether or not the vehicle is "apparently deserted" as the ordinance requires. As a result, thousands of cars are in effect stolen from citizens of Chicago and sold without proper notice and due process.

### PARTIES

19.     Plaintiff Andrea Santiago ("Santiago") is an individual who resides in Cook County, Illinois.

20.     Defendant City of Chicago is an Illinois Municipal Corporation.

**JURISDICTION AND VENUE**

21.     Jurisdiction is proper pursuant to 735 ILCS 5/2-209(a)(1), (b)(3) and (c) and venue is proper pursuant to 735 ILCS 5/2-101 because Plaintiff is a resident of Cook County, Illinois, Defendant is the City of Chicago, and the events and transactions giving rise to the claims asserted herein occurred in Cook County, Illinois.

**FACTUAL ALLEGATIONS**

22.     Plaintiff is senior citizen with multiple sclerosis who is confined to a wheelchair. For years she owned a 1998 GMC Savana 1500 (the "Van"). The Van was Plaintiff's primary mode of transportation and was outfitted with special lift equipment that allowed her to enter and exit the vehicle in her wheelchair.

23.     Plaintiff has lived at her current address for approximately 20 years and owned the Van since approximately 2006. During this lengthy period of time, Plaintiff's family routinely parked the Van on the street on her block as there is not enough room for Plaintiff to get in to and out of the Van in her wheelchair in her garage.

24.     According to City records, a sticker was placed on the window of the Van on June 5, 2018 by a City employee. At that time, the Van was legally parked on Plaintiff's block with a valid City sticker displayed in the windshield. The Van also had disability license plates affixed to it and the wheelchair lift equipment was clearly visible through the vehicle's windows.

25.     Plaintiff never saw the window sticker or became aware of it. Plaintiff's daughter saw the window sticker, removed it, and placed handwritten signs in the interior windows of the Van—plainly visible to passersby—that stated the vehicle was not abandoned. Plaintiff's

7

daughter did not call the City's Abandonment Office, but did move the Van up the block. Plaintiff's daughter, however, did not inform Plaintiff of the window sticker.

26.     Several days later, Plaintiff's daughter noticed that the Van was missing. She called the City, but did not get any information about the missing vehicle. She also called the police and was told that the Van was not reported as being towed. Plaintiff's daughter continued to call the City and, at some point, was finally told that the vehicle was towed. According to City records, the vehicle was towed on June 13, 2018 and was impounded at Pound #3N at 701 N. Sacramento. At no point prior to the tow was Plaintiff provided any notice by mail warning her that her Van may be towed or given the opportunity to contest the finding of abandonment. Plaintiff also never saw the window sticker, nor did she ever become aware of the window sticker prior to the tow of her Van.

27.     Plaintiff's daughter attempted to retrieve the Van at the impound lot, but was unsuccessful. In the meantime, the City already assessed Plaintiff a towing fee and ever-increasing storage fees. At some point, Plaintiff's daughter was finally told that the Van was already disposed of. Specifically, as is its practice, the City sold the Van to the company that towed it—United Road Towing—who, in turn sold it for scrap to a salvage yard where it was stripped and crushed. None of the proceeds of the sale or resale of the Van were remitted to Plaintiff.

28.     Pursuant to MCC § 9-92-070, the City claims that it mailed Plaintiff two copies of the post-tow "notice of vehicle impoundment" on or about June 15, 2018. The City, however, never mailed Plaintiff the subsequent notice of impending vehicle disposal during the 18-day period after the initial notice was sent as required by 625 ILCS 5/4-208 and MCC § 9-92-100. The City's failure to do so was done willfully and wantonly. Employees within the Department

8

of Streets and Sanitation are well aware of the additional notice requirements of 625 ILCS 5/4-208 and MCC § 9-92-100 and rely on the procedures set forth therein for the towing, impounding, and disposal of abandoned vehicles. The Department of Streets and Sanitation nonetheless deliberately or with utter indifference fails to send the additional and subsequent notice warning vehicle owners of the impending disposal of their vehicles.

29.     In short, the City towed Plaintiff's vehicle without providing any pre-tow notice by mail or opportunity to contest the finding of abandonment. The City also failed to send the required "additional notice" warning her that her vehicle may be disposed of pursuant to MCC § 9-92-100(a). While Plaintiff has since obtained a replacement vehicle, she continues to park that vehicle on her street in the same manner as her last vehicle that was taken from her by the City. Plaintiff fears that the City will again tow, impound, and dispose of her vehicle without notice.

30.     On October 25, 2018, Plaintiff filed a claim with the City in an effort to recover fair compensation for her vehicle. On May 13, 2019, the City denied her claim and stated that it was "unable to assist [her] with any settlement of damages or costs arising from this incident."

31.     This is not an isolated incident, but rather is standard operating procedure by the City. As a matter of practice, the City does not provide notice to owners of vehicles that it claims are abandoned and that lack current registration prior to towing and impounding those vehicles. The City, quite literally, is taking citizens' property—one of the most essential assets someone owns—without any notice by mail. With respect to tows done by or through the Department of Streets and Sanitation, the City also, as a matter of practice, fails to send the required additional notice warning citizens that their vehicles may be disposed of pursuant to MCC § 9-92-100(a).

32.     As a result, the City has unlawfully seized, impounded, and disposed of thousands of vehicles. The City also assesses hefty fines and other amounts, which, unless paid, will result in a vehicle being held by the City indefinitely and/or disposed of.

### CLASS ALLEGATIONS

33.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Procedure on behalf of a class of similarly situated individuals defined as follows:

> All vehicle owners who, since June 11, 2017, had their vehicle towed by the City of Chicago due to it being considered "abandoned" by the City under Municipal Code of Chicago § 9-80-110(a)(b) and where the vehicle lacked current state registration at the time of the tow (the "Tow Class").

Plaintiff seeks class certification of the claims brought in Counts I-III on behalf of the Tow Class.

34.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Procedure on behalf of an additional class of similarly situated individuals defined as follows:

> All vehicle owners who, since June 11, 2014, had their vehicle towed—by or through the Department of Streets and Sanitation pursuant to Chapter 9-92 of the Municipal Code of Chicago—and disposed of by the City of Chicago (the "Vehicle Disposal Class").

Plaintiff seeks class certification of the claims brought in Counts IV-X on behalf of the Vehicle Disposal Class.

35.     The members of the classes are so numerous that joinder of all members is impracticable. As noted above, the City impounded 93,857 vehicles in 2017 alone, of which 24,000 were sold to United Road Towing for more than $4 Million. The exact number of members of the classes can be determined from records maintained by the City.

36.     Common questions exist as to the classes that will predominate over questions, if any, that solely affect individual class members. These common questions include:

a.      Whether the procedures set forth in the MCC authorizing the tow and impoundment of abandoned vehicles without providing prior notice by mail violates the due process clause of the United States and Illinois Constitutions.

b.      Whether Plaintiff and class members are entitled to an injunction preventing the City from towing and impounding vehicles it claims are abandoned without first sending a notice to the owner by certified or registered mail and preventing the City from collecting or enforcing any fines, fees, or other amounts assessed in connection with such tows and impoundments.

c.      Whether it was unjust for the City to retain payment for the sale of a vehicle and/or other amounts it received in connection with the tow and impoundment of an allegedly abandoned vehicle when said tow and impoundment was unconstitutional.

d.      Whether the City's practice of sending two copies of the same post-tow notice on the same day complies with the additional notice requirement contained in 625 ILCS 5/4-208 and/or MCC § 9-92-100.

e.      Whether the City acted unlawfully and without legal authorization when it disposed of vehicles pursuant to Chapter 92 of the MCC without sending the required additional notice of impending vehicle disposal as required by 625 ILCS 5/4-208 and/or MCC § 9-92-100.

f.      Whether Plaintiff and class members are entitled to an injunction preventing the City from disposing of unclaimed vehicles without sending the additional notice of impending vehicle disposal as required by 625 ILCS 5/4-208 and/or MCC § 9-92-100.

g.      Whether it was unjust for the City to retain payment for the sale of a vehicle or other amounts it received when it disposed of it illegally and in violation of 625 ILCS 5/4-208 and/or MCC § 9-92-100.

h.      Whether Plaintiff and class members are entitled to an order of mandamus requiring the City to send the additional notice of impending vehicle disposal as required by 625 ILCS 5/4-208 and/or MCC § 9-92-100.

i.      Whether the City's practice of disposing of vehicles pursuant to Chapter 92 of the MCC without sending the required additional notice of impending vehicle disposal as required by 625 ILCS 5/4-208 and/or MCC § 9-92-100 resulted in the taking of property without just compensation in violation of the United States and Illinois Constitutions.

j.     Whether the City's practice of disposing of vehicles pursuant to Chapter 92 of the MCC without sending the required additional notice of impending vehicle disposal as required by 625 ILCS 5/4-208 and/or MCC § 9-92-100 resulted in an unreasonable seizure in violation of the United States and Illinois Constitutions.

37.     Plaintiff will fairly and adequately protect the interests of members of the classes. Plaintiff has retained competent counsel experienced in class action litigation in state and federal courts. Plaintiff has no interest adverse to any members of the classes. Plaintiff intends to prosecute this case vigorously on behalf of herself and the classes.

38.     A class action is an appropriate method for the fair and efficient adjudication of this controversy because it involves the legality of a ticketing practice that applies equally to Plaintiff and all members of the classes. A class action can therefore best secure the economies of time, effort, and expense while accomplishing the ends of law and equity that this action seeks to achieve.

## COUNT I
### Declaratory and Injunctive Relief on Behalf of the Tow Class

39.     Plaintiff adopts and incorporates by reference all prior paragraphs as if fully set forth herein.

40.     The procedures set forth in Chapter 9-92 of the MCC authorizing the tow and impoundment of abandoned vehicles without providing prior notice by certified or registered mail violate the due process clauses of the United States and Illinois Constitutions. *See* U.S. Const. amend. XIV; Ill. Const. art. I, § 2.

41.     Further, the City's failure to give vehicle owners notice of their right to contest the City's finding that their vehicles are abandoned and eligible for tow—or the procedure for making such a contest—violates the due process clauses of the United States and Illinois Constitutions.

42.     The contents of the window sticker—the sole form of notice provided to owners of unregistered and allegedly abandoned vehicles—also fails to provide due process to vehicle owners because on its face it is not reasonably calculated to provide actual notice to vehicle owners. It is facially absurd to provide notice to vehicle owners by affixing stickers to vehicles that the City has already deemed abandoned. Additionally, the window sticker gives vehicle owners no notice that the City's unwritten policy is to ignore the "apparently deserted" element of MCC § 9-80-110—meaning that predictable and reasonable acts like placing a sign in the window of a vehicle declaring it not abandoned is not enough to avoid a tow.

43.     Plaintiff has a personal claim which is capable of being affected. As detailed above, this case presents an actual controversy that requires an immediate and definitive determination of the parties' rights.

**WHEREFORE**, Plaintiff prays that the Court:

A.      Certify this case as a class action, designate Plaintiff as class representative, and appoint Plaintiff's counsel as class counsel;

B.      Declare that the tows of Plaintiff's and class members' vehicles violated the due process clause of the United States and Illinois Constitutions and, therefore, were unconstitutional and void *ab initio*;

C.      Grant preliminary and permanent injunctive relief preventing the City from towing and impounding vehicles it claims are abandoned without first sending a notice to the owner by certified or registered mail and preventing the City from collecting or enforcing any fines, fees, or other amounts assessed in connection with such tows and impoundments;

13

D.    Award Plaintiff and members of the Tow Class restitution in an amount to be
determined herein, including pre- and post-judgment interest;

E.    Grant an award of reasonable attorneys' fees and all expenses and costs of this
action; and

F.    Order such other and further relief as this Court deems equitable, just and proper.

## COUNT II
## Unjust Enrichment on Behalf of the Tow Class

44.    Plaintiff adopts and incorporates by reference all prior paragraphs as if fully set
forth herein.

45.    The City has received payment for the sale of vehicles and/or other amounts in
connection with the towing and impoundment of vehicles that the City claims are abandoned that
were towed and impounded without prior notice by mail to the owner. The City, for example,
towed Plaintiff's Van without any prior notice by mail and then sold it for $15 and kept all of the
proceeds of that sale. As shown above, these actions violate the due process clauses of the United
States and Illinois Constitutions and, therefore, are unconstitutional and void *ab initio*.

46.    Thus, the City has collected funds to which it was not entitled. The City
knowingly appreciated and accepted this benefit, which has resulted and continues to result in an
inequity to Plaintiff and members of the Tow Class.

47.    The City has thus unjustly received and retained a benefit belonging to Plaintiff
and members of the Tow Class, who have therefore suffered a commensurate detriment.

48.    The City's retention of this benefit violates the fundamental principles of justice,
equity, and good conscience.

**WHEREFORE**, Plaintiff prays that the Court:

A.     Certify this case as a class action, designate Plaintiff as class representative, and appoint Plaintiff's counsel as class counsel;

B.     Award Plaintiff and members of the Tow Class restitution in an amount to be determined herein, including pre- and post-judgment interest;

C.     Grant an award of reasonable attorneys' fees and all expenses and costs of this action; and

D.     Order such other and further relief as this Court deems equitable, just and proper.

### COUNT III
### <u>42 U.S.C. § 1983 on Behalf of the Tow Class</u>
### (Due Process)

49.     Plaintiff adopts and incorporates by reference all prior paragraphs as if fully set forth herein.

50.     As set forth above, the City's practice of not sending notice by mail prior to towing and impounding allegedly abandoned vehicles is done pursuant to an ordinance that provides for such notice only after the vehicle owner has been deprived of her property. The City's practice of relying solely on a window sticker—with no pre-tow notice by mail—for vehicles that lack current registration is, by the City's own admission, a common practice and official policy of the City. The City also, as a matter of official and admitted policy, tows vehicles it deems abandoned solely based on the vehicle not being moved for seven days without regard to whether or not it is "apparently deserted" as its own ordinance requires. Thus, the conduct being challenged herein is the official policy of the City. Therefore, all City employees and agents were acting under color of law in carrying out this policy.

51.     The misconduct described herein was objectively unreasonable and undertaken intentionally with deliberate indifference to the constitutional rights of Plaintiff and members of the Tow Class. Alternatively, the misconduct described herein was undertaken intentionally, with malice, and/or with reckless indifference to the constitutional rights of Plaintiff and members of the Tow Class.

52.     As a result of this policy, the City deprived Plaintiff and members of the Tow Class of their constitutional rights to due process. As a direct and proximate cause of this deprivation of constitutional rights, Plaintiff and members of the Tow Class suffered damages in the form of, among other things, unlawful fines, fees, and other amounts assessed in connection with the tow and impoundment of their vehicles, as well as the loss of their vehicles.

**WHEREFORE**, Plaintiff prays that the Court:

A.      Certify this case as a class action, designate Plaintiff as class representative, and appoint Plaintiff's counsel as class counsel;

B.      Award Plaintiff and members of the Tow Class restitution and damages in an amount to be determined herein, including pre- and post-judgment interest;

C.      Grant an award of reasonable attorneys' fees and all expenses and costs of this action; and

D.      Order such other and further relief as this Court deems equitable, just and proper.

**COUNT IV**
**Declaratory and Injunctive Relief on Behalf of the Vehicle Disposal Class**

53.     Plaintiff adopts and incorporates by reference all prior paragraphs as if fully set forth herein.

54.     Plaintiff seeks a judgment declaring that the City acted unlawfully and without legal authorization when it disposed of vehicles pursuant to Chapter 92 of the MCC without

16

sending the required additional notice of impending vehicle disposal as required by 625 ILCS 5/4-208 and/or MCC § 9-92-100.

55.     Plaintiff has a personal claim which is capable of being affected. As detailed above, this case presents an actual controversy that requires an immediate and definitive determination of the parties' rights.

**WHEREFORE**, Plaintiff prays that the Court:

A.     Certify this case as a class action, designate Plaintiff as class representative, and appoint Plaintiff's counsel as class counsel;

B.     Declare that the City acted unlawfully and without legal authorization when it disposed of vehicles pursuant to Chapter 92 of the MCC without sending the required additional notice of impending vehicle disposal as required by 625 ILCS 5/4-208 and/or MCC § 9-92-100;

C.     Grant preliminary and permanent injunctive relief preventing the City from disposing of unclaimed vehicles without sending the additional notice of impending vehicle disposal as required by 625 ILCS 5/4-208 and/or MCC § 9-92-100;

D.     Award Plaintiff and members of the Vehicle Disposal Class restitution in an amount to be determined herein, including pre- and post-judgment interest;

E.     Grant an award of reasonable attorneys' fees and all expenses and costs of this action; and

F.     Order such other and further relief as this Court deems equitable, just and proper.

## COUNT V
### Unjust Enrichment on Behalf of the Vehicle Disposal Class

56.     Plaintiff adopts and incorporates by reference all prior paragraphs as if fully set forth herein.

57.     The City has received payment for the sale of vehicles and/or other amounts in connection with the disposal of unclaimed vehicles without sending the additional notice of impending vehicle disposal as required by 625 ILCS 5/4-208 and/or MCC § 9-92-100. The City, for example, towed Plaintiff's Van without any prior notice by mail and then sold it for $15 and kept all of the proceeds of that sale. As set forth herein, this was illegal and unconstitutional.

58.     Thus, the City has collected funds to which it was not entitled. The City knowingly appreciated and accepted this benefit, which has resulted and continues to result in an inequity to Plaintiff and members of the Vehicle Disposal Class.

59.     The City has thus unjustly received and retained a benefit belonging to Plaintiff and members of the Vehicle Disposal Class, who have therefore suffered a commensurate detriment.

60.     The City's retention of this benefit violates the fundamental principles of justice, equity, and good conscience.

**WHEREFORE**, Plaintiff prays that the Court:

A.      Certify this case as a class action, designate Plaintiff as class representative, and appoint Plaintiff's counsel as class counsel;

B.      Award Plaintiff and members of the Vehicle Disposal Class restitution in an amount to be determined herein, including pre- and post-judgment interest;

C.      Grant an award of reasonable attorneys' fees and all expenses and costs of this action; and

18

D.      Order such other and further relief as this Court deems equitable, just and proper.

## COUNT VI
### Mandamus on Behalf of the Vehicle Disposal Class

61.     Plaintiff adopts and incorporates by reference all prior paragraphs as if fully set forth herein.

62.     625 ILCS 5/4-208 and MCC § 9-92-100 impose a specific requirement on the City's Department of Streets and Sanitation to send an additional notice of impending vehicle disposal prior to disposing of a vehicle towed and impounded pursuant to Chapter 9-92 of the MCC. As set forth above, the City's Department of Streets and Sanitation violated those laws in contravention of their statutory responsibilities.

**WHEREFORE**, Plaintiff prays that the Court:

A.      Certify this case as a class action, designate Plaintiff as class representative, and appoint Plaintiff's counsel as class counsel;

B.      Enter a writ of mandamus directing the City's Department of Streets and Sanitation to send an additional notice of impending vehicle disposal prior to disposing of a vehicle towed and impounded pursuant to Chapter 9-92 of the MCC;

C.      Award Plaintiff and members of the Vehicle Disposal Class restitution in an amount to be determined herein, including pre- and post-judgment interest;

D.      Grant an award of reasonable attorneys' fees and all expenses and costs of this action; and

E.      Order such other and further relief as this Court deems equitable, just and proper.

## COUNT VII
## <u>Declaratory and Injunctive Relief on Behalf of the Vehicle Disposal Class</u>
### (Taking Without Just Compensation)

63.    Plaintiff adopts and incorporates by reference all prior paragraphs as if fully set forth herein.

64.    The United States and Illinois Constitutions provide that private property shall not be taken or damaged for public use without just compensation. *See* U.S. CONST. amend. V; ILL. CONST. art. I, § 15.

65.    Confiscation of property by a unit of government will not be considered a taking if the confiscation is a lawful exercise of that government's police powers. *See, e.g. Bennis v. Michigan*, 516 U.S. 442, 452 (1996) (compensation may not be required if property lawfully acquired via means other than eminent domain).

66.    Plaintiff's vehicle was not lawfully acquired by the City. Instead, the City willfully flouted the requirements of the MCC that control the disposal of impounded vehicles.

67.    Because of the City's willful failure, the Commissioner of the Department of Streets and Sanitation was not lawfully authorized to dispose of Plaintiff's vehicle. Nevertheless, the vehicle was sold and destroyed.

68.    These actions by the City constituted an illegal and unconstitutional taking.

**WHEREFORE**, Plaintiff prays that the Court:

A.    Certify this case as a class action, designate Plaintiff as class representative, and appoint Plaintiff's counsel as class counsel;

B.    Declare that the City's practice of unlawfully disposing of vehicles without providing proper notice as required by 625 ILCS 5/4-208 and/or MCC § 9-92-100 constitutes an unlawful taking under the United States and Illinois Constitutions;

C.     Grant preliminary and permanent injunctive relief preventing the City from disposing of unclaimed vehicles without sending the additional notice of impending vehicle disposal as required by 625 ILCS 5/4-208 and/or MCC § 9-92-100;

D.     Award Plaintiff and members of the Vehicle Disposal Class restitution in an amount to be determined herein, including pre- and post-judgment interest;

E.     Grant an award of reasonable attorneys' fees and all expenses and costs of this action; and

F.     Order such other and further relief as this Court deems equitable, just and proper.

## COUNT VIII
## 42 U.S.C. § 1983 on Behalf of the Vehicle Disposal Class
### (Taking Without Just Compensation)

69.     Plaintiff adopts and incorporates by reference all prior paragraphs as if fully set forth herein.

70.     The City's failure to send the required additional notice of impending vehicle disposal as required by 625 ILCS 5/4-208 and/or MCC § 9-92-100 prior to disposing of unclaimed vehicles is the official policy of the City's Department of Streets and Sanitation and/or its well-settled custom or practice, which was ratified by policymakers for the City with final policymaking authority. Therefore, all City employees and agents were acting under color of law in carrying out this policy, custom, or practice.

71.     As a result of this policy, custom, or practice, the disposal of Plaintiff's vehicle, as well as the disposal of the vehicles of all members of the Vehicle Disposal Class, was unlawful and undertaken without any legal authorization.

21

72.     The misconduct described herein was objectively unreasonable and undertaken intentionally with deliberate indifference to the constitutional rights of Plaintiff and members of the Vehicle Disposal Class. Alternatively, the misconduct described herein was undertaken intentionally, with malice, and/or, with reckless indifference to the constitutional rights of Plaintiff and members of the Vehicle Disposal Class.

73.     As a result of this policy, custom, or practice, the City deprived Plaintiff and members of the Vehicle Disposal Class of their constitutional rights to be free from having their property taken without just compensation. As a direct and proximate cause of this deprivation of constitutional rights, Plaintiff and members of the Vehicle Disposal Class suffered the loss of their vehicles and other damages.

**WHEREFORE**, Plaintiff prays that the Court:

A.      Certify this case as a class action, designate Plaintiff as class representative, and appoint Plaintiff's counsel as class counsel;

B.      Award Plaintiff and members of the Vehicle Disposal Class restitution and damages in an amount to be determined herein, including pre- and post-judgment interest;

C.      Grant an award of reasonable attorneys' fees and all expenses and costs of this action; and

D.      Order such other and further relief as this Court deems equitable, just and proper.

## COUNT IX[2]
### Declaratory and Injunctive Relief on Behalf of the Vehicle Disposal Class
### (Unreasonable Seizure)

74.     Plaintiff adopts and incorporates by reference all prior paragraphs as if fully set forth herein.

75.     The United States and Illinois Constitutions provide that people shall be free from unreasonable seizures. *See* U.S. CONST. amend. IV; ILL. CONST. art. I, § 6.

76.     The disposal of Plaintiff's vehicle was an unreasonable seizure because the City willfully flouted the requirements of the MCC that control the disposal of impounded vehicles.

77.     Because of the City's willful failure, the Commissioner of the Department of Streets and Sanitation was not lawfully authorized to dispose of the vehicle. Nevertheless, the vehicle was sold and destroyed.

78.     These actions by the City of Chicago constituted an unreasonable seizure.

**WHEREFORE**, Plaintiff prays that the Court:

A.     Certify this case as a class action, designate Plaintiff as class representative, and appoint Plaintiff's counsel as class counsel;

B.     Declare that the City's practice of unlawfully disposing of vehicles without providing proper notice as required by 625 ILCS 5/4-208 and/or MCC § 9-92-100 constitutes an unreasonable seizure in violation of the United States and Illinois Constitutions;

C.     Grant preliminary and permanent injunctive relief preventing the City from disposing of unclaimed vehicles without sending the additional notice of

---

[2] The Court previously dismissed Counts IX and X from the original Complaint. Plaintiff understands that the Court will likely dismiss these counts again, but re-alleges them herein to preserve them.

impending vehicle disposal as required by 625 ILCS 5/4-208 and/or MCC § 9-92-100;

D.    Award Plaintiff and members of the Vehicle Disposal Class restitution in an amount to be determined herein, including pre- and post-judgment interest;

E.    Grant an award of reasonable attorneys' fees and all expenses and costs of this action; and

F.    Order such other and further relief as this Court deems equitable, just and proper.

**COUNT X**
**42 U.S.C. § 1983 on Behalf of the Vehicle Disposal Class**
**(Unreasonable Seizure)**

79.    Plaintiff adopts and incorporates by reference all prior paragraphs as if fully set forth herein.

80.    The City's failure to send the required additional notice of impending vehicle disposal as required by 625 ILCS 5/4-208 and/or MCC § 9-92-100 prior to disposing of unclaimed vehicles is the official policy of the City's Department of Streets and Sanitation and/or its well-settled custom or practice, which was ratified by policymakers for the City with final policymaking authority. Therefore, all City employees and agents were acting under color of law in carrying out this policy, custom, or practice.

81.    As a result of this policy, custom, or practice, the disposal of Plaintiff's vehicle, as well as the disposal of the vehicles of all members of the Vehicle Disposal Class, was unlawful and undertaken without any legal authorization.

82.    The misconduct described herein was objectively unreasonable and undertaken intentionally with deliberate indifference to the constitutional rights of Plaintiff and members of the Vehicle Disposal Class. Alternatively, the misconduct described herein was undertaken

24

intentionally, with malice, and/or with reckless indifference to the constitutional rights of Plaintiff and members of the Vehicle Disposal Class.

83.     As a result of this policy, custom, or practice, the City deprived Plaintiff and members of the Vehicle Disposal Class of their constitutional rights to be free from unreasonable seizures. As a direct and proximate cause of this deprivation of constitutional rights, Plaintiff and members of the Vehicle Disposal Class suffered the loss of their vehicles and other damages.

**WHEREFORE**, Plaintiff prays that the Court:

A.     Certify this case as a class action, designate Plaintiff as class representative, and appoint Plaintiff's counsel as class counsel;

B.     Award Plaintiff and members of the Vehicle Disposal Class restitution and damages in an amount to be determined herein, including pre- and post-judgment interest;

C.     Grant an award of reasonable attorneys' fees and all expenses and costs of this action; and

D.     Order such other and further relief as this Court deems equitable, just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues that may be tried and decided by jury.

Dated: January 18, 2022

Respectfully submitted,

By:  _____/s/ Jacie C. Zolna_____
     One of Plaintiffs' Attorneys

Myron M. Cherry
mcherry@cherry-law.com
Jacie C. Zolna
jzolna@cherry-law.com
Benjamin R. Swetland
bswetland@cherry-law.com
Jeremiah Nixon
jnixon@cherry-law.com
Jessica C. Chavin
jchavin@cherry-law.com
MYRON M. CHERRY & ASSOCIATES LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois 60602
(312) 372-2100
Firm No. 39807
***Attorneys for Plaintiff and the Classes***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he served the foregoing **Amended Complaint** upon:

J. David Duffy
dduffy@thompsoncoburn.com
Patrick Morales-Doyle
pmoralesdoyle@thompsoncoburn.com
Thompson Coburn LLP
55 East Monroe Street, 37th Floor
Chicago, Illinois 60603

Jennifer Zlotow
jennifer.zlotow@cityofchicago.org
Peter Hardt Cavanaugh
peter.cavanaugh@cityofchicago.org
City of Chicago Department of Law
2 N. LaSalle Street, Suite 520
Chicago, Illinois 60602

via the Electronic Case Filing system, on the 18th day of January, 2022.


_____/s/ Jacie C. Zolna_____

# Ex. A

Page 1

1              IN THE UNITED STATES DISTRICT COURT

2              FOR THE NORTHERN DISTRICT OF ILLINOIS

3                        EASTERN DIVISION

4

5    ANDREA SANTIAGO,            )

6    individually and on        )

7    behalf of all others       )

8    similarly situated,        )

9              Plaintiff,        )

10        vs.                    ) Case 19-cv-4652

11   CITY OF CHICAGO,            )

12   a Municipal Corporation, ) Hon. Matthew F. Kennelly

13             Defendant.        )

14

15        The videoconference discovery deposition of

16   CATHARINE HENNESSY, taken in the above-entitled cause,

17   before JEANINE EDDINGS, a notary public of Cook County,

18   Illinois, on the 17th day of September, 2020, via Zoom,

19   Chicago, Illinois, pursuant to Notice.

20

21

22

23   Reported by:  Jeanine Eddings, CSR

24   License No.:  084-003253

Page 282

1      Q.    (continuing) -- it remained for seven

2   consecutive days and you've received no contact

3   whatsoever from the owner, there's simply a note?

4                  MR. DUFFY:  Objection.  Let me get my

5   objection in.  Objection.  Speculation.  Go ahead.

6                  THE WITNESS:  Again, it would have to

7   show, it would have to appear that the car was not

8   moved and they didn't call.  So you can put a sign in

9   there, but if you didn't move your car, because you're

10  not allowed to sit there for seven consecutive days,

11  you can't just say, oh, it's not abandoned.  You cannot

12  sit in a public -- in a spot in a parkway there for

13  seven consecutive days.  You're not allowed to.

14            So whether you put a sign in there saying

15  it's not abandoned, it doesn't matter.  It's whether

16  you moved the vehicle or whether you call and ask for

17  an extension or ask for, you know, extenuating

18  circumstances or work with me or whatever have you, but

19  you have to move the vehicle.

20  BY MR. ZOLNA:

21      Q.    So if I got a tow sticker or a tow notice --

22  let's say I got a pre-tow notice -- let's just say I

23  got the sticker.  And I got the sticker and it says

24  it's abandoned, the City determined it's abandoned, and

Page 283

1   all I do, I don't call the City, I don't do anything

2   else except I write a handwritten thing and I put the

3   sign on the car right where you can see it, it's right

4   on the front windshield, it's on the back windshield

5   that says, this is not an abandoned car and I sign the

6   date on it, but then I don't do anything else, and if I

7   don't do anything else, after seven days, I'm still

8   eligible, right?

9           A.   I just answered that.

10                   MR. DUFFY:  Object to form.

11  BY MR. ZOLNA:

12          Q.   Is that right?

13          A.   I just answered that, sir.  You have to move

14  the vehicle.

15          Q.   Is that right, though, I'm tow eligible?

16          A.   If you have not moved the vehicle and all you

17  did you was put a sign in there and you didn't call,

18  yes, you remain tow eligible because that vehicle is

19  not allowed to sit there for more than seven

20  consecutive days, sir.

21              So on that eighth day, after the expiration

22  of the date on that sticker that's on the car, and you

23  haven't moved it and you haven't called, you are tow

24  eligible, yes.

Page 284

1     Q.   What if I washed the car, I waxed it, made it

2  all clean, vacuumed the inside of it, put a couple of

3  new bumper stickers on there, you know, made it all --

4  spiffy it all up, put a new spoiler on it, that still

5  wouldn't matter?  I could still get towed if I don't

6  move it after seven days unless I call, right?

7              MR. DUFFY:  Objection.  Speculation.

8  Objection to form.

9              THE WITNESS:  Just by your question,

10  sir, I take it you don't like the fact that a car can't

11  sit there.  And it doesn't matter the car or condition,

12  you know, in terms of whether you cleaned it or whether

13  you spiffed it up or whether you put it's not abandoned

14  in the windows, a car cannot sit there for seven

15  consecutive days without moving it.  That's the law,

16  sir.  That is the law, and that's what we enforce.

17  BY MR. ZOLNA:

18     Q.   Okay.  So I think you've answered my

19  question.  Cleaning it up and changing the vehicle,

20  putting these notes or whatever on it doesn't matter to

21  your department in terms of it being tow eligible,

22  right?

23     A.   We do not discriminate -- we do not

24  discriminate against cars, sir.  If that car is sitting

Page 285

1   there for seven consecutive days on the public way and

2   you haven't moved it and you haven't called, the

3   vehicle is eligible for tow.

4               THE COURT REPORTER:  I need a washroom

5   break, Mr. Zolna.  Thank you.

6                       (Whereupon, a brief recess

7                       was had, after which the

8                       preceding deposition

9                       continued as follows:)

10              MR. ZOLNA:  Okay.  Okay.  So pursuant to

11  the amended notice and the agreement of the parties,

12  plaintiff is going to reserve the remainder of the time

13  for this deposition on topics 11 and 12.  So at this

14  moment, I don't have any further questions for

15  tonight.

16              MR. DUFFY:  Plaintiff can reserve

17  whatever you want.  I'm not reproducing her.  So if

18  you're not going to ask her, that's fine.  You can

19  reserve all your questions, Jacie, but she's not

20  getting reproduced.  Can you state for the record why

21  you're doing that?  Have I stopped you from questioning

22  her?  Is there some reason you can't continue the

23  deposition?

24              MR. ZOLNA:  Because we've -- that was

Page 291

1    STATE OF  ILLINOIS    )

2                          )  SS.

3    COUNTY OF C O O K     )

4              I, JEANINE EDDINGS, a notary public within

5    and for the County of Cook and State of Illinois, do

6    hereby certify that heretofore, to-wit on the 17th day

7    of September A. D., 2020, personally appeared before me

8    via Zoom videoconference in the City of Chicago, County

9    of Cook and State of Illinois, CATHARINE HENNESSY, a

10   witness called by the Plaintiff in a certain cause now

11   pending and undetermined in the United States District

12   for the Northern District of Illinois, Eastern

13   Division, wherein the Andrea Santiago is Plaintiff and

14   City of Chicago is Defendant.

15             I further certify that the said witness,

16   CATHARINE HENNESSY, was by me first duly sworn to

17   testify the truth, the whole truth and nothing but the

18   truth in the cause aforesaid; that the testimony then

19   given by her was by me reduced to writing, by means of

20   shorthand, in the presence of said witness and

21   afterwards transcribed upon a computer, and the

22   foregoing is a true and correct transcript of the

23   testimony so given by her as aforesaid.

24             I further certify that the reading and

Page 292

1     signing of said deposition was reserved.

2           I further certify that pursuant to Rule 30

3     (e) of the Rules of Civil Procedure for the United

4     States District Court, a letter was sent requesting the

5     witness to read and sign said deposition.

6           I further certify that if the deposition

7     remains unsigned, the reason therefor is the deponent's

8     failure to submit a signed deponent's certificate.

9           I further certify that the taking of this

10    deposition was pursuant to Notice, and that there were

11    present via Zoom videoconference at the taking of this

12    deposition Mr. Jacie Zolna and Benjamin Swetland on

13    behalf of the Plaintiff and Mr. J. David Duffy, Mr.

14    Patrick Morales-Doyle, and Ms. Jennifer Zlotow on

15    behalf of the Defendant.

16          I further certify that I am not counsel for

17    nor in any way related to any of the parties to this

18    suit, nor am I in any way interested in the outcome

19    thereof.

20          In testimony whereof I have hereunto set my

21    hand this 21st day

22                        JEANINE EDDINGS, CSR

23                        JEANINE EDDINGS, CSR

24                        License No: 084-003253

Page 294

```
 1                    DEPOSITION REVIEW
                    CERTIFICATION OF WITNESS
 2

 3          ASSIGNMENT REFERENCE NO: 4218563
            CASE NAME: Santiago v. City Of Chicago
            DATE OF DEPOSITION: 9/17/2020
 4          WITNESS' NAME: Catharine Hennessy
 5          In accordance with the Rules of Civil
     Procedure, I have read the entire transcript of
 6   my testimony or it has been read to me.
 7          I have made no changes to the testimony
     as transcribed by the court reporter.
 8
        ___11/4/20_____          ___Catharine Hennessy___
 9   Date                         Catharine Hennessy
10          Sworn to and subscribed before me, a
     Notary Public in and for the State and County,
11   the referenced witness did personally appear
     and acknowledge that:
12
            They have read the transcript;
13          They signed the foregoing Sworn
                Statement; and
14          Their execution of this Statement is of
                their free act and deed.
15
            I have affixed my name and official seal
16
     this _____ day of_____, 20____.
17
            _____
18          Notary Public
19          _____
            Commission Expiration Date
20
21
22
23
24
25
```