IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREA SANTIAGO, individually and on behalf of all others similarly situated, | ) ) ) Case No. 19-cv-4652 |
| Plaintiff, | ) ) Hon. Matthew F. Kennelly |
| v. | ) ) |
| CITY OF CHICAGO, a Municipal Corporation, | ) ) ) ) |
| Defendant. | ) ) ) |

**DEFENDANT CITY OF CHICAGO'S RULE 12(B)(1) AND 12(B)(6)
MOTION TO DISMISS AMENDED COMPLAINT
<u>AND MEMORANDUM IN SUPPORT THEREOF</u>**

CELIA MEZA,
Corporation Counsel for the City of Chicago

Jennifer Zlotow (#6280106)
jennifer.zlotow@cityofchicago.org
Peter Cavanaugh (#6308726)
peter.cavanaugh@cityofchicago.org
City of Chicago Department of Law
Constitutional and Commercial Litig. Div.
2 N. LaSalle Street, Suite 520
Chicago, Illinois 60602
(312) 744-0740/0897

J. David Duffy (#6242374)
dduffy@thompsoncoburn.com
Patrick Morales-Doyle (#6300364)
pmoralesdoyle@thompsoncoburn.com
Thompson Coburn LLP
55 East Monroe Street, 37th Floor
Chicago, Illinois 60603
(312) 346-7500

*Counsel for Defendant City of Chicago*

## INTRODUCTION

In Counts I through III of her Amended Complaint (Dkt. 124), Santiago reasserts her original claim challenging the City's method of providing notice (a sticker, rather than mail), to inform her that her van would be towed if not moved within seven days. In an attempt to avoid the standing and merits problems plaguing this claim—problems revealed by the evidence obtained after her suit was filed, and which the parties addressed on appeal—she has now added two new claims to these counts: (1) a challenge to the City's interpretation of what it means to be "apparently deserted" under the abandoned-vehicle ordinance, and (2) a complaint that the sticker did not inform her of her right to contest her tow. These new claims fail as a matter of law, and confirm the lack of standing (and lack of merit) for her original method-of-notice claim.

Santiago's claim regarding the disposal of her van, in Counts IV through X, also fails as a matter of law. Her amended pleading acknowledges that her claim is not based on an alleged failure to mail two pre-disposal notices, but is instead based on the timing of the second mailed notice. She lacks standing to pursue this claim, and the recent decision in *Conyers v. City of Chicago*, 10 F.4th 704 (7th Cir. 2021), also requires its dismissal.

Santiago's unjust enrichment counts fall with the related due process and takings counts, and her requests for declaratory and injunctive relief and repleaded Fourth Amendment counts fail for the reasons already identified by this Court. Because all of her claims fail for lack of standing or as a matter of law, the City respectfully requests dismissal with prejudice.

## ARGUMENT

I.   **The method-of-notice claim in Counts I–III fails under Rule 12(b)(1) and 12(b)(6).**

   A. **Santiago lacks standing to raise her method-of-notice claim due to Velez's receipt and concealment of the sticker notice.**

   Santiago concedes that the City affixed a sticker notice to her van prior to her tow. (Ex.

A, redline showing changes from original complaint, ¶¶ 24-25.) She newly alleges that her daughter, Lisandra Velez, "saw the window sticker, removed it, and placed handwritten signs in the interior windows of the Van," and "move[d] the Van up the block." (*Id.* ¶ 25.) She also adds the allegation that Velez "did not inform Plaintiff of the window sticker." (*Id.* ¶ 25; *see also id.* ¶ 26.) These additions are an effort to plead around the standing problem recently mentioned by a member of the Seventh Circuit panel.[1] But they fail. Santiago lacks standing because Velez was her agent, and thus Velez's receipt of notice is attributable to her. Or, alternatively, Velez's concealment of the notice from Santiago breaks the necessary chain of causation.

Since this Court passed upon the sufficiency of Santiago's original complaint, (Dkt. 44), the U.S. Supreme Court decided *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), a case that "sets the stage for a renewed examination of" whether Santiago has Article III standing. *Moss v. United Airlines, Inc.*, 20 F.4th 375, 379 n.7 (7th Cir. 2021). *TransUnion* "reminded us that 'Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions.'" *Id.* (quoting *TransUnion*, 141 S. Ct. at 2205). For this reason, alleging a "bare procedural violation" of law is not enough. *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 666 (7th Cir. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016)). To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* at 667 (quoting *Spokeo*, 136 S. Ct. at 1547). Critically, standing must be established for "each claim"

---

[1] During oral argument, the panel questioned whether Santiago had standing to raise her claims given Velez's receipt of the sticker notice. (Oral Arg. at 4:55-6:40, 21:53-23:06, Santiago v. City of Chicago, No. 20-3522 (7th Cir. Sept. 28, 2021), media.ca7.uscourts.gov/sound/2021/mn.20-3522.20-3522_09_28_2021.mp3. In supplemental briefing, Santiago argued that she had standing "because her daughter kept [the sticker notice] from her." Pl.-Appellee's Suppl. Br., Santiago v. City of Chicago, No. 20-3522 (7th Cir. Oct. 5, 2021), ECF No. 43, at 1.

and "each form of relief." *TransUnion*, 141 S. Ct. at 2208; *see also Johnson v. U.S. Off. of Pers. Mgmt.*, 783 F.3d 655, 661 (7th Cir. 2015). Suffering an injury "traceable to one kind of conduct does not grant [a] plaintiff standing to challenge other, even related, conduct." *Id.*

Santiago cannot show she was injured by a lack of pre-tow mailed notice because the City's chosen form of notice—a sticker affixed to her van's window—reached the person who was Santiago's agent with respect to the vehicle and responsible for it, Velez, who then acted upon it. And even if Velez was not Plaintiff's agent, her concealing the notice from Santiago severs the causal link needed to have standing for her pleaded claim against the City.

**1. As Santiago's agent, notice upon Velez constitutes notice upon Santiago.**

Both Illinois and the federal common law of agency accord with the Restatement of Agency, *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000), which provides that "[a] principal-agent relationship exists 'when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act.'" *Schutz v. Arrow Fin. Servs., LLC*, 465 F. Supp. 2d 872, 877 (N.D. Ill. 2006) (quoting Restatement (Third) of Agency § 1.01). The existence of an agency relationship can be decided as a matter of law when only one conclusion may be drawn from the undisputed facts. *Clarendon Nat'l Ins. Co. v. Medina*, 645 F.3d 928, 935 (7th Cir. 2011). Notably, under Illinois law, it is presumed that the driver of a vehicle is an agent of the vehicle's owner. *Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co.*, 796 F.3d 717, 723–24 (7th Cir. 2015); *see Gann v. Oltesvig*, 491 F. Supp. 2d 771, 774 (N.D. Ill. 2007) (noting this is "dictated by common sense").

As in *Clarendon*, the undisputed facts showing one family member's (Velez) responsibility for and use of a vehicle owned by another family member (Santiago) establishes an agency relationship here as a matter of law. *See Clarendon*, 645 F.3d at 935 (concluding, as a

matter of law, that husband was wife's agent with respect to truck that she owned, but he drove). Santiago suffers from multiple sclerosis and is confined to a wheelchair. (Ex. A ¶ 22.) She cannot drive and has no driver's license. (Ex. B, Santiago Dep. Tr. 20:3-7.) Velez lived with Santiago when the tow occurred, (*id.* at 67:10-14), and served as her daily caretaker and driver, (*id.* at 10:10-14; 41:5-15; 42:8-17; 48:14-24).[2] As the Seventh Circuit succinctly stated, Santiago "cannot drive" and "does not read, speak, or write English effectively," and consequently "relies on . . . Velez, for transportation, translation, and assistance with English-based transactions and daily tasks." *Santiago v. City of Chicago*, 19 F.4th 1010, 1012 (7th Cir. 2021).

The facts show Velez was Santiago's agent for the van. Santiago alleges that Velez removed the sticker notice from the van, put signs in its windows, moved the van, and tried "to retrieve the Van at the impound lot." (Ex. A ¶¶ 25-27.) Santiago also testified that Velez had her authority at all times to act on her behalf to recover her vehicle. (Ex. B, at 73:17-21.) Santiago cannot fairly contest that she manifested assent to Velez acting on her behalf with respect to the van, and that Velez manifested assent or otherwise consented to do so.

The agency relationship between Velez and Santiago means Santiago lacks Article III standing to raise her method-of-notice claim because "a notification given to . . . an agent"—here the sticker notice received by Velez—"is effective as notification to . . . the principal." Restatement (Third) of Agency § 5.01. Further, an agent's knowledge of a fact "is imputed to the principal." *Id.*; *see also, e.g.*, *Nat'l Prod. Workers Union Ins. Tr. v. Cigna Corp.*, 665 F.3d 897, 903 (7th Cir. 2011) (noting an agent's "knowledge" is "imputed to the principal" unless the agent has adverse interests); *City of Aurora v. Classic Syndicate, Inc.*, 946 F. Supp. 601, 604 (N.D. Ill. 1996) (noting "notice to an agent" ordinarily "constitutes notice to the principal").

---

[2] The City has properly cited to evidence in the record for the limited purpose of this Court's adjudication of the 12(b)(1) motion. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009).

Santiago, through Velez, received the sticker notice issued by the City. And because Santiago had notice, the injuries she claims to have suffered (*e.g.*, the impoundment of her van) are not fairly traceable to the method of notice used by the City, and she therefore lacks standing to challenge the method of notice. *See Johnson*, 783 F.3d at 662 (finding plaintiffs lacked standing to challenge particular "aspects" of governmental action because "[t]heir asserted injury is not traceable to (i.e., 'the result of,' or 'a consequence of) the conduct that they challenge"). It is possible Santiago may have standing to raise other claims related to her tow—*i.e.*, a claim that her van should not have been towed because Velez claims to have moved it—and it is possible that a different plaintiff who did not receive the sticker notice would have standing to challenge the City's method of notice. But, for this claim, Santiago lacks the "personal stake" necessary to litigate the City's method of notice because, as to her, it was effective.

**2. Alternatively, Velez's concealment of the sticker from Santiago is an intervening act that severs the causal link necessary for standing.**

Even if Velez were not Santiago's agent, her alleged actions still negate Santiago's standing to challenge the sticker notice procedure. To meet the causation element of standing, the plaintiff's alleged injury "must be fairly traceable to the challenged action of the defendant, and *not the result of the independent action of some third party not before the court*." *J.B. v. Woodard*, 997 F.3d 714, 720 (7th Cir. 2021) (emphasis added) (quoting *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992)). In *J.B.*, the plaintiff had no standing for his § 1983 due process claim against a DCFS director in which he alleged that the director's enforcement of a state law deprived him of due process because it was *another actor's* decision to enforce the law that caused his alleged injury, and that decision was "not fairly traceable to any DCFS official." *Id.* Here, Velez's removal and concealment of the sticker notice caused Santiago to not see it. Indeed, not only did Velez not inform Santiago about the sticker notice, Velez testified that—

while Santiago was waiting for her to pick her up in the van—she removed the sticker notice from the window, used a credit card to scrape away the residue, and "roll[ed] down the window so [Santiago] did not see it." (Ex. C, at 106:7-20.) There is a "lack of any causal nexus," *J.B.*, 997 F.3d at 220, between the City's method of notice and Santiago not seeing it because a third-party (Velez) intervened, which means Santiago lacks standing to raise a method-of-notice claim.

### B. Santiago's new allegations about Velez removing and concealing the sticker notice also bar her method-of-notice claim under Rule 12(b)(6).

Even if the Court were to conclude Santiago had standing to raise her method-of-notice claim, the removal and concealment of the sticker notice by Velez would defeat Santiago's claim as a matter of law.[3] See *Matushkina v. Nielsen*, 877 F.3d 289, 292 (7th Cir. 2017) (noting the "fine" line there can be between lack of standing and not stating a claim under Rule 12(b)(6)). Count III is a due process claim for damages under 42 U.S.C. § 1983, which requires a plaintiff to prove "actual injury caused by the denial of his constitutional rights." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986); see *Farrar v. Hobby*, 506 U.S. 103, 112 (1992); *Henderson v. Sheahan*, 196 F.3d 839, 848 (7th Cir. 1999). Common law tort principles govern the causation analysis. *Carey v. Piphus*, 435 U.S. 247, 254-59, 263 (1978); *Martin v. Marinez*, 934 F.3d 594, 598 (7th Cir. 2019); *Lossman v. Pekarske*, 707 F.2d 288, 291 (7th Cir. 1983).

Relevant here, it is well established that a due process claim challenging notice fails if the person received actual notice. *See, e.g.*, *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) (noting that "United received *actual* notice," which "more than satisfied United's due process rights"); *Trs. of Suburban Teamsters of N. Ill. Pension Fund v. E Co.*, 914

---

[3] The City argued in its motion to dismiss Santiago's original complaint that her tow claims failed under Rule 12(b)(6) because her family received the sticker notice, based on information from a prelitigation claim Santiago submitted to the City. The Court rejected it. (Dkt. 44, at 11-12.) The City raises the issue again here in light of Santiago's amended allegations, plus the testimony of her and Velez. The City otherwise preserves and does not waive defenses it previously has raised, but does not repeat them here.

F.3d 1037, 1040 (7th Cir. 2019) ("[i]n no way, shape, or form did any due process violation occur" for parties "who received" notice); *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 704-06 (7th Cir. 2014) (receipt of "actual notice" was "the icing on the cake" defeating notice claim); *Pierce v. Vill. of Divernon*, 17 F.3d 1074, 1079 (7th Cir. 1994) (rejecting due process claim based on lack of service because plaintiffs "had actual notice that the Village intended to demolish their property"). A person who "receives timely actual notice . . . suffers no harm from the method of notice." *Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 147 (4th Cir. 2014); *see also Nunley v. Dep't of Justice*, 425 F.3d 1132, 1139 (8th Cir. 2005).[4] Because Santiago had actual notice of the impending tow through her agent, Velez, *see supra* Arg. I.A.1, her § 1983 claim fails as a matter of law. *See Gonzalez-Gonzalez v. United States*, 581 F. Supp. 2d 272, 280-81 (D.P.R. 2008) (rejecting due process claim challenging forfeiture of vehicles because written notice to plaintiff's agents relating to the vehicles was "imputed" to plaintiff).

And even if Santiago did not have actual notice, Velez's removal and concealment of the notice are intervening acts breaking the causal chain Santiago needs to establish to prevail on her § 1983 claim. *See Whitlock v. Brueggemann*, 682 F.3d 567, 584 (7th Cir. 2012) (noting in § 1983 case that a "superseding cause" is an "action of a *third party*" making the injury an unforeseeable consequence of the defendant's acts); *Paramount Contractors & Devs., Inc. v. City of Los Angeles*, 805 F. Supp. 2d 977, 998-99 (C.D. Cal. 2011) (dismissing § 1983 claim because an intervening action "broke the chain of causation"), *aff'd*, 516 F. App'x 614, 617 (9th Cir. 2013).

Santiago's related claims in Counts I (declaratory and injunctive relief) and II (unjust

---

[4] *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306 (1950), is the case that established the reasonableness-under-the-circumstances test that applies to notice claims under the Due Process Clause. *Dusenbery v. United States*, 534 U.S. 161, 167-68 (2002). Notably, *Mullane* itself "impliedly h[eld] that actual notice satisfies [the] demands of due process." *United States v. One 1987 Jeep Wrangler Auto. VIN # 2BCCL8132HBS12835*, 972 F.2d 472, 482 (2d Cir. 1992).

enrichment) likewise fail. Independent of the standing problems raised above, *see supra* Arg. I.A., and after its original ruling (Dkt. 44, at 24-30), this Court concluded that Santiago lacked standing to pursue injunctive and declaratory relief on her tow claims because her "speculative" assertion "that her new van might be towed" did not amount to the "allegations of real and immediate future injury" needed to support these claims. (Dkt. 80, at 13 (quoting *Simic v. City of Chicago*, 851 F.3d 734, 738-39 (7th Cir. 2017)).) Count I should be dismissed on this basis. Santiago has repleaded Count II, which was previously dismissed. (Dkt. 40, at 31-32, 33.) But even as repleaded, this claim falls with Santiago's underlying due process claim. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) (holding an unjust enrichment claim premised on "the same improper conduct alleged in another claim" will "stand or fall with the related claim").

## II. The new claim in Counts I–III challenging the City's interpretation of the "apparently deserted" ordinance language fails as a matter of law.

Santiago has added to her Amended Complaint a new claim that "the City ignores the 'apparently deserted' requirement under its own ordinance." (Ex. A ¶ 11.) The ordinance states that a vehicle is deemed abandoned, and therefore parked "unlawful[ly]," when it "has not been moved or used for more than seven consecutive days and is apparently deserted." MCC § 9-80-110(a)(b). Santiago claims that the City "does not . . . properly enforce" this ordinance because it tows vehicles "without regard" to whether a "vehicle is 'apparently deserted.'" (*Id.* ¶ 18.)

Even if Santiago's interpretation of the ordinance were correct—it is not[5]—the claim fails as a matter of law because a municipality's failure to follow state or local law does not violate the Due Process Clause. "It has been clear for decades that noncompliance with state law is not

---

[5] Judges on this Court have twice concluded that "[t]he 'apparently deserted' element" of the ordinance "if not already clear, is made clear by attaching seven-day notice stickers to cars that are believed abandoned." *Kohn v. Mucia*, 776 F. Supp. 348, 356 (N.D. Ill. 1991) (quoting *Panter v. City of Chicago*, No. 86 C 7187, 1988 WL 2793, at *2 (N.D. Ill. Jan. 8, 1988)).

itself a deprivation of due process of law." *Vargas v. Cook Cty. Sheriff's Merit Bd.*, 952 F.3d 871, 875 (7th Cir. 2020). It is a "settled" rule of law that a state or city's "failure to comply with its own law is not a federal-due-process violation." *Id.* at 874. "Indeed, a state may *disregard* its own law without depriving a person of due process of law." *Id.* at 875. Controlling case law has reiterated this principal again and again. *E.g.*, *Swarthout v. Cooke*, 562 U.S. 216, 221-22 (2011); *Snowden v. Hughes*, 321 U.S. 1, 11 (1944); *Wozniak v. Adesida*, 932 F.3d 1008, 1011 (7th Cir. 2019); *Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir. 1993); *Archie v. City of Racine*, 847 F.2d 1211, 1216-17 (7th Cir. 1988) (*en banc*); *Shango v. Jurich*, 681 F.2d 1091, 1098 (7th Cir. 1982).

*Tucker v. City of Chicago*, 907 F.3d 487 (7th Cir. 2018), is illustrative here. The *Tucker* plaintiff brought a § 1983 due process claim that that the City had "a policy of misinterpreting (or 'misenforcing,' as Tucker puts it) the city's yard weed ordinance" because its inspectors only determined whether "some" weeds exceeded ten inches, rather than whether, as the plaintiff claimed was necessary under the ordinance, the "average height" of the weeds exceeded ten inches. *Id.* at 494. The Seventh Circuit rejected her claim because "an alleged misinterpretation of a municipal ordinance does not implicate the U.S. Constitution." *Id.* "Interpretation of state or local law is a question of legal substance, not process. A litigant is not deprived of due process merely because a local law enforcement agency does not agree with her legal interpretation." *Id.* Even assuming the City's interpretation of its own ordinance was "incorrect, federal due process protection is not a guarantee that state governments will apply their own laws accurately." *Id.* at 495. Tucker's remedy, if any, was through "Illinois's state courts." *Id.*

Santiago's claim that the City does not "properly enforce its own abandoned vehicle ordinance," (Ex. A ¶ 18), and "ignores the 'apparently deserted' requirement," (*id.* ¶ 11), fails for the same reasons as Tucker's claim. *See also Simmons v. Gillespie*, 712 F.3d 1041, 1044 (7th

Cir. 2013) (finding no need to consider meaning of state statute because "[t]he Constitution does not require states to ensure that their laws are implemented correctly"). A § 1983 suit is "not a way to enforce state law through the back door." *Jones v. Cummings*, 998 F.3d 782, 788 (7th Cir. 2021) (citation omitted); *see also Shegog v. Bd. of Educ. of City of Chicago*, 194 F.3d 836, 838 (7th Cir. 1999) (noting that it is an "intrusion on state sovereignty" for "a federal court [to] instruct[] state officials on how to conform their conduct to state law"). That is what this new claim seeks to do, and it therefore should be rejected. Santiago also complains that the City does not "publish" its alleged misinterpretation of its ordinance or describe it on its sticker notice, (*id.* ¶¶ 13, 42), and that the City's interpretation means the "only way" to avoid a tow is to move a vehicle "in the presence of a City employee" or to "call the City's Abandonment Office and confirm over the phone" that the vehicle has been or will be moved, (*id.* ¶ 14).[6]

These allegations are an ill-conceived attempt to shoehorn Santiago's claim into the narrow confines of *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1 (1978). *Memphis Light* "does not support a general rule that notice of remedies and procedures is required," but only that such notice "may be required when those procedures are arcane and are not set forth in documents accessible to the public." *City of West Covina v. Perkins*, 525 U.S. 234, 242 (1999); *see Gates v. City of Chicago*, 623 F.3d 389, 398 (7th Cir. 2010) (recognizing *West Covina*'s limitation of *Memphis Light*).[7] But Santiago has not identified any arcane procedure. As the

---

[6] Santiago's allegations about being required to move the car in the presence of a City official or call to confirm the car was moved are not supported by the testimony she relies upon. The cited testimony was consistent with the City's previous testimony given by the same person that if "a person confirms over the phone that they have moved the vehicle or will be moving the vehicle promptly," the City will accept them at their word and "close[] the service request." (Dkt. 73-1 ¶ 41.) That the City accepts confirmation by phone that a person has moved their car does not mean a call is required to avoid a tow.

[7] Additionally, to the extent Velez was not her agent, as Santiago contends, then Santiago lacks standing to raise this claim or any other claim challenging the content of the sticker notice, *see infra* Arg. III, because she cannot show she detrimentally relied on the notice since she contends she never received it.

Seventh Circuit summarized, the procedure to avoid a tow is straightforward: "[i]f the vehicle is still there," after the date on the sticker notice passes, "then the tow driver removes the vehicle and impounds it." *Santiago*, 19 F.4th at 1014. Indeed, a judge of this Court found that the "apparently deserted" language—and corresponding procedure for avoiding a tow—was "clear" in a *published* decision more than three decades ago. *See Kohn*, 776 F. Supp. at 356. That Santiago's van was towed even though Velez claims she moved it does not mean the City employs an "arcane" procedure, it means that her car may have been towed in error (assuming Velez's claims are true). But that is not a matter of federal due process law. And, because the due process claim fails, the related unjust enrichment count also fails. *Cleary*, 656 F.3d at 517.

### III. The new claim in Counts I–III complaining that the sticker notice did not inform Santiago of her rights to contest her tow fails to state a claim for relief.

Santiago also has added to her Amended Complaint a claim that the sticker notice "does not provide for a hearing or avenue to contest the claim of abandonment." (Ex. A ¶ 8; *see also id.* ¶¶ 26, 29, 41.) Despite the Seventh Circuit's instruction that she "clearly defin[e]" her claims on remand, *Santiago*, 19 F.4th at 1020, this claim is still unclear. Santiago does not make an explicit claim that she was entitled to a pre-tow hearing, but rather couches the claim in terms of an alleged shortcoming in the sticker notice she received. (*See* Ex. A ¶ 8 (complaining that the "window sticker does not provide for a hearing or avenue to contest the claim of abandonment"), ¶ 41 (complaining about an alleged "failure to give vehicle owners notice of their right to contest").) Regardless, these allegations fail to state a claim upon which relief can be granted.

First, to the extent this is a claim that she was denied the right to contest her tow altogether, it fails because the City indisputably provides a hearing, and notice of how to request

---

*See, e.g., Gilbert v. Shalala*, 45 F.3d 1391, 1394 (10th Cir. 1995); *Conyers v. City of Chicago*, No. 12 C 06144, 2015 WL 1396177, at *7 (N.D. Ill. Mar. 24, 2015).

- 11 -

it, following the impoundment. As the Seventh Circuit recognized, after a vehicle is towed, the mailed notices "contain instructions for . . . *how to request a hearing to contest the validity of the tow and associated charges.*" *Santiago*, 19 F.4th at 1014 (emphasis added). At most, then, Santiago's claim is limited to the process afforded by the City prior to the tow.

To the extent her claim is that the pre-tow sticker notices do not describe how to contest the validity of the tow, that claim fails. As the U.S. Supreme Court has made clear, there is no "general rule" requiring the provision of "notice of the procedures for protecting one's property interests." *West Covina*, 525 U.S. at 242.

And to the extent she contends that she was entitled to and denied a pre-tow hearing, the claim fails just the same. It is settled that the City's post-deprivation process for challenging tows of illegally parked cars satisfies due process, *Holstein v. City of Chicago*, 29 F.3d 1145, 1148 (7th Cir. 1994), a rule that applies here because, by definition, vehicles subject to tow under the abandoned-vehicle ordinance are illegally parked. MCC § 9-80-110(a) ("It shall be unlawful for any person to abandon any motor vehicle on any public way with in the city."). Santiago's vehicle was also illegally parked for the separate reason that, as the Amended Complaint implies, (Ex. A ¶¶ 8, 14, 31, 33, 50), and as Plaintiff previously conceded, (Dkt. 63), Santiago's van lacked current state registration when it was towed. It is illegal to park with expired registration. MCC § 9-76-160(b). In addition to *Holstein*, the Seventh Circuit has held a pre-tow hearing was not required for a vehicle with expired registration under a law declaring such vehicles a "nuisance." *Noble v. Vill. of Elliott*, 605 F. App'x 572, 576 (7th Cir. 2015).[8]

---

[8] *Sutton v. City of Milwaukee*, 672 F.2d 644 (7th Cir. 1982), also holds that pre-tow notice and hearing are not required for illegally parked vehicles. *Id.* at 646. The court observed in dicta that there is time to provide "notice" before a tow of an abandoned vehicle, but did not discuss whether a pre-tow hearing was also required for those. *See id.* at 647; *see also Soffer v. City of Costa Mesa*, 607 F. Supp. 975, 981 n.3 (C.D. Cal. 1985), *aff'd in part*, 798 F.2d 361, 362-63 (9th Cir. 1986) (rejecting pre-tow hearing claim was consistent with *Sutton*).

Notably, in her response to the City's motion to dismiss her original complaint, Santiago disclaimed that she was pursuing a claim that she was entitled to a pre-tow hearing. (See Dkt. 38, at 13 n.5 (describing authority that dealt with "whether an actual *hearing* was required prior to towing an abandoned vehicle" as irrelevant to her claim), filed in response to Dkt. 27, at 8 (asserting that Santiago "does not take issue . . . with the opportunity provided for a hearing").) This was for good reason because the claim fails as a matter of law. Since this claim fails under due process, an unjust enrichment claim based on this theory also fails. *Cleary*, 656 F.3d at 517.

**IV.    Santiago's disposal claim in Counts IV–X fails under Rule 12(b)(1) and 12(b)(6).**

**A. Santiago lacks standing to assert her claim challenging the disposal of her van.**

Santiago alleges that the City owes her just compensation under the Takings Clause for the disposal of her van, but this claim is premised on an alleged violation of her due process rights—namely, that the City mailed her two impoundment notices on the same day, rather than on separate days, *id.* ¶ 28—allegedly in violation of MCC § 9-92-100. *Id.* ¶¶ 1-7, 15-17, 28, 29.

Santiago lacks standing to bring this claim because nowhere in the Amended Complaint does she allege whether or how the City's purported due process violation—*i.e.,* mailing her two notices of impoundment on the same day rather than on two separate days—concretely affected her ability to re-claim her vehicle from the City. She points to no harm stemming from the two impoundment notices from the City potentially arriving in her mailbox on the same day rather than on two separate days. *See TransUnion*, 141 S. Ct. at 2203. "[S]tanding is not dispensed in gross," *id.* at 2208, and because Santiago makes no allegation as to how the City's alleged statutory noncompliance caused her to lose her van, she lacks standing to sue. Alleging a "bare procedural violation" is not enough. *Wadsworth*, 12 F.4th at 666.

**B. Santiago's disposal claim in Counts IV–X fails under *Conyers*.**

As the City explained in its original motion to dismiss, (Dkt. 27, at 20), Santiago fails to

- 13 -

state a takings claim based on the disposal of her van because takings doctrine is inapplicable. The Court disagreed. (Dkt. 44, at 24.) However, since this Court passed upon the original Complaint, the Seventh Circuit decided *Conyers v. City of Chicago*, 10 F.4th 704 (7th Cir. 2021). *Conyers* provides an additional reason why her takings claim fails.

The *Conyers* plaintiffs challenged the City's practice of disposing of property confiscated from arrestees that goes unclaimed for thirty days following the seizure. *Id.* at 706. The Seventh Circuit affirmed dismissal of this claim.[9]

The Seventh Circuit "assume[d]" that all three traditional elements of a taking were present, but found that the claim failed anyway because the property could properly be treated as abandoned since the "plaintiffs failed to follow the reclamation procedures the City offered." *Id.* at 711. The court explained that "nothing compels the City to hold property forever," *id.*, and concluded that there was "nothing unconstitutional about the City's decision to deem the property abandoned after 30 days have elapsed" because each detainee (1) "knows exactly what has been taken from him and when that confiscation occurred"; (2) "is told both how . . . to get his property back and how quickly he must do so"; and (3) is provided a notice that informs him that failure to timely reclaim the property will lead to forfeiture. *Id.* at 712. Based on the satisfaction of these three elements, the court concluded that the City "plain[ly]" could treat unclaimed property "as abandoned" and therefore "dispose of it as it sees fit." *Id.*

The same conclusion applies here. Santiago's Amended Complaint indicates that the City mailed her two copies of a pre-disposal notice, (Ex. A ¶¶ 17, 28), and she successfully moved to supplement the record to include copies of these notices and the proof of mailing, (Dkt. 62 ¶¶ 7,

---

[9] The takings claim was originally dismissed for failure to exhaust state-court remedies. *Id.* at 708. After the Supreme Court abandoned that requirement, *see Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019), the *Conyers* plaintiffs moved to reconsider. The court declined to reconsider, *Conyers*, 10 F.4th at 709, and the Seventh Circuit affirmed the dismissal, finding their takings theory had no "merit," *id.* at 715.

8; Dkt. 62-1, at pp. 29-37 (Exs. E & F); Dkt. 65). This notice specifically informed her of (1) the identity of the property the City was holding (by VIN number and make of vehicle) and when it was taken ("Date Towed"); (2) the procedure for how to reclaim the vehicle and deadline for doing so; and (3) that "fail[ing] to retrieve your vehicle or request a hearing . . . will constitute a waiver of your rights therein, and this vehicle and its contents, if any, will be disposed of" under state and local law. (Dkt. 62-1, at p. 31.)

Under *Conyers*, Santiago's takings claim in Count VIII fails as a matter of law. Because her property interest was effectively extinguished by her failure to reclaim her van under the City's procedures, there was no property interest "taken" by the time the City disposed of it. Her unjust enrichment claim in Count V therefore also fails. *Cleary*, 656 F.3d at 517. Her claims for declaratory and injunctive relief, including mandamus, in Counts IV, VI, and VII, fail based on the Court's earlier conclusion that she has no "viable basis for prospective relief." (Dkt. 80, at 13.) Finally, her Fourth Amendment claims in Counts IX and X that were previously dismissed and that she repleads in an attempt to preserve them for appeal should remain dismissed. *Llano Fin. Grp., LLC v. Smith,* No. 15 C 7689, 2016 WL 4063174, at *3 n.1 (N.D. Ill. Jul. 29, 2016).

## CONCLUSION

For the reasons set forth above, the City respectfully requests that the Amended Complaint be dismissed with prejudice.

Date: January 26, 2022

Respectfully submitted,

CELIA MEZA,
Corporation Counsel for the City of Chicago

By: /s/ J. David Duffy

Jennifer Zlotow (#6280106)
jennifer.zlotow@cityofchicago.org
Peter Cavanaugh (#6308726)
peter.cavanaugh@cityofchicago.org
City of Chicago Department of Law
Constitutional and Commercial Litig. Div.
2 N. LaSalle Street, Suite 520
Chicago, Illinois 60602
(312) 744-0740/0897

J. David Duffy (#6242374)
dduffy@thompsoncoburn.com
Patrick Morales-Doyle (#6300364)
pmoralesdoyle@thompsoncoburn.com
Thompson Coburn LLP
55 East Monroe Street, 37th Floor
Chicago, Illinois 60603
(312) 346-7500

*Counsel for Defendant City of Chicago*

## CERTIFICATE OF SERVICE

    I hereby certify that on January 26, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record in this action.

/s/ J. David Duffy