IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREA SANTIAGO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 19 C 4652 |
| ) | |
| CITY OF CHICAGO, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In 2019, Andrea Santiago sued the City of Chicago in state court for towing, impounding, and disposing of her vehicle. The City removed the case to federal court and then moved to dismiss Santiago's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Court dismissed some of her claims and declined to dismiss others. Santiago then moved to certify two classes under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3). The Court granted the motion with respect to the 23(b)(3) classes but did not certify the proposed 23(b)(2) classes. Following the City's interlocutory appeal from the Court's class certification order, the Seventh Circuit vacated the order and remanded the case for further consideration. Santiago has now filed an amended complaint. The City again moves to dismiss her claims under Rules 12(b)(1) and 12(b)(6). For the reasons below, the Court grants the motion in part, denies the motion in part, and remands some of Santiago's claims to state court.

## Background

### A. Factual background

Andrea Santiago is a senior citizen who suffers from multiple sclerosis and is confined to a wheelchair. Because of her disabilities, she relies on her daughter, Lisandra Velez, to drive her around. Velez also assists Santiago with translating her mail and other English-based transactions because Santiago's primary language is Spanish. During the time period relevant to this lawsuit, Santiago's primary form of transportation was a van she owned, a 1998 GMC Savana 1500 that was fitted with special lift equipment for her wheelchair. Santiago regularly parked the van on the public street in front of her home because her garage did not have enough space for her to get in and out of the van while in her wheelchair.

On June 5, 2018, a City employee placed a sticker on the van's window that stated that the van was deemed abandoned and would be towed if not moved within seven days. At that time, the van was legally parked on the street in front of Santiago's house, as it usually was. Velez saw the notice while she was on her way to retrieve the van to drive Santiago to run some errands. Velez removed the notice from the window, drove the van to a different location on the same street, and placed signs in the windows of the van stating that the van was not abandoned. But she did not tell her mother about the tow-notice sticker.

On June 13, the City towed the van. It later mailed Santiago two notices of vehicle impoundment, both on the same day. The notices contained instructions regarding how to retrieve the vehicle, the procedure to request a hearing to contest the validity of the tow, and a warning that the vehicle would be disposed of if not claimed

within fifteen days.

Sometime before July 5, 2018, Velez attempted to retrieve the van from the impound lot but was told that she needed a notarized letter to retrieve it because she was not the van's registered owner. She returned with a notarized letter later that month but was told that the vehicle had been disposed of on July 16.

**B.     Legal background**

Under an Illinois statute and a City of Chicago ordinance, it is unlawful for a person to abandon a vehicle on public property. 625 Ill. Comp. Stat. 5/4-201(b); Chi. Mun. Code § 9-80-110(a). Vehicles are "deemed to have been abandoned if . . . [they have] not been moved or used for more than seven consecutive days and [are] apparently deserted." Chi. Mun. Code § 9-80-110(a). If a vehicle is determined to have been abandoned, City employees may issue a notice of parking violation and authorize the towing and impoundment of the vehicle. *Id.* § 9-92-030. For unregistered vehicles, like Santiago's van, the City's practice is to provide a sticker notice on the window of the vehicle. Dkt. no. 62-1 at 4-5. It does not mail any notice warning that a vehicle has been deemed abandoned and is subject to tow. *Id.*

Once the City tows a vehicle, it is required by ordinance to identify the owner within ten days and send the owner a notice of the impoundment. Chi. Mun. Code § 9-92-070(a). For unregistered vehicles, a notice must be sent by first-class mail to the last registered owner. *Id.*

The City is authorized by statute and ordinance to dispose of abandoned vehicles that remain unclaimed. 625 Ill. Comp. Stat. 5/4-209; Chi. Mun. Code § 9-92-100(a). To do so, the City must send an additional notice by first class mail to the

vehicle's registered owner within eighteen days after the provision of the initial notice. 625 Ill. Comp. Stat. 5/4-208(a); Chi. Mun. Code § 9-92-100(a). The registered owner of the impounded vehicle may request one fifteen-day extension before the vehicle's disposal. Chi. Mun. Code § 9-92-100(a). According to the complaint, if a vehicle is not claimed within the relevant time period, the City typically disposes of the vehicle by selling it to United Road Towing, Inc., a City contractor, for fifteen dollars. Am. Compl. ¶ 17.

**C.     Procedural history**

Santiago filed a state-court lawsuit against the City after it towed, impounded, and disposed of her van. The City removed the case to federal court and then filed a motion to dismiss, which the Court granted in part. Santiago then moved to certify two classes for the remaining claims. The Court certified two Rule 23(b)(3) classes, but the ruling was reversed by the Seventh Circuit. *Santiago v. City of Chicago*, 19 F.4th 1010 (7th Cir. 2021). On remand, Santiago filed an amended complaint on behalf of two classes of similarly situated individuals: (1) a "Tow Class" and (2) a "Vehicle Disposal Class." The City has filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6) seeking dismissal of all of Santiago's claims.

## Discussion

**A.     The Tow Class claims**

**1.     Due process**

Count 3 of the amended complaint is a section 1983 claim on behalf of the Tow Class. *See* 42 U.S.C. § 1983. Santiago alleges that "the City deprived [her] and members of the Tow Class of their constitutional rights to due process" in three ways.

4

Am. Compl. ¶ 52. First, she argues that the method of notice that the City gives people before towing their cars—namely sticker notice—is insufficient to afford proper notice. Santiago's second challenge concerns the content of the sticker notice, contending that the City must provide notice of its standards for determining that a car is abandoned. And lastly, Santiago alleges that the City's failure to provide pre-tow hearings is a due process violation.

### a. Method-of-notice claim

Santiago first argues that mailed notice, rather than sticker notice, is required to protect vehicle owners' due process rights. The City argues that Santiago doesn't have standing to bring this claim and that, even if she does, the City's practice of using sticker notices comports with the requirements of due process. On the first point, the City offers two reasons for why Santiago lacks standing to bring her method-of-notice claim.

First, the City argues that Santiago lacks standing because she received actual notice that her car was going to be towed. Thus, the City contends, her injuries are not fairly traceable to the alleged inadequacies in the City's sticker notice method. More specifically, the City argues that Santiago received actual notice because her daughter Velez received the sticker, and Velez's knowledge is imputed to Santiago because Velez was her agent.

The Court disagrees. Even if Velez was Santiago's agent for some purposes, it is not at all clear from the complaint that Velez was authorized to deal with legal notices on Santiago's behalf. The complaint alleges that Velez was allowed to drive Santiago's car and translate her mail into Spanish, but there is nothing to suggest that Velez handled legal matters for Santiago or was authorized to do so. Indeed, the record

5

suggests the opposite: Santiago personally purchases and coordinates legal matters like car registration; she was the sole policy holder on the vehicle's liability insurance; and she personally reviews all her mail.

Even if Velez was Santiago's agent and removing the City's sticker was within the scope of her agency, her knowledge would not be imputed to Santiago. Under Illinois law, "knowledge acquired by an agent within the scope of [her] agency . . . is not imputed where the agent has an interest or motive in concealing such knowledge from the principal." *Tomasiewicz v. Tyler*, 2015 IL App (1st) 141147-U. It is undisputed on the present record that Velez had a personal interest in concealing the notice from Santiago. Thus her knowledge of the notice is not imputed to Santiago as a matter of agency law.

The City's second argument regarding standing is that Santiago cannot meet the traceability element of Article III standing. *See Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1160 (7th Cir. 2021) ("At the pleading stage, standing requires allegations of a concrete and particularized injury in fact that is traceable to the defendant's conduct and redressable by judicial relief."). The City argues that Santiago lacks standing to assert this particular claim because Velez's concealment of the sticker breaks the causal chain between the City's actions and the injury. Causation is severed for purposes of the standing inquiry when the injury resulted because of the independent actions of third parties not before the court. *J.B. v. Woodard*, 997 F.3d 714, 720 (7th Cir. 2021). The City contends that it was Velez's concealment of the notice, not the method of notice, that resulted in Santiago's injury.

In response, Santiago argues that Velez's actions do not sever causation

because it was foreseeable that Santiago would not receive notice. *See Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2566 (2019) (holding that traceability was met where the plaintiffs "met their burden of showing that third parties will likely react in predictable ways to the [defendant's actions]"). She contends that the City's method of notice, namely sticker notice, was "specifically designed not to reach the owner of a vehicle subject to a tow." Resp. at 6. This contention is belied by the facts, however. Velez states in her deposition that she removed the sticker right before she drove Santiago in the vehicle. This suggests that, had Velez not removed the sticker, Santiago likely would have seen it when she got into the car, just as Velez did as she was retrieving the car.

Additionally, the question regarding foreseeability is whether the independent action of the third party was foreseeable, that is, Velez's concealment of the notice. *See id.* In *Department of Commerce*, the Supreme Court held that the plaintiffs established standing because "the evidence at trial" proved that certain third parties historically acted in a predictable way. *Id.* Santiago offers nothing to support her contention that the family members of vehicle owners or other individuals are likely to remove sticker notices attached to vehicles. Though it's certainly true that removal of a sticker attached to the outside of a vehicle is *possible*, that doesn't make it likely or, using the analysis employed in *Department of Commerce*, predictable based on experience. For these reasons, the Court concludes that Santiago's claim regarding the City's method of notice fails to meet the Article III traceability requirement and thus that she lacks standing to pursue this claim in federal court.

### b. Content-of-notice claim

Santiago likewise lacks Article III standing to bring a content-of-notice claim. Because Velez's knowledge cannot be imputed to Santiago, Santiago never received notice of the claim. Thus her injury is not fairly traceable to the content of the sticker notice, and she lacks standing to bring this claim.

### c. Pre-tow hearing

Santiago also challenges the City's failure to provide pre-tow hearings allowing vehicle owners to challenge the City's abandonment determination *before* their vehicles are towed and impounded. Again, she lacks standing under Article III to bring this claim because her injury is not fairly traceable to her lack of a pre-tow hearing. Even if the City provided vehicle owners with the ability to request a pre-tow hearing and informed vehicle owners of such rights in the sticker notice, there is no reason to think that Santiago would have known about this procedure, let alone utilized it, given Velez's concealment of the notice. Because it was Velez's actions, and not the City's, that caused Santiago's injury in this regard, she lacks standing to bring this claim.

### 2. Unjust enrichment

Count 2 of the amended complaint alleges that the City was unjustly enriched by the towing of Santiago's and other Tow Class members' vehicles. As the Court explained in its opinion regarding the City's first motion to dismiss, Santiago fails to state a claim of unjust enrichment because she "alleges no facts suggesting that she ever paid a fee to the City in connection with the towing and impoundment of her van." *Santiago v. City of Chicago*, 446 F. Supp. 3d 348, 368 (N.D. Ill. 2020). In the amended complaint, Santiago alleges only that the City received money from the disposal of her

8

vehicle, namely from the sale of the van to United Road Towing, but not from the towing and impoundment of her vehicle. Thus the Court dismisses count 2 for failure to state a claim.

### 3. Prospective relief

In count 1 of the amended complaint, Santiago alleges that the towing and impounding of vehicles without providing prior notice by certified or registered mail violates the due process clauses of the United States and Illinois Constitutions. Specifically, in count 1 Santiago asks the Court to declare that this procedure violates the due process rights of the owners of the towed and impounded vehicles and enjoin the City from engaging in such acts.

The Court concludes that Santiago lacks standing to seek prospective relief such as injunctions and declarations. In the Court's class certification order, it assessed whether Santiago had Article III standing to bring a claim for prospective relief. It concluded that she did not because her "claimed threat of future injury [wa]s speculative." *Santiago v. City of Chicago*, No. 19 C 4652, 2020 WL 6717516, at *6 (N.D. Ill. Nov. 15, 2020). Although Santiago has a new van that could be towed like her old van was towed, "[a] past injury alone is insufficient to establish [entitlement to] prospective relief." *See Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017). Santiago does not identify any flaws in the Court's prior decision on this point, and the Court has no reason to reach a different conclusion now.

### B. The Vehicle Disposal Class claims

### 1. Takings Clause

Count 8 of the amended complaint is a section 1983 claim in which Santiago

9

alleges that the City violated her and the Vehicle Disposal Class's rights under the Takings Clause of the Fifth Amendment. The City argues, first, that Santiago does not have standing to bring the claim and, second, that the Seventh Circuit's decision in *Conyers v. City of Chicago*, 10 F.4th 704 (7th Cir. 2021), forecloses her claim. For the reasons stated below, the Court overrules both of these arguments.

The City argues that Santiago lacks standing to bring this claim because she does not allege how the City's sending two notices on the same day caused her injury. But this contention misunderstands the nature of Santiago's claim. Count 8 of the amended complaint does not allege a due process violation stemming from the City's failure to send an additional notice after the original notice. Rather, it alleges a violation of the Takings Clause, stemming from an injury caused by the City's unlawful taking of her vehicle. Because this claim does not require an allegation that the City's alleged deficient notice caused her injury, the Court rejects the City's argument.

The City also moves to dismiss count 8 for failure to state a claim. In its motion to dismiss Santiago's original complaint, the City similarly argued that Santiago failed to state a takings violation. The Court overruled these arguments and declined to dismiss the claim.

The City again argues, in its motion to dismiss the amended complaint, that Santiago fails to state a viable Takings Clause claim. It contends that the Seventh Circuit's decision in *Conyers* provides a new reason for the Court to dismiss the claim not addressed in the Court's previous decision, which predated *Conyers*. In *Conyers*, the plaintiffs sued the City on behalf of a class to challenge the City's policy of selling or destroying inventoried property of arrested persons after thirty days. The Seventh

10

Circuit held that the City's destroy-or-sell policy did not violate the Takings Clause because the City properly deemed that the property was abandoned at that point, and abandoned property doesn't belong to anyone. The court noted three considerations demonstrating that "there is nothing unconstitutional about the City's decision to deem property abandoned after 30 days have elapsed":

> First, the detainee knows exactly what has been taken from him and when that confiscation occurred. Second, the detainee is told both how (either personally or through a representative) to get his property back and how quickly he must do so. Finally, the hard-copy Notice plainly states that "[i]f you do not contact the CPD to get your property back within 30 days of the date on this receipt, it will be considered abandoned under Chicago Municipal Code Section 2-84-160, and the forfeiture process will begin . . . ."

*Id.*

This case, however, is distinguishable from *Conyers*. The considerations the Seventh Circuit noted all concern whether the property owner has notice that her property will be disposed of after a certain period of time. It cannot be said that one has notice that her car will be disposed of when the City does not follow the procedures outlined in its ordinances. Based on the "additional notice" language of the ordinance, it would be reasonable for a vehicle owner to think that her car will not be disposed of until the City sends an additional notice after the first one. The Court further notes that the mailed notice that Santiago received contained inaccurate information regarding how long she had to collect her vehicle before disposal. *See* Dkt. no. 73-1 at ECF p. 28 of 83 (incorrectly stating that the owner has 15 days rather than 18 days to collect her vehicle).

In addition to its arguments regarding *Conyers*, the City also argues that count 8 should be dismissed because "it rests on a claimed state-law violation." Reply at 11.

11

Not so. As previously stated, Santiago's claim is a takings claim that is not dependent on any alleged deficiency in the City's notice procedures. Her complaint's allegations regarding the City's violation of its own laws are there simply to address the City's anticipated defense based on *Bennis v. Michigan*, 516 U.S. 442 (1996), in which the Supreme Court held that no taking occurs when property is "lawfully acquired under the exercise of governmental authority." The basis of Santiago's section 1983 claim is thus an alleged violation of federal constitutional law, namely the Takings Clause, not state law. For this reason, the cases cited by the City are immaterial, and the Court concludes that count 8 states a claim.

### 2. Unjust enrichment

Count 5 is an unjust enrichment claim on behalf of Santiago and the Vehicle Disposal Class. The City's only argument for dismissal is that it rises and falls with the underlying claim. Because the Court has declined to dismiss count 8, it declines to dismiss the related unjust enrichment claim in count 5.

### 2. Fourth Amendment

In count 10, Santiago seeks damages under section 1983 on behalf of the Vehicle Disposal Class for violations of the Fourth Amendment's protection against unreasonable seizures. The Court dismissed this claim in its decision regarding the City's first motion to dismiss. It concluded that Santiago failed to state a claim because the Fourth Amendment is limited to an individual's interest in retaining her property and cannot be invoked by the dispossessed owner to regain her property. *Santiago*, 446 F. Supp. 3d at 363. Santiago makes no new arguments against dismissal of the claim and states that she merely realleges the claims to preserve them for further review. The

Court dismisses the claim for the reasons stated in its prior opinion.

### 3. Prospective relief

In counts 4, 7, and 9 of the amended complaint, Santiago seeks declaratory and injunctive relief on behalf of the Vehicle Disposal Class. As with the claims seeking declaratory and injunctive relief on behalf of the Tow Class, the Court finds that Santiago lacks standing to seek such relief. Santiago has offered nothing to dispute the Court's conclusion in its class certification opinion that "her interest in prospective relief is too tenuous" to create standing. *Santiago*, 2020 WL 6717516, at *6. "Just as Santiago has not adequately shown that she faces a real and immediate threat that her new van will be towed by the City, she has not adequately shown a real and immediate threat that the van will be disposed of after having been towed." *Id.*

### 4. Mandamus

In count 6, Santiago requests "a writ of mandamus directing the City's Department of Streets and Sanitation to send an additional notice of impending vehicle disposal prior to disposing of a vehicle towed and impounded." Am. Compl. ¶ 62(B). As with her other claims for prospective relief, the Court concludes that Santiago lacks standing to bring this claim. The Court did not discuss the mandamus claim in its discussion of standing in the class certification opinion, but the same reasoning applies: Santiago does not adequately allege an imminent and non-speculative injury giving rise to Article III standing to seek prospective relief.

Additionally, there is good reason to believe that the Court lacks the authority to issue a writ of mandamus to the City on this claim. Federal law, specifically 28 U.S.C. § 1361, gives federal district courts "original jurisdiction [over] any action in the nature of

mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." This provision, however, does not confer upon federal district courts the authority to compel non-federal employees to follow state law. *See Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 469 (7th Cir. 1988) (holding that the district court would not have had jurisdiction over a mandamus claim against state officials even if it had jurisdiction over related federal claims). In this case, Santiago seeks a writ of mandamus against the City, which the Court does not have jurisdiction to issue.

\* \* \*

Now that the Court has discussed each of Santiago's claims, it turns to the question of what should become of the claims on which Santiago lacks Article III standing. The parties agree that if the Court finds that Santiago lacks standing to raise *all* of her federal claims, then remand of the case—rather than dismissal—would be appropriate. The City contends, however, that "if the Court finds she lacks standing to raise some claims but at least one of her federal claims survives, then remand would not be appropriate." Reply at 1 n.1.

The Court disagrees with the City's contention. The City fails to provide any support for its position, and a review of cases from this circuit suggests the opposite conclusion. *See, e.g., Bergquist v. Mann Bracken, LLP*, 592 F.3d 816, 819 (7th Cir. 2010) ("If some parts of a single suit are within federal jurisdiction, while others are not, then the federal court must resolve the elements within federal jurisdiction and remand the rest—unless the balance can be handled under the supplemental jurisdiction."); *Cummings v. Ind. Dep't of Correction*, No. 1:13-cv-952-JMS-TAB, 2013 WL 4413325, at

*3 (S.D. Ind. Aug. 13, 2013) (granting the plaintiff's motion for partial remand); *Bolden v. Summers*, 181 F. Supp. 2d 951, 955 (N.D. Ill. 2002) (granting the motion to remand some of the plaintiff's claims to state court). For this reason, rather than dismissing the claims that Santiago lacks standing to bring, it remands them to state court, where Santiago filed her suit in the first instance.

## Conclusion

For the foregoing reasons, the Court grants in part and denies in part the defendant's motion to dismiss [dkt. no. 125]. The Court dismisses counts 2 and 10 of Santiago's for failure to state a claim. Counts 1, 3, 4, 6, 7, and 9 of the amended complaint are severed from the remaining claims and are remanded to the Circuit Court of Cook County due to lack of federal subject matter jurisdiction. The Court declines to dismiss counts 5 and 8 and directs the defendant to answer those claims by no later than April 26, 2022. The Court also directs the parties to confer and attempt to agree upon an appropriate schedule for further proceedings. They are to file a joint status report in this regard by April 15, 2022. The case is set for a telephonic status hearing on April 19, 2022 at 9:10 a.m., using call-in number 888-684-8852, access code 746-1053.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 5, 2022