# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ANDREA SANTIAGO,           )
individually and on behalf of all   )
others similarly situated,       )
                                 )
Plaintiff,               )
                                 )
vs.                    )     Case No. 1: 19-cv-04652
                                 )
CITY OF CHICAGO,         )     Magistrate Judge Jeffrey T. Gilbert
a Municipal Corporation,      )
                                 )
Defendant.             )

## MEMORANDUM OPINION AND ORDER

Plaintiff Andrea Santiago ("Plaintiff" or "Santiago") filed a Motion to Compel production of documents she claims are improperly withheld by Defendant the City of Chicago ("Defendant" or "City") under the deliberative process privilege. *See* Plaintiff's Motion to Compel Documents Improperly Withheld by Defendant under Deliberative Process Privilege ("Motion") [ECF No. 167]. Plaintiff contends there is no deliberative process privilege applicable to the City of Chicago under Illinois law, relying on *People ex rel. Birkett v. City of Chicago*, 184 Ill.2d 521 (Ill. 1998) ("*Birkett*"). [*Id.*] The City says the Court need not reach this issue because none of the documents Plaintiff seeks are relevant to the remaining counts in the Amended Complaint, and it urges the Court to address that preliminary issue first. Defendant City of Chicago's Response in Opposition to Plaintiff's Motion to Compel Production of Documents Subject to the Deliberative Process Privilege ("Response") [ECF No. 172] at 4-8. The

1

City also, however, disputes that Illinois law applies here. [*Id.*] As the parties primarily address only the threshold legal questions of whether Illinois law applies and whether the City may invoke the deliberative process privilege under applicable law, and because the Court finds the deliberative process privilege potentially is available to the City in this case under federal law, the parties will need to further brief whether the City can avail itself of the privilege as to the specific documents at issue. The Motion, therefore, is denied without prejudice for the reasons discussed below.

**Relevance of the Withheld Documents**

Federal Rule of Civil Procedure 26(b)(1) states "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). A party seeking discovery may file a motion to compel under Federal Rule of Civil Procedure 37 if another party fails to respond to a discovery request or when its response is insufficient. FED. R. CIV. P. 37(a). "Courts have broad discretion in resolving such disputes and do so by adopting a liberal interpretation of the discovery rules." *United States Gypsum Co. v. Ectek Int'l, Inc.*, 2022 WL 1155155, at *2 (N.D. Ill. 2022) (internal citations omitted); *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 629 (7th Cir. 2008).

Both parties rely on outdated articulations of the discovery standard. Plaintiff contends the withheld documents are relevant because they "relate to the subject matter of this litigation." *See* [ECF No. 167] at 6; [ECF No. 175] at 2 (same). The City says materials are relevant "if they 'appear reasonably calculated to lead to the discovery of admissible evidence.'" [ECF No. 172] at 7. Neither correctly states the Rule 26 discovery standard. The 2015 amendments to Rule 26(b)(1) "subtly narrowed the concept of relevance for purposes of discovery. They deleted from Rule 26 a party's ability, for good cause, to obtain discovery of any information relevant to the subject matter of the case, and the notion that information is discoverable, even if not directly relevant, if it is reasonably calculated to lead to the discovery of admissible evidence." *Ye v. Cliff Veissman, Inc.*, No. 14-CV-01531, 2016 WL 950948, at *2 (N.D. Ill. Mar. 7, 2016); *see also Barnes-Staples v. Murphy*, No. 20-CV-3627, 2021 WL 1426875, at *3 n.1 (N.D. Ill. Apr. 15, 2021) ("the likelihood that requested information could lead to admissible evidence is no longer an indication of discoverable information"); *Friedman v. Wolfspeed, Inc.*, No. 22 C 2253, 2023 WL 4106066, at *4 (N.D. Ill. June 21, 2023) ("... the 'subject matter' reference has been eliminated from the rule, and the matter sought must be 'relevant to any party's claim or defense.' ... That change, however, was intended to restrict, not broaden, the scope of discovery.") (quoting *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020)).

Nevertheless, the scope of permissible discovery remains broad. "Because the purpose of discovery is to help 'define and clarify the issues,' relevance is to be construed broadly." *Doe v. Loyola Univ. Chicago*, No. 18 CV 7335, 2020 WL 406771,

at *2 (N.D. Ill. Jan. 24, 2020) *(quoting Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)). "If relevance is in doubt, courts should err on the side of permissive discovery." *Id.* (quoting *Wiginlon v. CB Richard Ellis, Inc.,* 229 F.R.D. 568, 577 (N.D. Ill. 2004)). "Despite the liberal breadth of discovery allowed under Rule 26 of the Federal Rules of Civil Procedure, a proponent of a motion to compel discovery bears the initial burden to prove that the information sought is relevant." *PsyBio Therapeutics, Inc. v. Corbin*, No. 20 C 3340, 2021 WL 4459527, at *1 (N.D. Ill. Sept. 29, 2021).

Turning first to the relevance issue, Plaintiff says the documents being withheld are very relevant to her claims, pointing to the City's description of them as addressing "deliberations on enforcement of payment procedures and questions regarding towing procedures," which Plaintiff claims "are the very topics of this suit." [ECF No. 167] at 6 (citing Ex. E, Nov. 12, 2021 letter from the City). Plaintiff says "[t]his case is all about the City's policies and procedures relating to notice and abandoned vehicles," [ECF No. 175] at 2, so the documents are likely centrally relevant to her claims. Plaintiff also says documents in dispute related to a proposed ordinance for abandoned vehicles could provide information on the feasibility of actions the City failed to take, such as ways to provide proper notice or determine abandonment. [*Id.*][1]

---

[1] Plaintiff also says certain or the documents being withheld "related to the City formulating responses to FOIA requests" referenced in the City's November 12, 2022 correspondence, *see* [ECF No. 167-1] at Ex. E, could identify other relevant documents about "these subject matters" [ECF No. 167] at 6, but it does not appear the FOIA request documents are still in dispute. *See* [ECF No. 172] at 5-6 and Ex. A. It also appears that any dispute regarding documents about the City's vendor software agreement with Motorola is now moot because

The City says it produced additional documents with its Response that narrowed the parties' dispute (and Plaintiff does not disagree with that characterization in its Reply), and identifies the remaining documents being withheld in an excerpt from the City's amended privilege log (hereinafter the "Withheld Documents"). *See* [ECF No. 172-1] at Ex. A; *see also* [ECF No. 172] at 4; [ECF No. 175]. The City describes the remaining documents at issue as in categories: #1 and #2 (September 2020 and March 2021 communications regarding a draft ordinance about abandoned vehicles on vacant lots, *see* Ex. A, log rows 2-3, 30-31, 128, 145-151); #3 (February 2016 communications regarding proposed state legislation about notice to lienholders and the timing of fees charged for impounded vehicles, *see* Ex. A log rows 35-36, 41-42, 321-322); #4 (April and May 2020 communications discussing "proposed changes to City policies and procedures related to abandoned vehicles. . .," *see* Ex. A log rows 166-169, 197-200, 277-278, 281-22); and #5 (communications about "alderman's efforts to develop policy related to towing and referencing the 'Towing Bill of Rights'" enacted in 2016, *see* Ex. A log rows 171-172). *See* [ECF No. 172] at 5-6.

The City says these documents are not relevant because the scope of this case was narrowed by Judge Kennelly, the District Judge who previously presided in this

---

the City has produced those previously withheld documents. *See* [ECF No. 167] at 6-7; [ECF No. 172] at 7. In addition, Plaintiff apparently does not challenge the City's claim that certain attachments to emails were also withheld on the basis of attorney/client privilege, *see* [ECF No. 172] at 6 n.4 (identifying log rows 415-416, 419-420, and 423-424). *See* [ECF No. 175] at 1 (stating documents "at issue in this motion . . . do not involve attorney-client communications or attorney work product"). The parties can clarify these issues in their forthcoming briefs concerning the application of the deliberative process privilege in this case.

case, when he granted the City's motion to dismiss in part and remanded certain of Plaintiff's claims to state court. [ECF No. 172] at 4. For this reason, the City contends "[t]he remaining 'topic' of this suit is the timing of when the City mailed one of the two posttow notices it sent [Plaintiff]" and Plaintiff's "tow claims are no longer in the case." [*Id.*] at 6. The City also asserts internal deliberations about proposed legislation from two and three years after the tow of Plaintiff's vehicle in 2018 are not relevant. [*Id.*] at 7.

The Court views the scope of Plaintiff's remaining Takings Clause claim as broader than the City acknowledges. *See* Count VIII of the Amended Complaint, [ECF No. 124] at ¶¶ 69-73. "A person who asserts a Takings Clause claim must show several things: (1) that the governmental entity 'took' his property, either through a physical taking, or through unduly onerous regulations; (2) that the taking was for a public use; and (3) that, no matter what type of property (real or personal) was taken, the government has not paid just compensation." *Conyers v. City of Chicago*, 10 F.4th 704, 710-11 (7th Cir. 2021), *cert. denied sub nom. Conyers v. City of Chicago, Illinois*, 212 L. Ed. 2d 578, 142 S. Ct. 1669 (2022). (internal citations omitted). In Judge Kennelly's decision denying the City's motion to dismiss Count VIII, he explained this Count "does not allege a due process violation stemming from the City's failure to send an additional notice after the original notice. Rather, it alleges a violation of the Takings Clause, stemming from an injury caused by the City's unlawful taking of her vehicle." Memorandum Opinion and Order [ECF No. 131] at 10. Therefore, the City's

characterization of the issues remaining in the case as solely relating to the sufficiency of the notice under the City's ordinances appears to be too narrow.

In addition, Judge Kennelly distinguished the circumstances here from those in *Conyers*. In that case, the Seventh Circuit relied on three aspects of the notice provided regarding the property taken from detainees there to conclude the City's decision to treat that property as abandoned was not unconstitutional:

> First, the detainee knows exactly what has been taken from him and when that confiscation occurred. Second, the detainee is told both how (either personally or through a representative) to get his property back and how quickly he must do so. Finally, the hard-copy Notice plainly states that "[i]f you do not contact the CPD to get your property back within 30 days of the date on this receipt, it will be considered abandoned under Chicago Municipal Code Section 2-84-160, and the forfeiture process will begin ...." (Emphasis added.)

*Conyers*, 10 F.4th at 712. As Judge Kennelly explained, Count VIII states a claim that Plaintiff did not have adequate notice like that present in *Conyers*:

> It cannot be said that one has notice that her car will be disposed of when the City does not follow the procedures outlined in its ordinances. Based on the 'additional notice' language of the ordinance, it would be reasonable for a vehicle owner to think that her car will not be disposed of until the City sends an additional notice after the first one. The Court further notes that the mailed notice that Santiago received contained inaccurate information regarding how long she had to collect her vehicle before disposal.

[ECF No. 131] at 11. Moreover, Judge Kennelly stated, "allegations regarding the City's violation of its own laws are there simply to address the City's anticipated defense" that "no taking occurs when property is 'lawfully acquired under the exercise of governmental authority.'" [*Id.*] at 12.

As the Seventh Circuit noted in *Conyers*, the "takings analysis is, to a degree, intertwined with the adequacy of the notice" but "notice is quintessentially an

element of due process, not the power of government to take property." *Conyers*, 10 F.4th at 712. Here, it appears an issue underlying Plaintiff's Takings Clause claim is whether Plaintiff abandoned or "intentionally relinquished" her vehicle after the City towed it by failing "to follow the reclamation procedures the City offered" in the two allegedly deficient vehicle impoundment notices sent to Plaintiff on the same day. *See Conyers*, 10 F.4th at 711 ("genuinely abandoned property does not belong to anyone, and thus the City may dispose of it as it sees fit") (internal citations omitted). The City's characterization of this case as only involving whether "the City allegedly departed from statutory provisions" as to post-tow notices, [ECF No. 172] at 4, incorrectly conflates the issue of whether the City complied with its ordinance with the claim that Plaintiff's property was improperly treated as abandoned, taken by the City, and destroyed without adequate notice.

Based on the descriptions provided by the parties, the Court does not agree with the City that its internal communications regarding proposed policies on abandoned or impounded vehicles, or even more generally about towing policies as they relate to such vehicles, have no relevance to Plaintiff's remaining Takings Clause claim. While Plaintiff improperly focuses her arguments on the "subject matter" of the lawsuit, as noted above, the City's characterization of the remaining Takings Clause claim also is overly narrow. Moreover, Plaintiff says the Withheld Documents "include agreed upon search terms such as 'additional notice,' 'second notice,' 'deserted,' 'erroneous disposition,' and 'post-tow letter'" and that the City agreed to produce such responsive documents (unless withheld on privilege grounds)

in the parties' agreed ESI Protocol. *See* [ECF No. 167] at 1-2 (citing March 2021 Stipulated Procedures for Defendant City of Chicago's Search and Production of Electronically Stored Information [ECF No. 93]), 7. The City does not appear to dispute the Withheld Documents were responsive to these search terms (*see* ECF No. 172 at 8), which not only were agreed, but also strike the Court as encompassing issues related to the Takings Clause claim. Documents responsive to agreed search terms (even after Judge Kennelly's earlier decision) cannot be said to be irrelevant to the claims and defenses in the case. Nor does the City argue that production of these documents is not proportional to the needs of the case. FED.R.CIV.P. 26(b)(1).[2]

Accordingly, "[c]onsistent with the 'permissive discovery' envisioned by Rule 26, *see Life Spine, Inc. v. Aegis Spine, Inc.*, No. 19 CV 7092, 2021 WL 5415155, at *4 (N.D. Ill. Nov. 19, 2021) (quoting *Coleman v. Ill.*, No. 19 CV 3789, 2020 WL 5752149, at *3 (N.D. Ill. Sept. 25, 2020)), the Court finds Plaintiff has satisfied the liberal relevance standard for discovery purposes under Rule 26(b)(1) and will therefore consider whether the City may invoke a deliberative process privilege.

---

[2] While the Court finds the fact that the Withheld Documents are responsive to the agreed search terms supports the notion that these documents are relevant under Rule 26(b)(1), the Court rejects Plaintiff's argument that the City waived its relevance objections. *See* [ECF No. 167] at 7. In light of the changed landscape of the case after Judge Kennelly's decision, the Court agrees with the City that it is entitled to raise new relevance objections now. *See* [ECF No. 172] at 8. Nonetheless, as explained above, the City does not articulate why the agreed search terms no longer have any relevance to the remaining claims. The Court also notes Plaintiff's argument that these documents could shed light on the feasibility of different practices or procedures considered by the City, as to which the City does not articulate a clear response.

**Applicability of the deliberative process privilege to municipal actors**

Plaintiff concedes "federal law governs a claim of privilege here," but contends comity principles require deference to Illinois law as set forth in *Birkett*, 184 Ill.2d 521, 532–33, in which the Illinois Supreme Court declined to adopt a deliberative process privilege applicable to municipal entities like the City. [ECF No. 167] at 4-5. Plaintiff relies on *Murdock v. City of Chi.*, 565 F. Supp. 3d 1037 (N.D. Ill. 2021), which applied *Birkett* and declined to recognize any deliberative process privilege for state and municipal officials in Illinois.

The Court respectfully declines to follow the analysis in *Murdock* in which Judge Feinerman held that comity principles require application of Illinois law to a privilege determination like that raised here. As an initial matter, Federal Rule of Evidence 501 governs the application of privilege to federal claims in federal court:

> The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise: the United States Constitution; a federal statute; or rules prescribed by the Supreme Court. But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Fed. R. Evid. 501. "[F]ederal courts apply the federal common law of evidentiary privileges—not state-granted privileges—to claims . . . that arise under federal law." *Hamdan v. Indiana Univ. Health N. Hosp., Inc.*, 880 F.3d 416, 421 (7th Cir. 2018) (internal citations omitted). Plaintiff asserts a federal question claim under the Takings Clause pursuant to 42 U.S.C. § 1983. *See* Amended Complaint [ECF No. 124] at ¶¶ 69-73; [ECF No. 131] at 12 ("The basis of Santiago's section 1983 claim is thus

an alleged violation of federal constitutional law, namely the Takings Clause, not state law."). Accordingly, federal privilege law applies in this case.[3]

In *Murdock*, the court acknowledged Rule 501 "provides that federal common law, not state law, 'governs a claim of privilege' in federal question suits," but went on to reason that the "'strong policy of comity between state and federal sovereignties' requires federal courts to 'consider the law of the state in which the case arises in determining whether a privilege should be recognized as a matter of federal law.'" *Id.*, 565 F. Supp. 3d at 1042 (quoting *Hamdan*, 880 F.3d at 421 and *Mem'l Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981) ("*Memorial Hospital*")). The court in *Murdock* noted "some district court decisions hold that, despite *Birkett*, state and municipal entities in Illinois can invoke the deliberative process privilege in federal question cases," but it disagreed with those decisions. *Id.*, 565 F. Supp. 3d at 1043. Instead, the court observed "[t]he Seventh Circuit has not resolved whether state and municipal entities may invoke the deliberative process privilege in a federal question suit, so the question remains open in this Circuit" and reasoned "that federal common law recognizes a deliberative process privilege for federal agencies, does not necessarily mean that it does the same for state and municipal agencies." *Id.*, 565 F. Supp. 3d at 1042-43 (citing *Williamson v. City of Pekin*, 2015 WL 13747583, at *1

---

[3] That Plaintiff also alleges a state law unjust enrichment claim and a Takings claim under the Illinois Constitution does not change the Court's determination. Contrary to Plaintiff's assertion that there is no "well-settled, bright line rule" extending federal common law privileges to supplemental state law claims, *see* [ECF No. 175] at 2, the Seventh Circuit has clearly held federal privilege law applies to such claims in a case such as this. *See*, *e.g.*, *Memorial Hospital*, 664 F.2d at 1061 n.3 (federal law controls the question of privilege in a federal question case "notwithstanding the presence of a pendent state claim"; "it would be meaningless to hold the communication privileged for one set of claims and not the other").

(C.D. Ill. July 15, 2015)).[4] In light of its view that there was no recognized federal common law privilege for state or municipal officials, the court opted to apply Illinois law as articulated in *Birkett*. *Id.*, 565 F. Supp. 3d at 1044.[5]

In this Court's view, the analysis in *Murdock* not to apply the deliberative process privilege recognized by federal courts in cases involving federal agencies in a case involving a municipal agency was too narrow. While the Seventh Circuit has not addressed whether the deliberative process privilege applies to state and municipal government actors, it also has not rejected such an application. Rather, the Seventh

---

[4] The Supreme Court and Seventh Circuit decisions discussed in *Murdock* analyzed the scope of the deliberative process privilege as incorporated into Exemption 5 of the Freedom of Information Act ("FOIA"). *See id.* at 1042-43. The FOIA, however, is expressly limited by its statutory terms to federal agencies. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001) (Exemption 5 of FOIA, 5 U.S.C. § 552(b)(5), applies to "inter-agency or intra-agency" communications and defines such agencies as "each authority of the Government of the United States," 5 U.S.C. § 551(1)). For this reason, these decisions do not strike this Court as dispositive of whether a federal common law privilege has or can be extended to state or municipal agencies in the civil litigation discovery context. Moreover, in *Williamson*, cited in *Murdock*, the court acknowledged "the migration of the privilege to state and municipal entities" and went on to assume the privilege applied to such officials. 2015 WL 13747583, at *1–2.

[5] Some other courts in this circuit have also questioned, without deciding, whether a deliberative process privilege extends to state or municipal officials. *See Scott v. Edinburg*, 101 F. Supp. 2d 1017, 1021 (N.D. Ill. 2000) ("Illinois does not recognize such a privilege," citing *Birkett*, and stating "this Court is wary about extending such a protection as a matter of federal common law"); *Allen v. Chicago Transit Auth.*, 198 F.R.D. 495, 501–02 (N.D. Ill. 2001) ("[W]e cannot find [defendant] has established the existence of a federal common law deliberative process for municipal agencies" where defendant cited only decisions applying a deliberative process privilege that predated *Birkett*). *Cf. Valbruna Slater Steel Corp. v. Joslyn Mfg. Co.*, No. 1:15-MC-39-SEB-DKL, 2015 WL 6695510, at *4–6 (S.D. Ind. Nov. 3, 2015) (finding Indiana does not recognize deliberative process privilege and reasoning "[t]here is no reason to extend to state agencies in federal court greater privileges than they enjoy in their own courts under their own law" because "the overall efficacy of extending the privilege to the state's agencies in federal-question litigation would likely be too insubstantial to outweigh the fundamental public interest in truth-seeking and accurate court determinations.").

Circuit has explained "[t]he deliberative process privilege protects communications that are part of the decision-making process of a governmental agency" and "[s]ince frank discussion of legal and policy matters is essential to the decisionmaking process of a governmental agency, communications made prior to and as a part of an agency determination are protected from disclosure." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993); *see also In re Sealed Case*, 121 F.3d at 737 ("[T]he privilege's 'ultimate purpose . . .. is to prevent injury to the quality of agency decisions' by allowing government officials freedom to debate alternative approaches in private.") (internal citations omitted). This rationale is equally applicable to state and municipal government officials, in this Court's view, and the Court does not see a basis for distinguishing between the internal deliberations of these officials and federal officials. *See Smith v. Rogers*, No. 3:15-CV-264, 2017 WL 2937957, at *3–4 (W.D. Pa. July 10, 2017) (noting "in many of the cases where the deliberative-process privilege was asserted it was a *federal* department or agency asserting the privilege" but concluding there was "no persuasive reason why states or local governments . . . would not also be entitled to assert the privilege. Generally speaking, the privilege's motivating rationale is implicated regardless of whether the deliberations occurred at the federal, state, or local level; if the communications are part of 'a process by which governmental decisions and policies are formulated,', then the prospect of public dissemination can chill those communications.") (quoting *N. L. R. B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)).[6]

---

[6] *See, e.g., United States v. Irvin*, 127 F.R.D. 169, 172 (C.D. Cal. 1989) (communications between Los Angeles County Board of Supervisors and staff regarding proposed redistricting

Moreover, this Court is persuaded by the decisions of the many district courts within this circuit as well as in other jurisdictions that have applied the deliberative process privilege to state and municipal actors. *See* [ECF No. 172] at 11-12 (collecting decisions in this district applying a deliberative process privilege to state or municipal government actors); *see, e.g.*, *Bayliss v. New Jersey State Police*, 622 F. App'x 182, 184-85 (3d Cir. 2015) (affirming district court decision that "Review Sheets" from the State Police's Office of Professional Standards were protected by deliberative process privilege in a § 1983 suit alleging two New Jersey State Police troopers used excessive force during traffic arrest); *Shaw*, 2021 WL 4284546, at *4–5 ("Other district courts within the Tenth Circuit have persuasively found the deliberative process privilege

---

plan before its adoption was protected from disclosure by deliberative process privilege in Voting Rights Act case) ("In terms of the alleged need for secrecy surrounding deliberations, there is no principled distinction between the County Supervisors and those government officials who currently enjoy a deliberative process privilege. If there exists a need to protect candid, private communications among federal executive officials and their staff, the need to protect candid, private communications among county officials and their staff is no less compelling."); *Newport Pac. Inc. v. Cnty. of San Diego*, 200 F.R.D. 628, 637–38 (S.D. Cal. 2001) (finding reasoning as to deliberative process privilege in *Irvin* persuasive as to San Diego County Board of Supervisors and aides); *Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1120–21 (N.D. Cal. 2003) ("Many lower courts have also extended the privilege to protect the decisionmaking processes of local legislators"; "deliberative process privilege applies not only to agencies but also local legislators."); *Shaw v. Schulte*, No. 19-1343-KHV-GEB, 2021 WL 4284546, at *4–5 (D. Kan. Sept. 21, 2021) ("[t]he rationale for the privilege" – to "'enhance the quality of agency decisions by protecting open and frank discussion' among those who make decisions within the Government'" extended to state and municipal agencies). *Cf. In re N. Dakota Legislative Assembly*, 70 F.4th 460, 463 (8th Cir. 2023) ("In civil litigation, there is no reason to conclude that state legislators and their aides are 'entitled to lesser protection than their peers in Washington.' Legislative privilege, like legislative immunity, reinforces representative democracy by fostering an environment where public servants can undertake their duties without the threat of personal liability or the distraction of incessant litigation.") (internal citations omitted); *In re Grand Jury*, 821 F.2d 946, 958–59 (3d Cir. 1987) (deliberative process privilege for executive officials "provides a useful analogy for a confidentiality-based privilege for state legislators because executive agencies, like state legislators, engage in a wide variety of activities, including factual investigations for quasi-legislative rulemaking").

potentially available to state and municipal agencies."); *In re New York City Policing During Summer 2020 Demonstrations*, No. 20CIV8924CMGWG, 2023 WL 2008612, at *3 (S.D.N.Y. Feb. 15, 2023) (holding deliberative process privilege applied to documents sought in discovery from defendants the City of New York and other City agencies); *Swanston v. City of Plano, Texas*, No. 4:19-CV-00412, 2020 WL 4732214, at *6 (E.D. Tex. Aug. 14, 2020) (finding in initial analysis that deliberative process privilege applied to certain deposition topics for the City of Plano); *N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1120–21 (N.D. Cal. 2003) ("Federal common law recognizes the deliberative process privilege" and "[t]he Court agrees that the deliberative process privilege applies not only to agencies but also local legislators"). *See also Bahena v. City of Chicago*, No. 17 C 8532, 2018 WL 2905747, at *3 (N.D. Ill. June 11, 2018) (finding Cook County State's Attorney's Office met its initial burden to show deliberative process privilege applied to withheld documents) (Gilbert, M.J.). The Court views these many decisions, which are consistent with the principles supporting the deliberative process privilege articulated by the Seventh Circuit, as demonstrating the existence of a deliberative process privilege for state and municipal officials under federal common law.

For all these reasons, the Court finds the comity principles broadly discussed but, as noted below, not applied in *Memorial Hospital* do not require application of Illinois law here. Rather, the Court views its decision today as consistent with *Memorial Hospital*. In that case, the Seventh Circuit explained comity may warrant consideration of state privilege law only where it "can be accomplished at no

15

substantial cost to federal substantive and procedural policy." *Id.*, 664 F.2d at 1061 (internal citations omitted). In *Memorial Hospital*, the issue was whether to apply state privilege law when there was no body of federal decisions applying a common law privilege to hospital disciplinary proceedings and doing so would frustrate the federal interest in enforcing federal antitrust law. In the instant case, adopting state law that does not recognize a deliberative process privilege based on comity principles would frustrate an established body of federal common law applying the deliberative process privilege in federal question cases which distinguishes the circumstances of this case from those in *Memorial Hospital*. In addition, although the Seventh Circuit nodded to general comity principles in *Memorial Hospital*, its decision in that case was not ultimately guided by those principles. The Seventh Circuit did not defer to Illinois law on comity grounds in *Memorial Hospital*; instead it rejected a privilege recognized under the Illinois' Medical Studies Act because applying the state privilege would frustrate federal law. *Id.*, 664 F.2d at 1063. Therefore, in the Court's view, *Memorial Hospital* does not stand for the proposition that comity principles require a federal court to adopt state policy or decisional law that does not recognize a common law privilege that is recognized in federal courts.

Moreover, the Seventh Circuit has acknowledged that under the Supremacy Clause, federal privilege law prevails in any conflict with state privilege law. *Id.* at 1063–64 (explaining any dilemma as to whether hospital could be subject to criminal sanctions under Illinois statute for violating state law privilege was "wholly illusory"). "When federal law governs, as it does here, only privileges recognized by the national

16

government matter. Because state law does not apply here, Rule 501 tells us to use 'the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.'" *See E.E.O.C. v. Illinois Dep't of Emp. Sec.*, 995 F.2d 106, 107 (7th Cir. 1993) (Supremacy Clause gives federal statutes' controlling force in the face of conflicts with state law and "Rule 501 of the Federal Rules of Evidence reinforces this message in the domain of evidentiary privileges"). Thus, as other courts have found, the comity principle articulated in *Memorial Hospital* does not "permit[]—much less require[]—federal courts to ignore federal common law privileges merely because they have not been recognized in state law." *Evans v. City of Chicago*, 231 F.R.D. 302, 316 n.5 (N.D. Ill. 2005); *see also Tumas v. Bd. of Educ. of Lyons Twp. High Sch. Dist. No. 204, Cook Cnty. Ill.*, No. 06 C 1943, 2007 WL 2228695, at *5 n.4 (N.D. Ill. July 31, 2007) (same); *Dunnet Bay Const. Co. v. Hannig*, No. 10-3051, 2012 WL 1599893, at *2–3 (C.D. Ill. May 7, 2012) (cases addressing comity principles "do not support the contention that federal courts should not apply a federal privilege law when some of the plaintiff's claims are based on federal law"); *see also Farmer v. Las Vegas Metro. Police Dep't*, No. 218CV00860GMNVCF, 2019 WL 13044811, at *1–2 (D. Nev. Oct. 7, 2019) ("Where application of state law would be clearly inconsistent with federal law, state law privileges do not apply.") (quoting *Hutton v. City of Martinez*, 219 F.R.D. 164, 166 (N.D. Cal. 2003)).[7]

---

[7] Based on this reasoning, courts have rejected the application of Illinois law and *Birkett* to privilege determinations in federal question cases under Rule 501. *See Evans*, 231 F.R.D. at 316 n.5 (rejecting application of *Birkett* because "federal common law (not state law) governs questions of privilege in a federal question case"); *Tumas*, 2007 WL 2228695, at *5 n.4 (same);

The Court acknowledges Plaintiff's argument that there may be an inconsistency in the City's approach to the deliberative process privilege in this case, as it seeks to remand Plaintiff's claims in a related case to state court where presumably the deliberative process privilege would not apply. [ECF No. 175] at 2-3 (referencing Case No. 22-cv-5827, Dkt. 8). But whether Plaintiff could be entitled to discovery of the Withheld Documents in state court if those claims are remanded is too speculative a basis to reject the framework required by Rule 501 in federal question cases.[8] In any event, this potential conflict between the privilege law applied in federal versus state courts is inherent to the framework established by Rule 501. *See Porter v. Dartmouth-Hitchcock Med. Ctr.*, No. 5:17-CV-194, 2019 WL 13318383, at *4 (D. Vt. Mar. 11, 2019) ("The federal courts face competing demands for uniformity between state and federal courts within one state and across states among federal courts nationally. Rule 501 established intra-state consistency in diversity cases. In criminal and federal question civil cases, Rule 501 permits the development of a national federal common law of privilege . . ."). Plaintiff's concern for consistency

---

*Guzman v. City of Chicago*, No. 09 C 7570, 2011 WL 55979, at *3 (N.D. Ill. Jan. 7, 2011) (rejecting argument that "deliberative process privilege does not apply to municipal agencies" based on *Birkett* because "Illinois law does not govern the assertion of the privilege in this case. The principal claim in this case arises under the 42 U.S .C. § 1983. When the principal claim arises under federal law, questions of privilege are governed by principles of federal common law . . ."); *cf. Simon v. Nw. Univ.*, 259 F. Supp. 3d 848, 852 (N.D. Ill. 2017) (noting "the deliberative process privilege is a widely recognized federal privilege," but concluding court was "bound by Illinois law on matters of privilege" in a diversity case under Rule 501).

[8] *McEwan v. Villafuerte*, 338 F.R.D. 239, 244 (N.D. Ill. 2021), cited by Plaintiff, does not support her position; in that case, the court declined to apply the Illinois statute scheme as to the confidentiality of persons seeking mental health treatment, instead holding the scope of the federal psychotherapist-patient privilege controlled under Rule 501.

with state law ignores the "compelling need . . . for the uniform development of a federal common law of privilege across state lines in all cases except the pure diversity cases". *See id.* at *4.[9]

As noted above, however, the parties focused in their written submissions on whether the City could invoke the deliberative process privilege and they did not address the specific application of the deliberative process privilege to the Withheld Documents if the privilege were held to apply here. Plaintiff argues the City waived any argument that the privilege applies to these documents by not submitting an affidavit from an appropriate department head asserting the privilege. [ECF No. 175] at 4. But Plaintiff also failed to argue she has a particularized need for the Withheld Documents in her Motion, instead simply asserting the documents are relevant under the Rule 26 discovery standard. [ECF No. 167] at 5-7. *See, e.g., Connelly v. Cook Cnty. Assessor's Off.*, No. 19 CV 7894, 2022 WL 17718411, at *8 (N.D. Ill. Dec. 15, 2022) (plaintiff bears the burden of showing a particularized need for documents withheld on basis of deliberative process privilege).

The Court will not decide whether specific documents in this case will be produced over objection on waiver arguments. Both parties chose to focus their briefing on the threshold issue of whether the deliberative process privilege applies to municipal actors, and the Court has now decided that issue. Moreover, the City did

---

[9] The Court observes, as acknowledged in *Birkett*, that Illinois law is also not uniform on this issue. A deliberative process exemption is recognized in the Illinois Freedom of Information Act. *See Birkett*, 705 N.E.2d at 51 and 5 ILCS 140/7(1)(f). For this reason, Plaintiff's assertion that she will be entitled to discovery of these documents in a pending state court case under the Illinois Freedom of Information Act, *see* [ECF No. 167] at 5 n.1, may be incorrect. But that is not a question the Court decides in this Memorandum Opinion and Order.

not simply ignore its obligation to provide particularized argument for why the privilege applies as to these documents. The City intead noted that Plaintiff did not argue the privilege did not apply to the substance of the documents and it said it would "address its claims of privilege in great detail" if the Court wished. [ECF No. 172] at 14-15. While it would have been a better course for the City to have addressed the application of the privilege and for Plaintiff to have addressed the burden she must meet to obtain the documents she seeks in their earlier briefing, the Court will allow the parties an opportunity to do so now. Therefore, in the next phase of briefing, the City must among other things "make a prima facie showing that the deliberative process privilege applies" to the Withheld Documents. *See*, *e.g.*, *Gudkovich v. City of Chicago*, No. 1:17-CV-8714, 2022 WL 252716, at *10 (N.D. Ill. Jan. 27, 2022). Moreover, although the Court found, based on Plaintiff's characterizations that the Withheld Documents met the broad discovery standard for relevance, this does not excuse Plaintiff from showing she has a particularized need for these documents or prevent the City from arguing she does not. *See Farley*, 11 F.3d at 1389 ("The deliberative process privilege may be overcome where there is a sufficient showing of a particularized need to outweigh the reasons for confidentiality."). The parties' additional briefing should also address whether the legislative process privilege applies to any Withheld Documents, as the City asserts. *See* [ECF No. 172] at 5 n.2.[10]

---

[10] Plaintiff does not address the applicability of the legislative privilege, but the Court notes such a privilege has been recognized for state legislators. *See*, *e.g.*, *In re N. Dakota Legislative Assembly*, 70 F.4th at 463 ("State legislators enjoy a privilege under the federal common law that largely approximates the protections afforded to federal legislators under the Speech or Debate Clause of the Constitution."); *Star Nw. Inc. v. City of Kenmore*, 280 F. App'x 654, 657–58 (9th Cir. 2008), *opinion amended on denial of reh'g*, 308 F. App'x 62 (9th Cir. 2009) ("It is

Accordingly, for all these reasons, Plaintiff's Motion to Compel [ECF No. 167] is denied without prejudice. The City shall file a brief addressing its privilege claims as to the Withheld Documents by August 30, 2023; Plaintiff shall file her response by September 20, 2023.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: August 9, 2023

---

well-settled, however, that inquiries into a legislator's deliberative process in reaching a particular legislative decision are, absent extraordinary circumstances, prohibited by the 'deliberative process' privilege."). Legislative privilege "may be invoked at the discovery stage" and "can shield state lawmakers from having to produce documents." *See Am. Trucking Associations, Inc. v. Alviti*, 14 F.4th 76, 87 (1st Cir. 2021) ("federal courts will often sustain assertions of legislative privilege by state legislatures except when 'important federal interests are at stake,' such as in a federal criminal prosecution," quoting *United States v. Gillock*, 445 U.S. 360, 373 (1980)).